# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

WALTER N. DIXON,

      Plaintiff,

v.                                  No. 2:19-CV-000945-JCH-GJF

STONE TRUCK LINE, INC., a foreign corporation,
ISMAIL Y. TAWIL,
RUSSELL STOVER CHOCOLATES, LLC, a foreign corporation,
and RYAN TRANSPORTATION SERVICE, INC.,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on the following motions: (1) Defendant Russell Stover Chocolates, LLC's *Motion to Dismiss the Claims against it in Plaintiff's First Amended Complaint [Doc. 20]* (ECF No. 23); (2) Defendant Ryan Transportation Service, Inc.'s *Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) and Memorandum in Support* (ECF No. 31); (3) Plaintiff Walter N. Dixon's ("Plaintiff's") *Motion for Leave to File Surreply in Opposition to Defendant Ryan Transportation Service, Inc.'s Motion to Dismiss* (ECF No. 48); and (4) Plaintiff's *Motion for Leave to File Plaintiff's Second Amended Complaint* (ECF No. 49).

On February 21, 2020, Defendant Ryan Transportation Service, Inc. ("Ryan Transportation") filed its motion to dismiss (ECF No. 31), asserting that this Court lacks personal jurisdiction over it, the amended complaint fails to state a claim against it, and Plaintiff's negligent hiring claims are preempted by federal law. In response, Plaintiff filed a *Motion for Jurisdictional Discovery and to Stay Ruling on Defendant Ryan Transportation Service, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, Plaintiff's Response in Opposition to*

*Defendant Ryan Transportation Service, Inc.'s Motion to Dismiss* (ECF No. 34). Plaintiff asked the Court to deny the motion to dismiss and for a stay to obtain jurisdictional discovery to prepare a response to the Rule 12(b)(2) motion. Ryan Transportation filed a reply in support of its motion to dismiss and a response to Plaintiff's request for discovery, asserting that the request should be denied because further discovery would not unearth facts allowing for the imposition of personal jurisdiction over it. Def.'s Reply 1, ECF No. 37. On April 21, 2020, the Honorable Gregory J. Fouratt, after a hearing on the matter, denied Plaintiff's requests for jurisdictional discovery and a stay of a ruling on the motion to dismiss. *See* Order, ECF No. 42; Clerk's Minutes, ECF No. 41. Plaintiff filed no objections to Judge Fouratt's ruling. The decision on jurisdictional discovery and a stay has thus been resolved in favor of Ryan Transportation and this Court need not consider that issue.

On July 24, 2020, Plaintiff filed a *Motion for Leave to File Surreply in Opposition to Defendant Ryan Transportation Service, Inc.,'s Motion to Dismiss* (ECF No. 48), seeking to present the Court with two documents as exhibits and additional argument related to the evidence as it pertains to the Rule 12(b)(2) portion of the motion to dismiss. Those documents are the Bill of Lading for Ryan Transportation to ship freight for Defendant Russell Stover Chocolates, LLC ("Russell Stover") and the Contract for Truckload Transportation between Ryan Transportation and Lindt & Sprüngli North America, Inc. *See* Pl.'s Ex. A & B, ECF No. 48-1 at 16- of 31.[1] The same day, Plaintiff filed a *Motion for Leave to File Plaintiff's Second Amended Complaint* (ECF No. 49) to add factual allegations and attach the Bill of Lading and Contract for Truckload Transportation.

The Court, having considered the motions, briefs, pleadings, evidence, and applicable law,

---

[1] Lindt & Sprüngli (North America) Inc., is listed as the third party to which the freight charges for the Russell Stover shipment should be billed. *See* Bill of Lading, ECF No. 48-1 at 16 of 31.

concludes as follows: (1) the motion to file a sur-reply should be granted only to the extent that the Court will consider the cited exhibits and certain enumerated pages discussed herein, but will otherwise be denied; (2) Defendant Russell Stover's motion to dismiss will be granted; (3) Defendant Ryan Transportation's motion to dismiss based on personal jurisdiction will be denied, but its motion to dismiss under Rule 12(b)(6) will be granted; and (4) Plaintiff's motion to amend will be denied. The Court will dismiss Defendants Russell Stover and Ryan Transportation from the case.

## I.    STANDARD

The personal jurisdiction requirement flows from the Due Process Clause, protecting an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1211 (10th Cir. 2000). Federal Rule of Civil Procedure 12(b)(2) allows a party to assert by motion the defense of lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). Where no evidentiary hearing is held, a plaintiff only needs to make a prima-facie showing that personal jurisdiction exists. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006). The court may consider all factual pleadings, as well as affidavits and other evidence, but must resolve all factual disputes in the plaintiff's favor. *See id.* at 1229; *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984). The court should accept as true well pled facts, unless they are controverted by sworn statements. *XMission,* 955 F.3d at 836. Well-pled facts are plausible, not conclusory, and not speculative. *Id.* A plaintiff may defeat a motion to dismiss for lack of personal jurisdiction "by presenting evidence (either uncontested allegations in its complaint or other materials, or an affidavit or declaration) that if true would support jurisdiction

over the defendant." *Id.* at 839 (internal quotations omitted).

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim for relief. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When reviewing a plaintiff's complaint in ruling on a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## II.     FACTUAL BACKGROUND

On October 28, 2018, Plaintiff Walter N. Dixon was operating his motorcycle with the right-of-way in Deming, New Mexico, when a commercial semi-truck operated by Defendant Ismail Y. Tawil, acting in the course of his employment with Defendant Stone Truck Line, Inc. ("Stone Truck"), failed to yield to Mr. Dixon, made an unsafe left turn, drove into Mr. Dixon's line of traffic, and collided with Mr. Dixon. First Am. Compl. ¶¶ 1-2, 25, ECF No. 20. Stone Truck was the owner of the semi-truck driven by Mr. Tawil and was Mr. Tawil's statutory employer. *Id.* ¶¶ 8, 58. At the time, Mr. Tawil was pulling a trailer loaded with goods being shipped by Defendant Russell Stover. *Id.* ¶ 27. Following the collision, the New Mexico State Police cited Mr. Tawil for careless driving in violation of N.M. Stat. Ann. § 66-8-114(A). *Id.* ¶ 29. Mr. Dixon suffered severe

injuries as a result of the accident. *Id.* ¶¶ 30-35.

Stone Truck is a licensed DOT[2] motor carrier engaged in the business of transporting goods in interstate commerce and was the owner of the 2014 Blue Freightliner Cascadia semi-truck driven by Mr. Tawil that collided with Mr. Dixon. *Id.* ¶¶ 7-8, 54. Stone Truck was the statutory employer of Mr. Tawil. *Id.* ¶ 58.

Russell Stover was the shipper that hired Stone Truck and Mr. Tawil to transport Russell Stover's goods within and across New Mexico. *Id.* ¶ 15. Russell Stover "is engaged in the business of shipping its goods across the United States, including across the State of New Mexico, and meets the statutory definition of a motor carrier under the Federal Motor Carrier Safety Act, and Federal Motor Carrier Safety Regulations." *Id.* ¶ 14. *See also id.* ¶¶ 79-80. According to the complaint, Russell Stover was a statutory employer of Mr. Tawil under the Federal Motor Carrier Act. *Id.* ¶ 83.

Ryan Transportation is in the business of brokering the transportation and shipment of goods across the United States. *See id.* ¶ 18. Ryan Transportation is a for-profit Kansas corporation with its principal office and headquarters located in Overland Park, Kansas. Emison Decl. ¶ 6, ECF No. 31-6. Ryan Transportation is not registered to do business in New Mexico, has no agent designated for service of process with the New Mexico Secretary of State, and has no office, property, employees, tax payments, or vehicles in New Mexico. *Id.* ¶¶ 5, 8. From Kansas, Ryan Transportation brokers the transportation of tens of thousands of shipments of goods across the United States, Mexico, and Canada, but the shipments are transported by contract carriers. *Id.* ¶ 7. Ryan Transportation is not involved in choosing specific routes of travel for its carriers, including Stone Truck. *Id.*

---

[2] DOT presumably stands for "Department of Transportation."

Effective February 1, 2018, Ryan Transportation entered a Contract for Truckload Transportation with Lindt & Sprüngli North America, Inc. Pl.'s Ex. B, ECF No. 48-1 at 17 of 31. In this form contract, Ryan Transportation is listed as the "CARRIER," although on the title page of the contract "Motor Carrier" is crossed out and "Broker" substituted, and in the Notice provision "CARRIER" is crossed out with "Broker" substituted. *Id.* at 17-18, 29 of 31. The contract applied to all traffic in interstate, foreign, or intrastate commerce in the 48 contiguous states, *id.* ¶ 1, ECF No. 48-1 at 18 of 31, and Ryan Transportation agreed to comply with all applicable federal, state, and local laws, *id.* ¶ 15, ECF No. 48-1 at 26 of 31. The contract noted that, if the CARRIER holds a broker's license, "every shipment for which SHIPPER orders service from CARRIER shall nevertheless be deemed accepted by the CARRIER in its capacity as a motor carrier under this Contract … unless the parties otherwise expressly agree in writing. *Id.* ¶ 3(b), ECF No. 48-1 at 19 of 31. According to the contract, Ryan Transportation agreed to operate and maintain equipment in a safe and lawful manner using fully qualified personnel, *id.* ¶ 8(a), ECF No. 48-1 at 20 of 31; to "have exclusive control and direction of the persons operating the equipment or otherwise engaged in such transportation services," *id.* ¶ 16, ECF No. 48-1 at 26 of 31; and to assume "full responsibility for the acts and omissions of such persons," *id.* Additionally, Ryan Transportation agreed to "remain responsible to SHIPPER for fulfillment of all of CARRIER'S obligations under this Contract while cargo is in the connecting carrier's possession." *Id.* ¶ 11(a), ECF No. 48-1 at 23 of 31. Under the contract, neither party may assign its rights nor delegate duties under the Contract without the other party's prior written consent. *Id.* ¶ 12.

Ryan Transportation, however, signed the contract subject to the "Broker Addendum to Contract for Truckload Transportation," the terms of which control if there are any conflicting provisions in the Contract. *Id.*, ECF No. 48-1 at 30-31 of 31. According to the Broker Addendum,

Ryan Transportation acts "exclusively as a U.S. federally licensed property broker as defined at 49 USC 13102" and references to it as a "Carrier" is "strictly for the convenience of the parties and does not create or imply a holding out or assumption by Ryan of motor carrier authority, equipment, personnel, operations, capabilities, insurance or liabilities." *Id.* The addendum explained that Ryan Transportation, as a broker, would arrange for transportation with motor carriers with a Satisfactory safety rating and require them to have proper equipment, personnel, and insurance at federally mandated levels. *Id.* According to the addendum, "carriers are independent contractors, not subcontractors, or representatives of Ryan as Ryan neither undertakes, insures nor performs the physical transportation service nor supplies or warrantees the goods transported." *Id.*

According to the Bill of Lading, Ryan Transportation, the "CARRIER," agreed to ship Russell Stover freight from Corsicana, Texas on October 27, 2018, to Watsonville, California by October 30, 2018 at 9:00. Pl.'s Ex. A, ECF No. 48-1 at 16 of 31. On June 25, 2015, Ryan Transportation entered into a Broker Contract Carrier Agreement with Stone Truck. Def.'s Ex. 1, ECF No. 31-1. In a Load Confirmation document dated October 23, 2018, Ryan Transportation entered an agreement with Stone Truck for Stone Truck to transport Russell Stover freight from Corsicana, Texas, on October 27, 2018 at 1300 hours, for delivery to Watsonville, California, on October 30, 2018 at 0900. *See* Def.'s Ex. 3, ECF No. 31-3; Decl. of Matt Emison Decl. ¶¶ 2, 4, 10, ECF No. 31-6.

On August 14, 2019, Mr. Dixon filed suit for negligence against Stone Truck, Russell Stover, and Mr. Tawil, which Defendants removed to federal court. *See* Notice of Removal ¶¶ 1-3, ECF No. 1; Compl. ¶¶ 34-68, ECF No. 1-2. Although the Joint Status Report permitted amendment to the pleadings until January 10, 2020, *see* JSR 2, ECF No. 14, the Court extended

the deadline until January 24, 2020, *see* Order, ECF No. 16. Plaintiff filed an amended complaint on January 24, 2020, adding a claim for negligence against Ryan Transportation. First Am. Compl. ¶¶ 66-77, ECF No. 20. In the First Amended Complaint, Plaintiff asserts the following claims: negligence and negligence per se against Defendant Tawil (Count I); negligence against Defendant Stone Truck (Count II); negligence against Defendant Ryan Transportation (Count III); and negligence against Defendant Russell Stover (Count IV). First Am. Compl., ECF No. 20.

Russell Stover filed its motion to dismiss on February 6, 2020 (ECF No. 23), and Ryan Transportation filed its motion to dismiss on February 21, 2020 (ECF No. 31). The Court on April 21, 2020, *sua sponte* stayed discovery. Order, ECF No. 43. On July 24, 2020, Plaintiff filed a motion for leave to file a sur-reply in opposition to Ryan Transportation's motion to dismiss (ECF No. 48) and a motion to file a second amended complaint (ECF No. 49).

### III.    MOTION TO FILE SURREPLY

Plaintiff seeks to file a sur-reply to attach two documents as exhibits and to provide the Court with additional authorities supporting personal jurisdiction over Ryan Transportation. Pl.'s Mot. 1-3, ECF No. 48. The first is a contract between Ryan Transportation and Russell Stover that Plaintiff referred to in his response but neglected to attach. *Id.* at 2. The second document is the Bill of Lading for the shipment. *Id.* at 2-3. Defendant Ryan Transportation opposes the motion, arguing that the request to file a sur-reply is untimely and does not respond to new arguments or evidence in Defendant's reply.

The documents at issue may be considered in ruling on a Rule 12(b)(2) motion. The Bill of Lading was already part of the record prior to Plaintiff filing his sur-reply. *See* Bill of Lading, ECF No. 31-2. Although Plaintiff failed to attach the contract between Russell Stover and Ryan Transportation, Plaintiff referenced the contract in his response to the motion to dismiss. *See* Pl.'s

Resp. 16, 19-20, ECF No. 34. Ryan Transportation in its reply cited the contract between Russell Stover and Ryan Transportation and quoted the addendum thereto. *See* Def.'s Reply 11 n.10, ECF No. 37. There is no just reason for excluding the evidence that Plaintiff inadvertently neglected to attach where both parties analyzed the evidence in their initial briefing. Because both parties cited the relevant documents and treated them as if they were already part of the record, the Court will consider the evidence attached to Plaintiff's sur-reply.

Plaintiff, however, also includes in his sur-reply additional arguments about the evidentiary importance of the documents and cites authority in support, some previously cited, some new. The arguments Plaintiff made in his response brief do not respond to new arguments Defendant made in its reply brief. Because Plaintiff has not offered enough justification to have a proverbially second bite at the apple on briefing issues the parties already analyzed, the Court will not consider the arguments set forth in the body of Plaintiff's sur-reply, subject to the following caveat. Prior to the time Plaintiff filed the sur-reply, the Court analyzed the briefs and, in cite-checking them and conducting its own independent research, discovered some of the same cases that Plaintiff cited in his sur-reply brief.[3] The Court was thus already considering the relevance of the authority. Accordingly, the Court finds that the parties' positions on that authority would be useful. Because of these circumstances, the Court will consider the parties' respective briefing on the cases the Court had already been examining in order to give the parties an opportunity to have their full positions heard regarding the relevance of that authority. Consequently, the Court has considered the authority cited on page 7 of Plaintiff's sur-reply (ECF No. 48-1), Defendant's arguments set forth in footnote 3 on pages 8-9 of its qualified response to the sur-reply (ECF No. 52-1), and Plaintiff's reply on pages 3-5 (ECF No. 55). Although the Court will consider those limited

---

[3] *Baylon v. Wells Fargo Bank, N.A.*, 303 F.Supp.3d 1160, 1165 (D.N.M. 2018) ("Regardless of whether a party finds and cites to relevant authority, this Court has an independent duty to research and properly apply the law.").

arguments and the evidence attached to Plaintiff's sur-reply, the Court will not otherwise consider the contents of Plaintiff's sur-reply brief.

### IV.    ANALYSIS OF PERSONAL JURISDICTION

"A federal court may not exercise personal jurisdiction over an out-of-state defendant unless (1) an applicable statute authorizes service of process on that defendant and (2) the exercise of statutory jurisdiction comports with constitutional due process." *XMission*, 955 F.3d at 839. The only statute relied upon by the parties is the New Mexico long-arm statute, N.M. Stat. Ann. § 38-1-16. The reach of New Mexico's long-arm statute extends personal jurisdiction as far as constitutionally permissible. *Tercero v. Roman Catholic Diocese of Norwich*, 2002-NMSC-018, ¶ 6, 132 N.M. 312. "The two-step analysis thus collapses here into a single due-process inquiry." *XMission*, 955 F.3d at 839.

The Due Process Clause requires that a defendant have enough contacts with the State so that asserting jurisdiction over the defendant will not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The defendant's conduct and connection with the forum must be such that it would reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The minimum contact requirement may be satisfied in two ways – through general ("all-purpose") or specific ("case-linked") jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court of California*, __ U.S. __, 137 S.Ct. 1773, 1779-80 (2017). As for general jurisdiction, a court may maintain jurisdiction over the person if the person's "contacts with the State are so continuous and systematic that the person is essentially at home in the State." *XMission*, 955 F.3d at 840 (internal quotations omitted). When there is general jurisdiction, courts have personal jurisdiction for any lawsuit. *See Bristol-Myers*, 137 S.Ct. at 1780.

In contrast, a court may exercise specific jurisdiction if a defendant has purposefully directed his activities at the residents of the forum and the lawsuit results from injuries arising out of or relating to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *XMission*, 955 F.3d at 840. The Tenth Circuit has described the principle of specific jurisdiction as "a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *XMission*, 955 F.3d at 840 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008)). Even if the plaintiff satisfies the two requirements of purposefully directed activities at the forum residents and injuries arising from those activities, a defendant may defeat jurisdiction by making a compelling case that jurisdiction over the person would be unreasonable. *Id.* A court assesses unreasonableness by considering a number of factors: (1) the burden on the defendant; (2) the forum State's interest in resolving the dispute; (3) the plaintiff's interest in convenient, effective relief; (4) the interstate judicial system's interest in the most efficient resolution of cases; and (5) the shared interest of the states in furthering fundamental social policies. *Id.* at 840 (quoting *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 909 (10th Cir. 2017)).

In analyzing personal jurisdiction, each defendant's contacts with the state must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984). A corporation will be subject to jurisdiction if the acts of its agents or employees that are made within the course and scope of the agency or employment are enough to justify the exercise of jurisdiction. *See Int'l Shoe*, 326 U.S. at 316-17. *See also XMission*, 955 F.3d at 847 (not foreclosing that jurisdiction over defendant could be based solely on activities of its agents).

### A. New Mexico does not have general jurisdiction over Ryan Transportation

To assert general jurisdiction over a corporation, its affiliations with the State must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The forum contacts that will render a defendant amenable to all-purpose general jurisdiction in the forum are "limited," and for a corporation, the paradigm forums for general jurisdiction are its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Only in an "exceptional case" may "a corporation's operations in a forum other than its formal place of incorporation or principal place of business ... be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19.

In this case, Ryan Transportation is incorporated and has its principal place of business in Kansas. Emison Decl. ¶ 6, ECF No. 31-6. It brokers interstate transportation shipments from its offices in Kansas, and has no offices, headquarters, property, vehicles, employees, or tax obligations or payments in New Mexico. *Id.* ¶¶ 7-8. The allegations and evidence in the record do not show that this case is exceptional to give the Court general jurisdiction over Ryan Transportation when its place of incorporation and principal place of business are in Kansas, not New Mexico. *Cf. Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

### B.  New Mexico has specific jurisdiction over Ryan Transportation

Specific jurisdiction is a closer question in this case. Turning to the first requirement for specific jurisdiction, purposeful direction requires deliberate engagement in significant activities within the forum State or deliberately directed activities at the forum State. *XMission*, 955 F.3d at 840. Random, fortuitous, attenuated contacts; the unilateral activity of another person; or mere

foreseeability that its actions may cause injury in the forum State is not enough. *Id.* at 840-41. A plaintiff's injury in the forum state is insufficient to create jurisdiction; the proper focus is whether defendant's conduct meaningfully connects it to the forum. *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

Ryan Transportation contends that, although it has significant business brokering interstate transportation between customers and carriers, its business occurs in Kansas. As to the contract involved in this case, Ryan Transportation asserts that none of the contracting or negotiations occurred in New Mexico, so it has no purposeful contacts to New Mexico related to this litigation.

Plaintiff, on the other hand, argues that Ryan Transportation's contacts with New Mexico were not merely random and fortuitous because it brokered the transportation of the relevant shipment, knew of its destination to California from Texas, and contracted for the shipment to arrive by a certain deadline and kept at a certain temperature. Plaintiff thus asserts that Ryan Transportation exercised control over the transportation and knew or should have been aware its contracted-for shipment would take a route through New Mexico. According to Plaintiff, Ryan Transportation intended to derive a commercial benefit from the interstate delivery through New Mexico. Plaintiff notes that the Bill of Lading lists Ryan Transportation as the "carrier," and that as a carrier and statutory employer of Mr. Tawil, Mr. Tawil's actions in New Mexico constitute those of his employer, Ryan Transportation. Plaintiff asserts that Ryan Transportation's responsibilities for the shipment were non-assignable in the absence of written permission from Russell Stover, and there is no evidence of such a written assignment. Moreover, Plaintiff contends that Ryan Transportation exercised a right to control the subject load, making it vicariously liable for the conduct of Defendants Stone Truck and Tawil.

The record shows that the contract between Ryan Transportation and Stone Truck

contemplated travel between Corsicana, Texas, and Watsonville, California in under three days. *See* Def.'s Ex. 3, ECF No. 31-3 (listing pickup of shipment on October 27, 2018 at 1300 and drop off on October 30, 2018 at 0900). Although the Load Confirmation does not list any route or requisite stops aside from the final location, the Court may take judicial notice of information contained in maps. *See United States v. Burch*, 169 F.3d 666, 671-72 (10th Cir. 1999); Fed. R. Evid. 201. Using Google maps, the logical routes that Google maps produces all go through New Mexico with an estimated 26- or 27-hour estimated travel time, depending on the route.[4] A driver would have to go out of his way not to travel through New Mexico to transport this shipment. Given that Ryan Transportation brokered the contract that it knew, or at least, should have been aware, would result in the shipment travelling through New Mexico, Ryan Transportation purposefully availed itself of the benefits and privileges of New Mexico for this shipment. *Cf. Dudnikov*, 514 F.3d at 1074 ("Absent at least the seller's foreknowledge that the buyer was going to take the product into a particular forum, the defendant cannot reasonably be said to have purposefully directed its activities at the forum."); *Vogel v. Morpas*, Civil Action No.: RDB-17-2143, 2017 U.S. Dist. LEXIS 185709, at *9-11, 2017 WL 5187766, at *5-6 (D. Md. Nov. 9, 2017) (concluding Maryland court had personal jurisdiction over out-of-state trucking broker where contract with carrier facilitated two intermediate stops in Maryland on way from Michigan to Philadelphia, even though it was carrier's choice to make Maryland stops);[5] *Turner v. Syfan Logistics, Inc.*, No. 5:15cv81, 2016 U.S. Dist. LEXIS 51460 at *2, 12-13, 2016 WL 1559176 (W.D. Va. Apr. 18, 2016) (holding that, in case involving trucking accident in Virginia, Virginia

---

[4] *See* Driving Directions from Corsicana, TX, to Watsonville, CA, Google Maps, https://www.google.com/maps (follow "Directions hyperlink; then search starting point field for "Corsicana, Texas" and search destination field for "Watsonville, CA").

[5] Defendant argues that *Vogel* is inapposite because it relied on a specific provision of Maryland's long-arm statute that is not applicable in New Mexico. Def. Ryan Transportation's Qualified Resp. 8 n.3, ECF No. 52-1. The Court, however, finds *Vogel* persuasive regarding its analysis of why personal jurisdiction comports with due process. *See Vogel*, 2017 WL 5187766 at *5-6.

court had personal jurisdiction over interstate trucking broker; court determined that broker purposefully targeted Virginia as state through which carrier it hired would transport load based on Load Confirmation, which obligated carrier to drive to Moorefield, West Virginia from Chattanooga, Tennessee, mileage listed on document contemplated route of 527 miles, and two quickest routes aligning with mileage both went through Virginia);[6] *Brandi v. Belger Cartage Serv. Inc.*, 842 F.Supp. 1337, 1341-42 (D. Kan. 1994) (concluding that Kansas court had personal jurisdiction over Colorado broker that arranged for shipment by Arizona carrier from Kansas City, Missouri to Colorado when freight was damaged while in Kansas because broker must have been aware that goods would travel through Kansas and broker should have foreseen being haled into court in a state through which it had arranged for the shipment of goods).

Ryan Transportation argues that under its Broker-Contract Carrier Agreement with Stone Truck it had no control over choosing the route through New Mexico, so Mr. Tawil's choice to go through New Mexico was fortuitous. *See* Def.'s Ex. 1, ECF No. 31-1 at 1, ¶ 4 ("CARRIER warrants that it is an independent contractor and exercises exclusive control over its equipment, employees, and the means and methods of carrying out its contractual obligations."); Emison Decl. ¶ 7, ECF No. 31-6 ("Ryan has no involvement in choosing routes, which of the United States the carriers enter or leave, cities to stop in, or other incidents of travel for any contract carrier, including Stone."); *id.* ¶ 9 (averring that Ryan Transportation did not select geographical path used by Defendant Tawil). Although Ryan Transportation's general carrier agreement disclaims its

---

[6] Defendant Ryan Transportation contends that *Turner* is distinguishable because evidence indicated that the broker plotted the route the carrier would take. Def. Ryan Transportation's Qualified Resp. 8 n.3, ECF No. 52-1. In *Turner*, the court examined the Load Confirmation, a document the broker drafted that anticipated a route of 527 miles. *See Turner*, 2016 WL 1559176 at *4. The court concluded that the two quickest routes going through Virginia aligned with that mileage and, thus, that the broker targeted Virginia and could anticipate being subject to the jurisdiction of a court therein. *See id.* at *4-6. Although the Load Confirmation here does not contain mileage, it contains initial and final destinations with a less-than-three-day delivery deadline. *See* Def.'s Ex. 3, ECF No. 31-3. As in *Turner*, Ryan Transportation hired Stone Truck to haul a load that most logically contemplated a route requiring travel through New Mexico, given the requirements of the contract.

exercise of exclusive control over Stone Truck's means and methods of carrying out its contractual obligations, the specific Load Confirmation agreement that contracted for the shipment at issue provided for the initial and final destination with a specific timeframe for completion. The agreed upon timeframe coupled with the likeliest routes distinguish this case from those cases where a product randomly found itself in another state outside the normal distribution channels. It was not merely foreseeable that the shipment would be in New Mexico; rather, Ryan Transportation hired Stone Truck to transport the shipment in a timeframe and to a destination that only logically contemplated a route that would require travel through New Mexico. *Compare J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565-66 (Fed. Cir. 1994) (holding that defendant was subject to court's jurisdiction where product arrived in forum state through defendant's purposeful shipment of product through established distribution channel because it put product in stream of commerce, it knew likely destination of product, and its conduct and connection to forum was such that it could reasonably anticipate being haled into court in forum), *with World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 288, 295-99 (1980) (holding that Oklahoma court lacked personal jurisdiction over NY car dealer where only connection to Oklahoma was that crash occurred there after couple bought car in NY; connection to Oklahoma was isolated and fortuitous).[7]

For specific jurisdiction, there must also be a connection between the forum and the

---

[7] Given this conclusion, the Court does not need to also determine whether Ryan Transportation is the statutory employer of Mr. Tawil, and therefore, whether his acts in New Mexico were those of Ryan Transportation for purposes of establishing personal jurisdiction.

underlying controversy. *Old Republic*, 877 F.3d at 908 (quoting *Bristol-Myers*, 137 S.Ct. at 1781). Although courts generally use one of three approaches in analyzing the arising under requirement (proximate causation, but-for causation, or substantial connection), the Tenth Circuit has rejected the substantial-connection approach outright, but it has not chosen which of the other approaches to follow. *Dudnikov*, 514 F.3d at 1078-79. A plaintiff satisfies the but-for standard by showing the defendant's forum-related activities were an "event in the causal chain leading to the plaintiff's injury." *Id.* at 1078. The proximate cause standard, "by contrast, is considerably more restrictive and calls for courts to examine[] whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Id.* (internal quotations omitted). In this case, Ryan Transportation's brokering of the shipment along a route it knew or should have known would go through New Mexico was an event in the causal chain leading to Plaintiff's injury as well as relevant to the merits of Plaintiff's negligence claim for the shipment at issue. The Court therefore finds Plaintiff satisfied the first two requirements to make a prima facie case for personal jurisdiction.

The next question is whether Defendant has made a compelling case that jurisdiction over the person would be unreasonable. Defendant has not met this burden. Ryan Transportation is a corporation involved in extensive interstate transportation, having access to more than 40,000 contract carriers in its network. As a nationwide brokerage business, it is well-equipped to litigate in New Mexico, so this factor weighs in favor of Plaintiff. The second factor – the interest of New Mexico in adjudicating the dispute – also favors this forum because New Mexico has an interest in providing a forum and resolving disputes involving accidents occurring on its roadways and with its citizens. Plaintiff, a resident of New Mexico, has an interest in obtaining convenient and effective relief in his home state, and the interstate judicial system has an interest in resolving the

case between Plaintiff and Ryan Transportation in the same forum and in the same case as with the other parties involved in the collision. Judicial efficiency is served by this Court resolving Plaintiff's case against Ryan Transportation. For the foregoing reasons, it is reasonable and does not offend fair play and substantial justice for this Court to exert personal jurisdiction over Ryan Transportation.

Based on the evidence submitted, the Court finds it has personal jurisdiction over Defendant Ryan Transportation. The Court will therefore deny Defendant's motion to dismiss for lack of personal jurisdiction and will turn to the merits of its Rule 12(b)(6) arguments.

## V.    ANALYSIS OF WHETHER PLAINTIFF STATED CLAIMS

Plaintiff asserts negligence claims against Ryan Transportation in Count III and against Russell Stover in Count IV. First Am. Compl. ¶¶ 66-90, ECF No. 20. A federal district court sitting in diversity applies state law in a manner that the same result would be reached in state court. *Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). "Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 6, 134 N.M. 43. "A duty is a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class or persons." *Cottonwood Enterprises v. McAlpin*, 1991-NMSC-044, ¶ 10, 111 N.M. 793 (quoting *Baxter v. Noce*, 107 N.M. 48, 51, 752 P.2d 240, 243 (1988)). Whether a duty exists is a question of policy to be determined by looking to legal precedent, statutes, and other legal principles. *Id.* New Mexico recognizes a duty to all persons to use ordinary care for the safety and property of others. *Oakey, Estate of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 23, 399 P.3d 939 (quoting UJI 13-1604 NMRA).

### A. Plaintiff failed to state a negligence claim against Ryan Transportation in the First Amended Complaint

Plaintiff alleges multiple theories of liability against Defendant Ryan Transportation: (i) vicarious liability for the actions of Defendant Tawil; (ii) direct negligence as a motor carrier in failing to cause the trucks to be systematically inspected, repaired, and maintained; and (iii) negligent hiring of Defendant Stone Truck and Tawil. Ryan Transportation argues that Plaintiff failed to allege enough non-conclusory facts to state a plausible claim against it as to any of these three theories. Plaintiff asserts that it properly pled that Ryan Transportation is a "motor carrier" and statutory employer of Defendant Tawil, and thus, is vicariously liable for Defendant Tawil's negligence and directly liable for failing to cause all motor vehicles to be systematically inspected, repaired, and maintained. As for his negligent hiring claim, Plaintiff argues that he stated enough allegations showing Defendant Ryan Transportation failed to assure Mr. Tawil was qualified, competent, and adhered to regulations and that it failed to assure Stone Truck inspected the truck for safe operation.[8]

### 1. No vicarious liability as a broker

Under the doctrine of *respondeat superior*, an employer is vicariously liable for the negligent acts of its employee acting within the course and scope of his employment when the accident occurs. *Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1080 (10th Cir. 2010). Under New Mexico law, generally "an employer of an independent contractor is not responsible for the negligence of the contractor or his employees." *Saiz v. Belen Sch. Dist.*, 113 N.M. 387, 393, 827 P.2d 102, 108 (1992). An employer has no right to control the manner in which an independent contractor works, unlike an employee for whose negligence the employer is vicariously liable. *Id.*

---

[8] Ryan Transportation also argues Plaintiff's negligent hiring claim is preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c). Because the Court concludes that the allegations do not state a claim, it does not need to consider Defendant's alternative preemption arguments.

One exception to the independent contractor general rule is when the independent contractor has a non-delegable duty to protect another from harm based on a duty imposed by statute. *See Harris v. FedEx Nat. LTL, Inc.*, 760 F.3d 780, 783-84 (8th Cir. 2014) (citing Nebraska law); *Saiz*, 113 N.M. at 393 ("The general rule has no application where the employer has nondelegable duties (1) arising out of some relation toward the public or the particular plaintiff (e.g., duty of lessor to lessee), or (2) because of work that is specially, peculiarly, or inherently dangerous."). Plaintiff here contends that the Federal Motor Carrier Safety Act ("FMCSA") and Federal Motor Carrier Safety Regulations ("FMCSR") created statutory and regulatory duties on Ryan Transportation to ensure that Defendant Tawil operated his truck safely.

To protect the motoring public from often judgment-proof truck-lessor operators, Congress amended the Interstate Common Carrier Act to require interstate motor carriers to assume full direction and control of leased trucks as if the trucks were owned by the motor carrier. *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 38 & n.5 (Tex. Ct. App. 2002) (quoting 49 U.S.C. 14102(a)(4)). Under the Act, the FMCSR were issued, which among other things, create a statutory employee relationship between the employees of the owner-lessors and the lessee-carriers. *Morris*, 78 S.W.3d at 38-39. *See also Crocker v. Morales-Santana*, 2014 ND 182, ¶ 16, 854 N.W.2d 663, 669. The FMCSR define an employee as a person "employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety," to include "a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle)." 49 C.F.R. § 390.5. According to 49 C.F.R. § 390.11, motor carriers must "require observance of" the duties or prohibitions imposed on drivers by the FMCSR. 49 C.F.R. § 390.11. Thus, an "interstate carrier is vicariously liable as a matter of law under the FMCSR for the negligence of its statutory employee drivers." *Morris*, 78 S.W.3d at 39

(quoting, among others, *Rodriguez v. Ager*, 705 F.2d 1229, 1233-36 (10th Cir. 1983)). "By eliminating the common law employee/independent contractor distinction, the definition serves to discourage motor carriers from using the independent contractor relationship to avoid liability exposure at the expense of the public." *Consumers County Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 366 (5th Cir. 2002). Consequently, the pertinent question for stating a claim for vicarious liability is whether Plaintiff sufficiently alleged that Ryan Transportation was a motor carrier and statutory employer of Defendant Tawil.

A "motor carrier" is defined by the Act as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). In contrast, the Act defines "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). According to 49 C.F.R. § 371.2, a broker is "a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier." 49 C.F.R. § 371.2. Motor carriers are not considered brokers "when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." *Id.* Consequently, a broker is distinct from a motor carrier – the "main difference between a motor carrier and a broker is the actual operation of the leased equipment….Put briefly, a motor carrier transports, and a broker provides a motor carrier." *Puga v. RCS Sols., Inc.*, 922 F.3d 285, 292 (5th Cir. 2019). Whether an entity is acting as a carrier in a specific transaction is "determined not by reference to its authority but rather by reference to what it holds itself out to be." *Ensco, Inc. v. Weicker Transfer and Storage Co.*, 689 F.2d 921, 925 (10th Cir. 1982).

Plaintiff relies on *Tryg Insurance v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284, 287 (3d Cir. Apr. 19, 2019) (unpublished), for the proposition that an entity is a carrier when it accepts responsibility for ensuring the delivery of the goods, regardless of whether it conducted the physical transportation. The Third Circuit in turn relied on the Eleventh Circuit's standard in *Essex Insurance Company v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292 (2018), wherein the Eleventh Circuit relied upon regulations issued by the DOT:

> Broker means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section <u>when they arrange or offer to arrange the transportation of shipments which they are authorized to transport</u> *and which they have accepted and legally bound themselves to transport.*

*Id.* at 1300-01 (quoting 49 C.F.R. § 371.2(a)) (underline added; italics added by Eleventh Circuit). The key question is whether the entity accepted legal responsibility to transport the shipment. *Id.* at 1301. If a party makes it clear in writing that it is merely acting as a go-between to connect the shipper with a third-party carrier, it will be considered a broker, but when no writing exists, "the question will depend on how the party held itself out to the world, the nature of the party's communications and prior dealings with the shipper, and the parties' understanding as to who would assume responsibility for the delivery of the shipment in question." *Id.* at 1302. This analysis is case-specific. *Id.*

Plaintiff alleges in his First Amended Complaint that Ryan Transportation was a motor carrier "engaged in the business of transporting goods throughout the southwestern United States," First Am. Compl. ¶ 67, and that it met the statutory definition of a motor carrier, *id.* ¶¶ 22, 68. Other alleged facts, however, indicate that Ryan Transportation was also a broker. *See* First Am. Compl. ¶ 18 (stating that Ryan Transportation "is engaged in the business of brokering the transportation and shipment of goods across and through the United States…."). More problematic

for Plaintiff, as to the *specific* transaction at issue in this case, Plaintiff asserts that Ryan Transportation was acting as a broker. *See id.* ¶ 19 (alleging that Ryan Transportation "was the broker which arranged for the transportation of Russell Stover's goods within and across the State of New Mexico by Defendant Stone Truck Line, Inc."), and ¶ 20 (asserting that Ryan Transportation "as a broker contracted with Defendant Stone Truck Line and Defendant Tawil to transport Russell Stover's goods within and across the State of New Mexico").

Whether Ryan Transportation meets the statutory definition of a motor carrier is a legal conclusion not entitled to deference when there are insufficient factual allegations to plausibly support the legal conclusion. Here, the factual allegations specific to the transaction at issue plausibly support that Ryan Transportation acted as a broker. Under *Tryg* and *Essex*, to be a carrier, rather than a broker, on a certain transaction, the entity must not only have arranged for the transportation that it was authorized itself to transport but have accepted and legally bound itself to transport the goods. There are no allegations in the First Amended Complaint indicating that Ryan Transportation did so regarding the shipment at issue. Moreover, the only assertions regarding an employee-employer relationship are that Defendant Tawil was acting within the course and scope of his employment with Stone Truck. *See* First Am. Compl. ¶¶ 4, 27, ECF No. 20. The allegations thus do not establish a factual basis to support the legal conclusion that Ryan Transportation was a motor carrier for the shipment at issue. Although Plaintiff points to the Bill of Lading listing Ryan Transportation as the "Carrier" (ECF No. 31-2), this Court cannot consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion, but will discuss herein that evidence when considering Plaintiff's motion to amend.

Plaintiff also asserts that Defendant Ryan Transportation may be vicariously liable based on the right to control its agents, Stone Truck and Mr. Tawil. In New Mexico, a "right to control

analysis focuses on whether the principal exercised sufficient control over the agent to hold the principal liable for the acts of the agent," and where such sufficient right to control is present, "an employer-employee relationship usually exists." *Celaya v. Hall*, 2004-NMSC-005, ¶ 12, 135 N.M. 115. "The principal test is whether the employer has the right to control the manner in which the details of the work are to be accomplished, not the exercise of any control at all." *Scott v. Murphy*, 1968-NMSC-185, ¶ 10, 79 N.M. 697. In support, Plaintiff cites to the bill of lading, including the starting point, the destination, and the deadline for the shipment, and the agreement between Ryan Transportation and Stone Truck. *See* Pl.'s Resp. 19, ECF No. 34. Again, although the Court may consider such evidence outside the complaint in ruling on a Rule 12(b)(2) motion, it cannot do so when ruling on a Rule 12(b)(6) motion. The Court will not convert the motion into a motion for summary judgment in order to consider the evidence, especially given that Plaintiff has moved to amend the complaint to add allegations pertaining to that evidence, as discussed herein. Instead, the allegations of the First Amended Complaint indicate that Mr. Tawil was acting within the course and scope of his employment with Stone Truck, not Ryan Transportation, and there are insufficient allegations that Ryan Transportation controlled Stone Truck and/or Mr. Tawil for vicarious liability to plausibly attach to this shipment.

For the foregoing reasons, Plaintiff has not alleged enough facts in his First Amended Complaint that Ryan Transportation was acting as a motor carrier and employer of Defendant Tawil or that it had sufficient control over Mr. Tawil during the course of the shipment at issue to state a plausible claim for vicarious liability.

> ## 2. Insufficient factual allegations to establish a duty for direct negligence for failing to equip, inspect, repair, and maintain the semi-truck

Plaintiff contends that Ryan Transportation was directly negligent as a motor carrier in

failing to cause all motor vehicles under its control to be systematically inspected, repaired, and maintained. According to the FMCSR, a motor carrier has a duty to equip its commercial motor vehicles in accordance with the requirements of the FMCSR, *see* 49 C.F.R. § 393.1(c), and to "systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles" subject to its control, *id.* § 396.3(a). According to the First Amended Complaint, Defendant Stone Truck owned the truck driven by Defendant Tawil. First Am. Compl. ¶ 8, ECF No. 20. Consequently, to establish a duty, Plaintiff's direct negligence claim against Ryan Transportation depends on its status as a motor carrier. For the same reasons given above, Plaintiff has not set forth enough factual allegations in the First Amended Complaint to state a plausible claim that Ryan Transportation acted as a motor carrier in this transaction, and as a result, that it had a duty to equip and safely maintain the truck used, which it did not own. Consequently, Plaintiff has not stated a claim for direct negligence against Ryan Transportation.

### 3. Insufficient factual allegations to state a claim for negligent hiring

In New Mexico, for a plaintiff to succeed on a claim for negligent hiring, he must show "that the employee was unfit, considering the nature of the employment and the risk he posed to those with whom he would foreseeably associate, and that the employer knew or should have known that the employee was unfit." *Valdez v. Warner*, 1987-NMCA-076, ¶ 11, 106 N.M. 305 (internal citation omitted). Plaintiff alleges that Defendant Tawil drove carelessly to cause the accident. *See* First Am. Compl. ¶¶ 28-29, ECF No. 20. Although Plaintiff asserts in a conclusory fashion that Ryan Transportation negligently failed to safely hire its drivers, Plaintiff did not set forth a factual basis for how Defendant Tawil was unfit when he was hired and how Ryan Transportation should have known he was unfit. For example, there are no allegations indicating that Mr. Tawil or Stone Truck had a history of unsafe driving or safety violations. The Court

therefore concludes that Plaintiff has failed to state a claim for negligent hiring. *Cf. McKeown v. Rahim*, 446 F.Supp.3d 69, 86 (W.D. Va Mar. 16, 2020) (holding that plaintiff failed to state claim for negligent hiring where complaint contained little to no facts indicating defendant should have known driver and his employer were incompetent or would be negligent; complaint did not specify what red flags would have been found or how those red flags would indicate that driver and his employer were unfit).

### B. Plaintiff failed to state a negligence claim against Russell Stover

Plaintiff's negligence claim against Russell Stover rests on several theories as well: direct liability for failing to use ordinary care to assure the trucks were properly maintained, equipped, and operated; vicarious liability as the statutory employer of Defendant Tawil and based on *respondeat superior*; and negligent hiring. *See* First Am. Compl. ¶¶ 81-84. Defendant Russell Stover argues that Plaintiff's complaint against it must be dismissed because he does not plead any factual allegations to establish a basis for holding Russell Stover liable as a motor carrier or for finding it owed Plaintiff a duty of ordinary care as to the manner in which the shipment was transported. When excluding the legal conclusions, Russell Stover claims there are no factual allegations to support its status as a motor carrier. Russell Stover further contends that there are no allegations showing any breach of duty or causal connection between any duty owed by Russell Stover and Mr. Dixon's damages.

### 1. No direct or vicarious liability as a shipper

A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation," 49 U.S.C. § 13102(14), and has the duty "to require observance" of duties or prohibitions required for drivers, 49 C.F.R. § 390.11. A shipper is a "person who sends or receives property which is transported in interstate … commerce." 49 C.F.R. § 376.2(k). In his complaint,

Mr. Dixon alleges that Russell Stover was the "shipper" that hired Stone Truck and Mr. Tawil to transport its goods. First Am. Compl. ¶ 15, ECF No. 20. Plaintiff also asserts therein that Russell Stover is engaged in the business of shipping its goods across the United States and meets the statutory definition of a "motor carrier." *Id.* ¶¶ 14, 80. As for Russell Stover's argument that it was not the statutory employer of Defendant Tawil, Plaintiff failed to rebut its contention in his response, focusing instead on his negligent hiring theory. Despite the lack of a response, the Court nonetheless will look at the merits of whether Plaintiff stated a direct or vicarious liability theory of negligence against Russell Stover.

Although a company may have the authority to act as a shipper, broker, and motor carrier, the court must focus on the specific transaction at issue. *Harris v. FedEx Nat. LTL, Inc.*, 760 F.3d 780, 784 (8th Cir. 2014). The FMCSRs apply to motor carriers, not to shippers who hire independent contractors to transport goods, so the relevant question is whether Russell Stover acted as a motor carrier in the specific transaction in this case. *See id.* at 785. Based on the allegations of the First Amended Complaint, Russell Stover acted as the shipper in this transaction, hiring Ryan Transportation to arrange for the shipment. *See* First Am. Compl. ¶¶ 15-20, ECF No. 20. According to the complaint, Ryan Transportation acted as a broker with its own authority to broker the shipment of goods. *See id.* ¶¶ 18-19. Because Russell Stover was not acting as a motor carrier for this transaction, as a matter of law it was not the statutory employer of Mr. Tawil and had no duty to require Mr. Tawil to observe his FMCSR duties. *Cf. Harris*, 760 F.3d at 785 (rejecting theory that FedEx had duty – nondelegable or otherwise – to require driver to observe his FMCSR duties because FedEx was acting as a shipper, not a motor carrier, in specific transaction where it hired another company to move goods from one service center to another).

Moreover, the allegations do not establish the basis for a duty of Russell Stover, as the

shipper in this transaction, to control the way in which Defendants Stone Truck and Tawil carried

out the transportation. According to the complaint, Ryan Transportation brokered the contract with

Stone Truck, Stone Truck owed the semi-truck, and Mr. Tawil was acting in the course and scope

of his employment with Stone Truck. *See* First Am. Compl. ¶¶ 4, 8, 20, ECF No. 20. Because

Plaintiff failed to allege enough plausible, non-conclusory facts to establish Russell Stover's duty

and breach, Defendant Russell Stover is entitled to dismissal of the direct and vicarious liability

theories against it.

### 2.   Insufficient factual allegations to state a claim for negligent hiring

According to Section 411 of the Restatement (Second) of Torts, an employer is liable for

physical harm to third persons caused by its failure to use reasonable care to select a competent

and careful contractor (a) to perform work that will involve a risk of physical harm unless it is

skillfully and carefully done or (b) to perform any duty that the employer owes to third persons.

Rest. (Second) of Torts § 411. In order to succeed on a negligent hiring claim, the plaintiff must

show that the employee was unfit, considering the nature of the employment and the risk he posed

to those with whom he would foreseeably associate, and that the employer knew or should have

known that the employee was unfit. *Valdez*, 1987-NMCA-076, ¶ 11.

Plaintiff contends he stated a negligence claim against Defendant Russell Stover because

he alleges that Russell Stover failed to make a sufficient inquiry of the carrier's competence, failed

to assure drivers hired by the carriers were qualified in accordance with the FMCSA, failed to

assure the hired companies complied with NMDOT rules and regulations, and failed to assure the

hired companies inspected the trucks for safe operation. Pl.'s Resp. 8, ECF No. 33 (citing First

Am. Compl. ¶ 85, ECF No. 20). Finally, Plaintiff asserts he alleged enough plausible facts

establishing that Russell Stover failed to assure Defendant Tawil was fit, qualified, trained, and

supervised, and that failure allowed Defendant Tawil to drive the vehicle that caused the accident.

While Plaintiff asserts numerous conclusory allegations that Russell Stover negligently failed to hire companies that properly hired safe drivers, complied with regulations, and operated and inspected its vehicles for safe operation, Plaintiff failed to allege any facts explaining how Defendant Tawil was unfit, unqualified, or untrained when he was hired and how Russell Stover had reason to know of the shortcomings of Ryan Transportation, Stone Truck, and/or Mr. Tawil.[9] Contrary to Plaintiff's arguments and the cases upon which he relies, the allegations in the First Amended Complaint are too vague and devoid of factual detail to state a claim. Adding one conclusory allegation on top of another does not render the allegations sufficient where there are no underlying facts to render the conclusory allegations plausible. As explained above, there are no allegations indicating that Mr. Tawil or Stone Truck had a history of unsafe driving or safety violations or that Ryan Transportation had a history of inadequately failing to ensure companies it hired properly supervised their drivers. Nor are there factual allegations about poor safety ratings, deficiencies in the maintenance of the truck, failure to carry necessary insurance or licensure, or a like fact to explain the basis of liability. Plaintiff points to the allegation that Defendant Tawil failed to acquire, demonstrate, and maintain qualifications to safely operate the truck as required by the Federal Motor Vehicle Carrier Safety Act. *See* First Am. Compl. ¶ 45(k), ECF No. 20. Plaintiff, however, has not set forth a factual allegation as to what qualifications Mr. Tawil failed

---

[9] Defendant Russell Stover argues in its reply that Plaintiff did not plead a claim for negligent selection of an independent contractor. Def.'s Reply 3-4, ECF No. 35. Although as discussed herein, Plaintiff did not set forth enough plausible facts to support a negligent hiring claim, the Court finds that Plaintiff asserted conclusory allegations of such a claim. *See*, *e.g.*, First Am. Compl. ¶ 85, ECF No. 20 at 20 of 24 (alleging that Russell Stover breached its duties of ordinary care to the traveling public by negligently failing to ensure drivers hired to transport its goods were properly screened, certified, educated, and retained and were qualified in accordance with the FMCSA; by failing to assure that the companies it hired adopted policies and procedures to assure its drivers remained trained and qualified to operate semi-trucks, were adequately rested and alert when operating semi-trucks, and did not drive while distracted by cell phones and other electronic devices; by failing to assure that companies it hired properly supervised their drivers, complied with the New Mexico DOT rules and regulations for hiring, training, educating, and supervising commercial semi-truck drivers, and inspected and maintained their semi-trucks, including brakes, tires, and recall notifications).

to obtain or which specific federal safety requirement he failed to follow to plausibly show that he was unfit; that, had Defendant Russell Stover inquired of his competence, the inquiry would have shown that he was unfit; and that the failure to have the particular qualification or maintain the driver qualification file caused the accident.

By way of another example, Plaintiff asserts that Russell Stover failed to ensure companies it hired equipped their trucks with technology to prevent distracted driving by cell phones. *See* First Am. Compl. ¶ 85(i), ECF No. 20. However, there are no factual allegations in the complaint that link such technology to preventing the accident in this case, such as alleging that Defendant Tawil was driving while using a cell phone at the time of the accident. In other words, the Court is unable to draw a reasonable inference from the non-conclusory factual allegations in the First Amended Complaint that Defendant Russell Stover may be liable for negligently hiring, supervising, training, or retaining Ryan Transportation, Stone Truck, or Mr. Tawil. Accordingly, based on the allegations of the First Amended Complaint, the negligent hiring claim against Defendant Russell Stover should be dismissed.

## VI.    Motion for Leave to File Plaintiff's Second Amended Complaint

Generally, a court should freely give leave to amend a complaint when justice so requires. Fed. R. Civ. P. 15(a)(2).  Whether to allow amendment of the pleadings is within the discretion of the trial court. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). The purpose of Rule 15 "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Id.* at 1204 (internal quotations omitted). Leave sought must be freely given in the absence of any justifiable reason for the denial of the motion, such as undue delay, bad faith, repeated failure to cure deficiencies by amendments, undue prejudice, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment is futile

if the complaint, as amended, would be subject to dismissal for any reason, including that it would not survive a motion to dismiss or a motion for summary judgment. *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001); *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quoting *Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999)).

After a scheduling order deadline has passed, a party seeking leave to amend must not only satisfy Rule 15(a)'s standard but also demonstrate good cause for seeking modification under Federal Rule of Civil Procedure 16(b)(4). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014). Rule 16(b)(4)'s good-cause standard means showing that the scheduling deadlines cannot be met despite the plaintiff's diligent efforts, for example, if the plaintiff learned new information in discovery or if the underlying law changed. *Id.* at 1240. A court may generally find good cause when the plaintiff has been diligent, where the need for more time was not foreseeable or the party's fault, and when refusing to grant the amendment would create a substantial risk of unfairness to the party. *See Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 988 (10th Cir. 2019). Mere carelessness does not satisfy the diligence requirement. *Id.* at 989. Although prejudice is relevant to the inquiry, the focus is on the moving party's reasons for seeking the change. *See id.* at 988. The Tenth Circuit has "noted the 'rough similarity' between the 'undue delay' standard of Rule 15 and the 'good cause' standard of Rule 16." *Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009) (citing *Minter*, 451 F.3d at 1205 n. 4.).

## A. Analysis

Plaintiff has sought leave to amend his First Amended Complaint. Among other allegations, Plaintiff seeks to add factual allegations that, pursuant to its contract with Russell Stover, Ryan Transportation agreed to accept shipments from Russell Stover in its "capacity as a

motor carrier." Pl.'s Proposed Second Am. Compl. ¶ 31, ECF No. 49-1. Additionally, Plaintiff seeks to allege that Ryan Transportation, pursuant to the Transportation Contract, assumed exclusive control and direction of the persons operating equipment or engaging in transportation services as well as the responsibility for the acts and omissions of such persons. *Id.* ¶ 34. Furthermore, Plaintiff requests to amend his complaint to allege that Ryan Transportation, under its Transportation Contract with Russell Stover, assumed non-assignable responsibilities for goods shipped, absent written authorization to assign by Russell Stover, and that it remained contractually responsible for fulfillment of all obligations under the Transportation Contract. *Id.* ¶¶ 35-36.

Defendants Ryan Transportation and Russell Stover contend that the motion to amend should be denied because it is untimely and amending the complaint would be futile for lack of personal jurisdiction over Ryan Transportation and for failure to state a claim. Regarding timeliness, Defendants argue that discovery has been stayed, so Plaintiff must have known all the facts underlying the proposed complaint months before he filed this motion to amend. They contend that Plaintiff's waiting six months after the Court allowed Plaintiff to amend the original complaint and eight months after the Court's deadline in its Rule 16 Scheduling Order renders the delay undue.

### 1. Amendment would be futile

With respect to the proposed new allegations Plaintiff asserts against Russell Stover, the proposed second amended complaint states that the shipment was subject to the written contract between Russell Stover and Ryan Transportation in which Ryan Transportation was the "carrier," Ryan Transportation accepted the goods in its capacity as a motor carrier, and Ryan Transportation's responsibilities for goods shipped by Russell Stover were non-assignable absent written authorization by Russell Stover. *See* Proposed Second Am. Compl. ¶¶ 30-31, 35, ECF No.

49-1. These new allegations do not establish a duty by Russell Stover regarding the shipment at issue or establish non-conclusory facts to state a plausible negligent hiring claim. Consequently, because the proposed second amended complaint does not salvage a claim against Russell Stover, the Court will grant Russell Stover's motion to dismiss and dismiss Russell Stover from this suit.

As for Ryan Transportation, it asserts that the Court has no personal jurisdiction over it so amendment would be futile. This Court, however, has determined that it has personal jurisdiction over Ryan Transportation based on the evidence the parties submitted. Moreover, the proposed second amended complaint adds allegations based on the evidence that establishes personal jurisdiction, and thus, amendment would not be futile based on jurisdiction. *See e.g.*, *id.* ¶ 29, ECF No. 49-1.

Turning then to whether the proposed second amended complaint states a negligence claim, Plaintiff's proposed complaint asserts the following new factual allegations relevant to Ryan Transportation: (i) the bill of lading lists Ryan Transportation as the "Carrier" for the shipment; (ii) the written contract between Russell Stover and Ryan Transportation identifies Ryan Transportation as the "carrier"; (iii) under the contract, Ryan Transportation represented itself as a motor carrier, assumed exclusive control and direction of persons operating the equipment or engaged in transportation services, assured full responsibility for the acts and omissions of such persons, agreed to operate all equipment in a lawful manner, accepted each shipment of goods in its "capacity as a motor carrier"; and (iv) Ryan Transportation accepted legal responsibility to transport the shipment and its responsibilities were non-assignable absent written authorization by Russell Stover. Proposed Second Am. Compl. ¶¶ 28, 30-31, 34-36, ECF No. 49-1.

Despite the assertions in the proposed complaint, Ryan Transportation argues that the Broker Addendum to the Transportation Contract between Russell Stover and Ryan Transportation

controls if there are any conflicting provisions in the terms of the Transportation Contract and the Broker Addendum clearly limits Ryan Transportation's role to that of a broker. Indeed, the contract was signed subject to the Broker Addendum. Transportation Contract, ECF No. 48-1 at 30 of 31. That addendum states that the terms of the "Broker Addendum shall always control in the event of any conflicting terms and provisions contained in the Contract and this Broker Addendum." Transportation Contract, Broker Addendum, ECF No. 48-1 at 31 of 31. Plaintiff refers to this contract, which includes the addendum, in the proposed second amended complaint and requests to attach the contract as an exhibit thereto. *See* Proposed Second Am. Compl. ¶ 30, ECF No. 49-1. This Court may thus properly consider the addendum when determining whether Plaintiff can state a claim.

Determining the meaning of the contract is not always confined to its terms where there is ambiguity. *See Rivera v. American General Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398 (quotations and citation omitted) ("The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive."). The Court finds that the language of the Broker Addendum clearly controls, and the language therein also unambiguously states that Ryan Transportation holds itself out to be a broker:

> It is acknowledged and agreed that Ryan Transportation Service, Inc. ("Ryan") act exclusively as a U.S. federally licensed property broker as defined at 49 USC 13102. Reference to Ryan as "Carrier" in the Contract … is strictly for the convenience of the parties and does not create or imply a holding out or assumption by Ryan of motor carrier authority, equipment, personnel, operations, capabilities, insurance or liabilities.

Broker Addendum, ECF No. 48-1 at 31 of 31. The addendum further unambiguously says that Ryan Transportation's role was to arrange the transportation of the shipment by another motor carrier: "As a broker, Ryan shall arrange for transportation with motor carriers that have a

Satisfactory safety rating, if rated, and shall contractually require such carriers to have proper equipment and personnel.…" *Id.* After setting out what Ryan Transportation would require of such carriers, the Addendum further clarifies: "However, carriers are independent contractors, not subcontractors, or representatives of Ryan as Ryan neither undertakes, insures nor performs the physical transportation service nor supplies or warrantees the goods transported." *Id.*

Although generally determining whether a company is a motor carrier or broker is a fact question, here the terms of the Addendum are so clear, unambiguous, and controlling that, as a matter of law, Plaintiff cannot prevail on a claim against Ryan Transportation based on its alleged status as a motor carrier. Plaintiff relies on the Transportation Contract in support of his allegations suggesting that Ryan Transportation identified itself as the "carrier," but the title page of the contract has "motor carrier" crossed out with "broker" substituted. Transportation Contract, ECF No. 48-1 at 17 of 31. Even the provision relied upon by Plaintiff to establish that Ryan Transportation accepted the shipment in its capacity as a motor carrier is subject to the exception: "unless the parties otherwise expressly agree in writing." *Id.* at 19 of 31. The Broker Addendum is a clear writing to which the parties agreed that contains contrary, controlling language. Nothing in the Broker Addendum conveys an impression that Ryan Transportation would be the party providing transportation for the shipment.

This case is not one like in *Essex* where the shipping company provided transportation via their own drivers and trucks for one part of the shipment and served as an intermediary by arranging for another company to provide the driver for the other part of the assembly being shipped. *See Essex*, 885 F.3d at 1300. As the Eleventh Circuit noted in *Essex*, a company can insulate itself from liability for a particular shipment "if it makes clear in writing that it is merely acting as a go-between to connect the shipper with a suitable third-party carrier." *Id.* at 1302. That

35

is exactly what the Broker Addendum clearly and unambiguously did.[10] For the foregoing reasons, the Court concludes that amending the complaint to add a negligence claim against Ryan Transportation based on its duty as a motor carrier would be futile.

Similarly, amending the complaint would be futile based on a right-to-control negligence theory. The new allegations primarily focus on elements for the motor carrier theory and do not add any underlying factual allegations to suggest that Plaintiff could plausibly succeed on the theory. Plaintiff, however, contends that the amended complaint plausibly states a claim because he alleges, citing the Transportation Contract, that Ryan Transportation assumed exclusive control and direction of the persons operating the equipment and full responsibility for the acts and omissions of such persons. *See* Proposed Am. Compl. ¶ 34, ECF No. 49-1. Although Plaintiff makes this allegation, the controlling Broker Addendum, which it seeks to attach to the proposed complaint, clearly states that the carriers are independent contractors, and that as a broker, Ryan Transportation would contractually require the carriers to have proper equipment. Broker Addendum, ECF No. 48-1 at 31 of 31. It is also undisputed that the Broker – Contract Carrier Agreement states: "CARRIER warrants that it is an independent contractor and exercises exclusive control over its equipment, employees, and the means and methods of carrying out its contractual obligations." Agreement, ECF No. 31-1.

Although the contract sets forth certain expectations that Ryan Transportation contractually would require of the carrier, Ryan Transportation did not contractually maintain control over the means and methods of the transportation, including the performance of the driver. *Cf. Monett v.*

---

[10] This case is likewise distinguishable from *Tryg* where the shipper hired a company, "CHRW", to transport a chocolate shipment, but unbeknownst to the shipper, CHRW subcontracted with a separate company to transport the chocolate, and the latter agreement contained a confidentiality clause. *See Tryg*, 767 F. App'x at 285. The Third Circuit affirmed the district court's decision finding that CHRW was liable as a carrier because it held itself out as one. *See id.* at 285-86. Unlike here, in *Tryg* there was no written contract between the shipper and CHRW making it clear that CHRW was acting as a broker. *See id.* at 287.

*Dona Ana County Sheriff's Posse*, 1992-NMCA-096, ¶¶ 3-6, 12-13, 114 N.M. 452 (affirming summary judgment for fair and its manager on issue of *respondeat superior* where member of volunteer fire department in golf cart collided with plaintiff because no evidence was presented that fair or manager had right to control details of paramedic activities that were supervised by volunteer fire department supervisors, that they paid the volunteer, or that they had right to terminate his services, even though manager supplied golf carts and gave instructions for their use); *Schramm v. Foster*, 341 F.Supp.2d 536, 543-44 (D. Md. 2004) (concluding that company that arranged transportation was not vicariously liable under right-to-control theory for driver of truck where contract stated carrier was independent contractor and that drivers were not employees or agents of the company, even though company directed driver to pick up and deliver load at specific times, gave directions, and required him to use load locks on the trailer). Control over the result to be accomplished, such as controlling the location for pick up and time of delivery, is not enough to make an independent contractor an employee. *Schramm*, 341 F.Supp.2d at 544. Consequently, based on the contents of the proposed amended complaint and attachments, Plaintiff does not plausibly state a claim against Ryan Transportation on a right-to-control theory, and amending the complaint would be futile.

Finally, the proposed second amended complaint does not allege additional non-conclusory allegations against Defendant Ryan Transportation to state a claim for negligent hiring. Consequently, the Court will deny amendment of the complaint based on futility.

## 2. Timeliness

Because amendment would be futile, those grounds alone compel the Court to deny Plaintiff's motion to amend. This Court therefore need not consider the untimeliness issue. Nevertheless, the Court notes that Plaintiff failed to explain why the scheduling deadlines could

not be met despite his diligent efforts. The factual allegations were not based on new information learned in discovery or an underlying change in the law. According to Plaintiff, his counsel did not fully understand the importance of the documents he seeks to attach to the proposed complaint until Judge Fouratt pointed out the absence of the documents during the April 21, 2020 hearing. *See* Pl.'s Reply 8, ECF No. 54. Counsel, however, did not move to amend until over three months later on July 24, 2020. Pl.'s Mot. to Amend, ECF No. 48. No explanation has been offered to explain this delay or the lack of diligence. Mere carelessness does not satisfy Rule 16's good-cause standard and Plaintiff has not shown that the scheduling deadlines could not be met despite his diligent efforts. Although any prejudice is minimal because discovery has been stayed since April 21, 2020, the Court nevertheless finds that Plaintiff failed to satisfy Rule 16(b)(4)'s good-cause standard, and thus the motion to amend may be denied on grounds of untimeliness as well.

### B.  Attorney's Fees and Costs Will Not Be Imposed

In its response to Plaintiff's motion to amend, Russell Stover requests sanctions in the form of attorney's fees and costs associated with it having to respond to what it says is a clearly erroneous motion. *See* Def. Russell Stover's Resp. 8-9, ECF No. 51. While the Court is dismissing Russell Stover from the case, it does not find that Plaintiff acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Sanctions are therefore not warranted, and the Court will deny Russell Stover's request for attorney's fees and costs.

**IT IS THEREFORE ORDERED** that

1.  Defendant Russell Stover Chocolates, LLC's *Motion to Dismiss the Claims against it in Plaintiff's First Amended Complaint [Doc. 20]* (**ECF No. 23**) is **GRANTED**.

2.  Defendant Ryan Transportation Service, Inc.'s *Motion to Dismiss pursuant to Fed. R.*

*Civ. P. 12(b)(2) and 12(b)(6) and Memorandum in Support* (**ECF No. 31**) is **DENIED** under Rule 12(b)(2), but is **GRANTED** under Rule 12(b)(6) for failure to state a claim.

3.  Plaintiff's *Motion for Leave to File Surreply in Opposition to Defendant Ryan Transportation Service, Inc.,'s Motion to Dismiss* (**ECF No. 48**) is **GRANTED IN PART AND DENIED IN PART**. The Court will **GRANT** Plaintiff's request that the Court consider the attached exhibits and certain arguments and authority as described herein. The Court will otherwise **DENY** this motion.

4.  Plaintiff's *Motion for Leave to File Plaintiff's Second Amended Complaint* (**ECF No. 49**) is **DENIED**.

5.  Defendants Russell Stover and Ryan Transportation are **DISMISSED** from the case.

_____
SENIOR UNITED STATES DISTRICT JUDGE