# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

WALTER N. DIXON,

      Plaintiff,

v.                                 No. 2:19-CV-00945-JCH-GJF

STONE TRUCK LINE, INC., a foreign
corporation, ISMAIL Y. TAWIL,
RUSSELL STOVER CHOCOLATES, LLC,
a foreign corporation, and RYAN TRANSPORTATION
SERVICE, INC.,

      Defendants.

## PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND RECONSIDER ITS ORDER DISMISSING DEFENDANTS RYAN TRANSPORTATION SERVICE, INC. AND RUSSELL STOVER CHOCOLATES, LLC (DOC. 57)

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

      COMES NOW Plaintiff Walter N. Dixon ("Plaintiff") and respectfully files this Motion for Leave to File Plaintiff's Amended Complaint and Reconsider Its Order Dismissing Defendants Ryan Transportation Service, Inc. ("Ryan Transportation") and Russell Stover Chocolates, LLC ("Russell Stover") (Doc. 57) (hereafter "Motion" or "Motion for Leave"), and in support of this Motion respectfully shows the Court as follows:

## INTRODUCTION

      Pursuant to Rule 15(a), district courts have discretion to grant plaintiffs leave to amend their pleadings when justice so requires, and the United States Supreme Court has proclaimed that a district court should heed its mandate of freely granting leave to afford plaintiffs with the maximum opportunity for their claims to be decided on their merits. Rule 54(b) further allows a district court to exercise its discretion to reconsider an earlier order based on (1) newly discovered

evidence previously unavailable, (2) a change in the pertinent law, or (3) to correct clear error or prevent manifest injustice. Because Plaintiff's proposed Amended Complaint includes additional factual allegations obtained from Defendants in discovery that cure the deficiencies that resulted in dismissal of his claims against Defendants Ryan Transportation and Russell Stover, Plaintiff requests that this Honorable Court, in the interest of justice, exercise its discretion and grant Plaintiff's Motion for Leave and permit the filing of Plaintiff's Amended Complaint, and reconsider and vacate its Order entered December 3, 2020 (Doc. 57) that dismissed Plaintiff's claims against Defendants Ryan Transportation and Russell Stover for failure to state a claim.

A defendant can seek the court's discretion to deny the Motion for Leave by demonstrating sound reasons justifying the denial of Plaintiff's Motion. Under the Tenth Circuit's framework, sound reasons that a defendant may present include undue prejudice, undue delay, and futility of amendment. Because Plaintiff's proposed amendments arise from the same subject matter as his earlier pleadings, Defendants cannot rely on undue prejudice to satisfy their burden. Likewise, because the Court's order staying discovery entered April 1, 2020 (Doc. 43) foreclosed Plaintiff's ability to discover specific, liability-establishing facts in Defendants' possession and shielded Defendants from having to provide factual information known to them concerning this matter, any purported delay does not constitute undue delay. Similarly, because Plaintiff's proposed Amended Complaint alleges sufficient non-conclusory allegations to state plausible claims for relief against them, the named Defendants cannot rely on the reason of futility of amendment to satisfy their burden. For these reasons, more fully discussed below, this Honorable Court should grant Plaintiff's Motion for Leave and permit the filing of Plaintiff's Amended Complaint, and reconsider and vacate the part of its Order entered December 3, 2020 (Doc. 57) that dismissed Plaintiff's claims against Defendants Ryan Transportation and Russell Stover.

## ARGUMENT & AUTHORITIES

I.   **PLAINTIFF SHOULD BE GIVEN LEAVE TO FILE HIS AMENDED COMPLAINT BECAUSE THE AMENDMENTS ADD FACTUAL ALLEGATIONS OBTAINED FROM DEFENDANTS IN DISCOVERY AND ENSURE THE ADJUDICATION OF PLAINTIFF'S CLAIMS ON THE MERITS.**

Federal Rule of Civil Procedure 15(a) requires that leave to file an amended complaint be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  Rule 16(b)(4) permits the Court to modify a scheduling order upon a showing of good cause.  Fed. R. Civ. P. 16(b)(4).  Federal Rule of Civil Procedure 54(b) also provides in relevant part:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties <u>and may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities.</u>

*See* Fed. R. Civ. 54(b) (underline added).  Since the Court's Order entered December 3, 2020 (Doc. 57) "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties," and since this Motion for Leave requests in part that the Court vacate part of its Order that dismissed Defendants Ryan Transportation and Russell Stover from the case, this Motion may also be considered in part a Motion to Reconsider under Rule 54(b).  Although not specified in the rules, the Tenth Circuit has concluded the standards for reconsidering an order under Rule 54 are similar to those found in Rule 59, and granting a Rule 59( e) Motion to Alter or Amend a Judgment is warranted based on (1) newly discovered evidence previously unavailable, (2) a change in pertinent law, or (3) to correct clear error or to prevent manifest injustice.  *See Servants of Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000); *Phelps v. Hamilton,* 122

F.3d 1309, 1323-24 (10th Cir. 1997); *Joshi Technologies Internat'l, Inc. v. Chi Energy, Inc*., Civ.

No. 15-467 KG/CG, 2019 WL 2745583, at * 2 (D.N.M. July 1, 2019).

A district court also has considerable discretion in deciding a Rule 54 motion.  *See*

*Phelps,* 122 F.3d at 1324.  Thus, pursuant to Rule 15(a), Rule 16(b)(4), and Rule 54(b), Plaintiff

requests that this Honorable Court exercise its discretion and, in the interest of justice and for the

grounds shown, grant Plaintiff leave to file his proposed Amended Complaint and reconsider and

vacate part of its Order that dismissed Plaintiff's claims against Defendants Ryan Transportation

and Russell Stover, because Plaintiff's proposed Amended Complaint includes additional factual

allegations that establish plausible claims against the Defendants and cure the deficiencies that

resulted in dismissal of his claims, so that Plaintiff's claims against Defendants Ryan

Transportation and Russell Stover may be adjudicated on their merits.

## II. PLAINTIFF HAS ESTABLISHED GROUNDS UNDER RULES 15(A), 16(B)(4), AND 54(B) THAT WARRANT THE COURT'S EXERCISE OF ITS DISCRETION TO GRANT PLAINTIFF'S MOTION AND PERMIT THE FILING OF PLAINTIFF'S AMENDED COMPLAINT.

While the decision to grant leave to amend a complaint is within the sound discretion of

the district court, the court's discretion is circumscribed by the proviso that leave "shall be freely

given when justice so requires." *Kent v. Albuquerque Tech.-Vocational Inst.*, No. 84-1606 HB,

1986 U.S. Dist. LEXIS 31179, at *1 (D.N.M. Jan. 6, 1986). Based on Rule 15(a)(2)'s purpose, a

district court should provide a plaintiff with "the maximum opportunity for [his] claim to be

decided on its merits rather than on procedural niceties." *Hardin v. Manitowoc-Forsythe Corp.*,

691 F.2d 449, 456 (10th Cir. 1982); s*ee also Foman v. Davis*, 371 U.S. 178, 182 (1962)

(proclaiming that the mandate of freely granting leave to amend "is to be heeded").

In other words, if the factual allegations underlying a plaintiff's complaint can properly

afford him relief, "he ought to be afforded an opportunity to test his claim on the merits." *Foman*,

371 U.S. at 182; *see also Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999) ("The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits."). To this end, following the dismissal of a complaint for failure to state a claim, a district court should freely grant leave if the plaintiff's amended complaint appears to correct any deficiencies in the original complaint. *See Triplett v. LeFlore Cty.*, 712 F.2d 444, 446 (10th Cir. 1983); *see also Consol. Data Terminals v. Applied Dig. Data Sys., Inc.*, 708 F.2d 385, 400 (9th Cir. 1983) (citing *U.S. v. Hardy*, 368 F.2d 191, 192 (10th Cir. 1966) (holding that a district court should allow parties to amend their pleadings to "flesh out" factual allegations or legal theories that were previously defective)).

In this case, Plaintiff's proposed Amended Complaint will serve the interest of justice and promote judicial efficiency. Through his Amended Complaint, Plaintiff seeks to flesh out and add the factual allegations necessary to properly state plausible claims against the named Defendants. *See* Plaintiff's Amended Complaint, pp. 7–45 (attached hereto as *Exhibit A*); *see also Consol. Data Terminals*, 708 F.2d at 400. Plaintiff includes additional factual allegations to reflect the circumstances surrounding the innerworkings of the transportation supply chain consisting of Defendants Stone Truck Line, Russell Stover, and Ryan Transportation (including its violations of 49 C.F.R. § 371.7, 49 U.S.C §13901(c), 49 U.S.C. § 14102(a), "MAP-21," and its contractual agreement with Defendant Stone Truck Line by holding itself out as the "Carrier"), and has further alleged additional facts that show the transportation supply chain's responsibility for unsafely scheduling, in violation of the FMCSA and FMCSR's hours-of-service laws, an unsafe and incompetent motor carrier, utilizing an unsafe and unqualified driver, for a "time is of the essence" mission—which ultimately culminated in Defendant Tawil driving excessive hours that caused

him to be fatigued and was a proximate cause of his driver negligence in disregarding oncoming traffic and colliding with Plaintiff. *See* Plaintiff's Amended Complaint, pp. 5-8, 14-23, 27-45.

Plaintiff has also alleged additional facts to plausibly show the potential vicarious liability of Defendants Stone Truck Line, Ryan Transportation, and Russell Stover for the negligence of Defendant Tawil under the FMCSA and Federal Regulations and New Mexico law; and plausibly show the potential direct liability of Defendants Stone Truck Line, Ryan Transportation, and Russell Stover for their negligence in hiring an unfit and incompetent driver (Defendant Tawil); potential liability of Defendants Ryan Transportation and Russell Stover in hiring an unfit and incompetent motor carrier (Defendant Stone Truck Line); and Defendants' potential joint enterprise liability under the FMCSA, Federal Regulations, and New Mexico state law.  *See, e.g.,* Plaintiff's Amended Complaint pp. 7-9, 11-15 (allegations to plausibly show Defendants' direct liability for negligence); pp. 15-23 (allegations to plausibly show Defendants' vicarious liability and direct liability for negligence under the FMCSA, FMCSR, and New Mexico state law).

Granting Plaintiff leave to file his proposed Amended Complaint heeds Rule 15(a)'s mandate and furthers its objective by allowing the clarified allegations to proceed to the next phase of the litigation process, so that Plaintiff's claims against the named Defendants would be efficiently adjudicated on their merits. *See Foman*, 371 U.S. at 182; *Calderon*, 181 F.3d at 1186; *Hardin*, 691 F.2d at 456.  Plaintiff also meets the grounds found in Rule 16(b)(4) and Rule 54(b) because Plaintiff's proposed Amended Complaint includes additional factual allegations recently obtained from Defendants Stone Truck Line and Tawil in discovery that cure the deficiencies that resulted in dismissal of his claims against Defendants Ryan Transportation and Russell Stover. This Court stayed discovery in its Order entered April 21, 2020 (Doc. 43), and Plaintiff was unable to obtain discovery from Defendant Ryan Transportation and only limited discovery from the other

Defendants.   After the order staying discovery was lifted following the Court's ruling on Defendants Ryan Transportation's and Russell Stover's motions to dismiss on December 3, 2020 (Doc. 57), Plaintiff promptly engaged in discovery with Defendants Stone Truck Line and Tawil and among other things, obtained from Defendant Stone Truck Line Defendant Tawil's driver qualification file and confirmation of load and trip documents showing Defendant Ryan Transportation as the carrier that accepted responsibility for the shipment.   Plaintiff then prepared and filed his Amended Complaint and this Motion to include the additional non-conclusory, liability-establishing facts in his proposed Amended Complaint.

For these reasons, and in the interest of justice, this Court should exercise its discretion and grant Plaintiff's Motion for Leave, as the proposed Amended Complaint adds additional factual allegations from information recently obtained in discovery from Defendants, and the additional factual allegations correct deficiencies in his earlier pleadings and permits Plaintiff's claims against Defendants to be decided on their merits.  *See Triplett*, 712 F.2d at 446.

**III.   DEFENDANTS CANNOT DEMONSTRATE ANY SOUND REASON JUSTIFYING DENIAL OF PLAINTIFF'S MOTION FOR LEAVE UNDER THE TENTH CIRCUIT'S FRAMEWORK, BECAUSE THE AMENDED COMPLAINT WILL NOT UNDULY PREJUDICE DEFENDANTS; WAS NOT FILED WITH UNDUE DELAY; AND THE AMENDMENTS ARE NOT FUTILE.**

A district court should freely grant leave to amend, unless the opposing party demonstrates some sound reason for denial, such as undue delay; bad faith or dilatory motive; repeated failure to cure deficiencies by amendments previously allowed; undue prejudice; or futility of amendment. *See, e.g.*, *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citing *Foman*, 371 U.S. at 182). Therefore, this Honorable Court should grant this Motion for Leave, because the proposed amendments arise from the same subject matter as Plaintiff's earlier pleadings; Plaintiff had no way of knowing specific, liability-establishing facts in the possession of and known to

Defendants when he filed his earlier complaint; and the proposed Amended Complaint alleges

sufficient non-conclusory facts to state plausible claims for relief against Defendants in this case.

**A. Plaintiff's proposed Amended Complaint will not unduly prejudice Defendants because the amendments arise from the same subject matter and Defendants cannot demonstrate anything more than ordinary inconveniences.**

Based on Tenth Circuit precedent, a significant factor to consider in a motion for leave to

amend (and motion to reconsider) is whether the proposed amendments unduly prejudice the

defendant. *Velocity Press v. Key Bank, NA*, 570 Fed. App'x 783, 788 (10th Cir. 2014) (quoting

*Minter*, 451 F.3d at 1207). Typically, district courts find sufficient prejudice when the proposed

amendments unfairly affect a defendant's ability to prepare its defense. *See Velocity Press*, 570

Fed. App'x at 788 (quoting *Minter*, 451 F.3d at 1208). Put another way, proposed amendments do

not unduly prejudice a defendant unless the amended claims arise from a different subject matter

than the original complaint's allegations and allege significant new factual issues. *Abraham v.

WPX Energy Prod., LLC*, 322 F.R.D. 592, 640–41 (D.N.M. 2017) (quoting *Minter*, 451 F.3d at

1208). Moreover, the Tenth Circuit has concluded that a defendant's expenditure of significant

time, money, and effort is not reason for a district court to deny a motion for leave to amend,

because these expenditures, while prejudicial, do not rise to the level of undue prejudice. *See, e.g.*,

*Bylin v. Billings*, 568 F.3d 1224, 1230–31 (10th Cir. 2009).

For example, in *Deakin v. Magellan Health, Inc.*, this Court granted the plaintiffs' motion

for leave to amend because, inter alia, the proposed amendments arose from the same subject

matter as the original complaint. *Deakin v. Magellan Health, Inc.*, No. 1:17-CV-00773-WJ-KK,

2019 U.S. Dist. LEXIS 179992, at *4 (D.N.M. 2019). In that case, the plaintiffs moved for leave

to amend more than two years after filing their original complaint. *Deakin*, 2019 U.S. Dist. LEXIS

179992, at *2. Through their proposed amendments, the plaintiffs sought to clarify necessary

factual allegations related to classification of parties as specific types of employees based on the factual allegations underlying the plaintiffs' claims within the original complaint. *Id.* At *3.   In response, the defendants argued that the proposed amended complaint unduly prejudiced them because the amendments would alter the scope, size, and course of the litigation; alter the claims and defenses at issue; and require significant amounts of additional discovery. *Id.* at *3–4.

In granting the motion, the Court emphasized that any increase in effort and expense required to litigate the case did not rise to the level of prejudice required to deny plaintiffs' motion. *Id.* at *3 (citing *Bylin*, 568 F.3d at 1230–31).   Next, the Court concluded the defendants' second argument was without merit because the case would still turn on the same factual issues underlying the plaintiffs' claims. *Deakin*, 2019 U.S. Dist. LEXIS 179992, at *3; *see also Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994) (holding district court abused its discretion by denying the motion for leave to amend when proposed amendments tracked factual allegations in original complaint). As for their final argument, the Court concluded the defendants had no way of knowing how much discovery would be required at that point in the litigation because the "contours of [the] case [were] not yet defined," and little discovery had been conducted up to that point. *Deakin*, 2019 U.S. Dist. LEXIS 179992, at *4.   As a result, this Court concluded there was no sound reason justifying denial of the plaintiffs' motion for leave to amend because the defendants failed to demonstrate anything more than ordinary inconveniences related to litigating complex cases. *See id.* at *3–4.

In this case, as in *Deakin*, Plaintiff's proposed Amended Complaint will not unduly prejudice the named Defendants because the amended allegations arise from the same underlying facts and subject matter as Plaintiff's earlier pleadings. *See Deakin*, 2019 U.S. Dist. LEXIS 179992, at *2-4; *see also Abraham*, 322 F.R.D. at 640–41.   Plaintiff seeks to provide additional factual allegations to show Defendants' potential liability under the FMCSA, Federal Regulations,

and New Mexico state law related to the qualifications, or lack thereof, of Defendants Tawil and Stone Truck Line; the status of Defendants Ryan Transportation and Russell Stover as a motor carrier and their right of control over and accepting responsibility for the shipment that subjects them to potential vicarious and direct liability for negligence; Defendant Ryan Transportation's misrepresentations and operations in excess of its operating authority in violation of 49 C.F.R. §371.7, 49 U.S.C § 13901(c), 49 U.S.C. § 14102(a), and MAP-21, and its right of control that subjects it to potential vicarious and direct liability; and the legal responsibilities imposed on Defendants Russell Stover, Ryan Transportation, and Stone Truck Line by the FMCSR and their respective contracts that establish their potential liability under the FMCSA, Federal Regulations, and New Mexico law.  *See* Plaintiff's Amended Complaint (Ex. A) pp. 7–45; *Ying Ye v. Global Sunrise, Inc.*, No. 1:18-CV-01961, 2020 U.S. Dist. LEXIS 37142, at *13–14 (N.D. Ill. Mar. 4, 2020) (denying motion to dismiss because plaintiff alleged sufficient facts implicating significant control); *Sperl v. C.H. Robinson Worldwide, Inc.*, 946 N.E.2d 463, 471–73 (2011) (affirming a jury verdict for plaintiff because a reasonable person could find sufficient control based on direct dispatching of carrier's driver, encouraging hours-of-service violations through prescribed delivery timeline, specifying the type of trailer the carrier must use, requiring frequent driver updates, and reserving right to reduce the carrier's pay for noncompliance or delay).  Through the proposed amendments, Plaintiff also asserts plausible claims for negligent hiring of Defendant Tawil against Defendants Stone Truck Line, Ryan Transportation and Russell Stover; negligent hiring of Defendant Stone Truck Line against Defendants Ryan Transportation and Russell Stover; and joint enterprise liability against Defendants Stone Truck Line, Ryan Transportation, and Russell Stover under the FMCSA, Federal Regulations, and New Mexico law.  *See* Plaintiff's Amended Complaint (Ex. A) pp. 7-9, 11-15, 27-45. *See also* Restatement (Second) of Torts § 411.

There is also no question that Plaintiff's proposed Amended Complaint tracks the same factual allegations underlying the claims within his earlier pleadings, so that Defendants' potential liability will turn on the same underlying factual allegations.  *See* Plaintiff's First Amended Complaint (Doc. 20).  *See Deakin*, 2019 U.S. Dist. LEXIS 179992, at *3; *see also Velocity Press*, 570 Fed. App'x at 788; *Gillette*, 17 F.3d at 313.  Should the Court exercise its discretion to grant Plaintiff's Motion for Leave, the named Defendants also cannot demonstrate undue prejudice through any purported expense of significant time, money, and effort related to defending the amended allegations, because of well-settled Tenth Circuit precedent that a defendant's expenditure of time, money, and effort is not reason for a district court to deny a motion for leave to amend, because these expenditures, while prejudicial, do not rise to the level of undue prejudice. *See Bylin*, 568 F.3d at 1230–31; *Deakin*, 2019 U.S. Dist. LEXIS 179992, at *3.

Plaintiff's purported delay is also not undue delay because this Court stayed discovery in its Order entered April 21, 2020 (Doc. 43), and Plaintiff was unable to obtain discovery from Defendant Ryan Transportation and only limited discovery from the other Defendants.  Defendants cannot demonstrate undue prejudice based on a purported significant increase in discovery related to defending the amended allegations, because discovery in this case is still in its infancy. *See Deakin*, 2019 U.S. Dist. LEXIS 179992, at *4; *Aguilar*, 2017 U.S. Dist. LEXIS 120348, at *11. For these reasons, the first factor under the Tenth Circuit's framework does not justify denial of Plaintiff's Motion, because Defendants cannot demonstrate anything more than ordinary inconveniences related to litigating this trucking accident, and Plaintiff's proposed amendments will not unfairly impede or alter discovery or affect Defendants' ability to prepare their defenses. *See Velocity Press*, 570 Fed. App'x at 788; *Deakin*, 2019 U.S. Dist. LEXIS 179992, at *3–4.

**B. *Any purported delay is not undue delay because the amendments allege specific, liability-establishing facts that Plaintiff had no way of previously knowing, and granting the Motion avoids piece-meal litigation that would cause additional hardship and delay.***

The potential factor of undue delay requires an inquiry into whether the plaintiff's delay rose past the level of mere lateness and into the realm of a protracted delay that burdened both the defendant and the court. *See Rhodes v. Bd. of Cty. Comm'rs for Bernalillo*, No. 16-CV-521 JCH/KK, 2017 U.S. Dist. LEXIS 149516, at *16 (D.N.M. Sept. 14, 2017) (citing *Minter*, 451 F.3d at 1205). Under the Tenth Circuit's framework of Rule 15 and Rule 54(b), district courts primarily focus their inquiry on the reasons underlying the plaintiff's purported delay and explanation for the additional factual allegations. *See Velocity Press*, 570 Fed. App'x at 788 (quoting *Minter*, 451 F.3d at 1206); *Servants of Paraclete,* 204 F.3d at 1012; *Phelps,* 122 F.3d at 1323-24.

A defendant is not sufficiently burdened by any delay in filing a motion for leave to amend unless plaintiff had "no adequate explanation for the [protracted] delay, is making the complaint a moving target, is attempting to salvage a lost case by untimely suggesting new theories, or knowingly delaying raising an issue until the eve of trial." *See Rhodes*, 2017 U.S. Dist. LEXIS 149516, at *16 (citing *Minter*, 451 F.3d at 1205). Along the same vein, any delay in filing a motion for leave fails to constitute undue delay if the plaintiff did not know of the facts underlying his proposed amendments when he filed his earlier pleadings. *See Lucero v. Bd. of Dirs. of Jemez Mts. Coop., Inc.*, No. CIV 20-0311 JB/JHR, 2020 U.S. Dist. LEXIS 157368, at *61–62 (D.N.M. Aug. 31, 2020 (citing *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990)); *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994).

For example, in *Peterlin ex rel. J.P. v. New Mexico Children, Youth & Families Department*, this Court granted the plaintiff's motion for leave to amend because the plaintiff had no way of knowing the facts underlying her proposed amendments when she filed her earlier

complaint. *Peterlin v. N.M. Children, Youth & Families Dep't*, No. 20-40 SCY/LF, 2020 U.S. Dist. LEXIS 101535, at *5 (D.N.M. June 10, 2020). In that case, the plaintiff moved for leave to amend a year and several months after filing her original complaint. *Peterlin*, 2020 U.S. Dist. LEXIS 101535, at *2. The plaintiff predicated her proposed amendments upon information she obtained through discovery. *Id.* In opposition to the motion, the defendant argued the fifteen-month lapse in time between filing suit and the motion for leave to amend constituted undue delay. *Id.* at *4. Nonetheless, the Court highlighted there was no evidence the plaintiff delayed amending her complaint to "make the complaint a moving target" or that she knew or could have known the information necessary for her proposed amendments. *Id.* at *5 (citing *Minter*, 451 F.3d at 1206; *Pallottino*, 31 F.3d at 1027). Because a lapse in time is insufficient to constitute undue delay without evidence of any undue burden, this Court concluded there was no sound reason justifying denial of the motion for leave to amend. *See Peterlin*, 2020 U.S. Dist. LEXIS 101535, at *4–5.

In this case, as in *Peterlin*, any purported delay in Plaintiff moving for leave to amend cannot constitute undue delay because Plaintiff had no way of knowing the liability-establishing facts underlying his proposed Amended Complaint when he filed his earlier complaint. *See id.* at *5; *see also Lucero*, 2020 U.S. Dist. LEXIS 157368, at *61–62.  This Court issued its "Order Staying Discovery" on April 21, 2020 (Doc. 43) and stayed all discovery until after the Court ruled on Defendant Ryan Transportation's motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) (Doc. 31) and Defendant Russell Stover's motion to dismiss pursuant to Rule 12(b)(6) (Doc. 23). Consequently, Plaintiff did not know and could not have known the information necessary to cure the deficiencies that hindered his earlier pleadings in the possession of Defendants, until after discovery recommenced following the Court's ruling on Defendants Ryan Transportation's and Russell Stover's motions to dismiss on December 3, 2020 (Doc. 57).

Plaintiff has also filed this Motion in accordance with the revised "Order Setting Pretrial Deadlines and Briefing Schedule" entered December 18, 2020 (Doc. 61), that provides "the deadline for Plaintiff to move to amend pleadings and/or join additional parties is **February 16, 2021.**"  *See* ECF No. 61 (boldface in order); *see also Rhodes*, 2017 U.S. Dist. LEXIS 149516, at *16. Likewise, with the deadline for all parties' pretrial orders well over ten months away, trial is not imminent in this case. *See* ECF No. 61, p. 2–3; *Rhodes*, 2017 U.S. Dist. LEXIS 149516, at *16. Moreover, Plaintiff is not attempting to make his complaint a "moving target" because the proposed amendments track the same underlying factual allegations of his earlier pleadings; do not add new parties that are not already in this case; add specific, liability-establishing factual allegations and such facts were known to Defendants; and the proposed Amended Complaint alleges sufficient non-conclusory facts to state plausible claims for relief.  *See* Plaintiff's Amended Complaint (Ex. A) pp. 7-45; *see also Rhodes*, 2017 U.S. Dist. LEXIS 149516, at *16.

Plaintiff's Motion to Reconsider the Court's Order under Rule 54(b) and vacate the parts of the Order dismissing Plaintiff's claims against Defendants Ryan Transportation and Russell Stover is also appropriate, because granting the Motion avoids piece-meal litigation that would otherwise result in additional hardship and delay to Plaintiff and the other Defendants and waste judicial resources of New Mexico district and appellate courts. Rule 54(b) is designed to preserve "the historic federal policy against piecemeal appeals" thereby relieving "appellate courts of the need to repeatedly familiarize themselves with the facts of a case." *Oklahoma Turnpike Authority v. Bruner*, 259 F.3d 1236, 1241 (10th Cir. 2001) (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)).  In light of this policy, the Tenth Circuit has held that "Rule 54(b) entries [of a final judgment] are not to be made routinely" and "trial courts should be reluctant to enter Rule 54(b) [final judgment] orders since the purpose of this rule is a limited

one: to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships[.]" *Id.* at 1242 (10th Cir. 2001); *see also Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.),* 262 F.3d 1089, 1107 (10th Cir. 2001); *Lloyd v. Salazar*, Case No. CIV-17-977-D, 2019 WL 6219540 (W.D. Ok. Nov. 21, 2019) (noting in similar case involving a truck accident with several defendants in transportation supply chain that "Plaintiff's damages were allegedly caused jointly by the conduct of all defendants" and "allowing an immediate appeal of one of several negligence claims that seek to impose liability on multiple defendants for a single indivisible injury would have the opposite effect" of avoiding duplicative litigation).

In the present case, Plaintiff's claims against Defendants Ryan Transportation and Russell Stover are not distinct and separable from those asserted against the remaining Defendants and factual issues underlying Plaintiff's claims against Defendants Ryan Transportation and Russell Stover overlap with Plaintiff's claims against the other Defendants.  Further, under Rule 54(b), the Court may review its Order dismissing Defendants Ryan Transportation and Russell Stover "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities" and as earlier noted, may grant a Motion to Reconsider "if there is new intervening and controlling law, new evidence not available previously, or if there is a 'need to correct clear error or prevent manifest injustice.'" *See* Fed. R. Civ. P. 54(b); *Joshi Technologies Internat'l, Inc. v. Chi Energy, Inc*., Civ. No. 15-467 KG/CG, 2019 WL 2745583, at * 2 (D.N.M. July 1, 2019).

Given the relatively early procedural posture of this case, and that Plaintiff's claims against all Defendants turn on the same underlying facts and involve common legal issues, permitting an appeal to proceed at this stage of the litigation will almost certainly result in duplicative appeals involving the same facts and claims that will cause additional delay and hardship to Plaintiff and the other Defendants and waste judicial resources of New Mexico district and appellate courts.

*See* Plaintiff's Response in Opposition to Defendants Ryan Transportation's and Russell Stover's Motions for Entry of Final Judgment (Docs. 64, 68) (incorporated herein by reference); *see also Jordan v. Pugh*, 425 F.3d 820, 827 (10th Cir. 2005). Defendants cannot show that granting Plaintiff's Motion will result in undue delay, and the record shows that granting Plaintiff's Motion will almost certainly avoid piece-meal litigation that would result in additional hardship and delay.

All cases are important. In this important case, in which Plaintiff has alleged that he was severely and permanently injured due to the negligent conduct of Defendants, under the Tenth Circuit's framework and standards to be applied under Rule 15, Rule 16(b)(4), and Rule 54(b), Plaintiff has provided reasons explaining his delay in seeking amendment and has provided a reasonable explanation to show newly discovered evidence obtained from Defendants allowed Plaintiff to add specific, liability-establishing factual allegations. Defendants cannot demonstrate any alleged undue burden resulting from delay and the Court should exercise its discretion and grant Plaintiff's Motion. *See Velocity Press*, 570 Fed. App'x at 788 (quoting *Minter*, 451 F.3d at 1206); *Peterlin*, 2020 U.S. Dist. LEXIS 101535, at *4–5.

### C.  *Plaintiff's proposed amendments are not futile because the Amended Complaint alleges sufficient non-conclusory facts to state plausible claims for relief against the Defendants.*

The potential factor of amendment futility requires a determination of whether "the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quoting *Jefferson Cty. School Dist. v. Moody's Investors Servs.*, 175 F.3d 848, 849 (10th Cir. 1999)). The amended complaint must allege sufficient non-conclusory facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, when assessing the amended complaint, a "court must accept all well-pleaded allegations as true and construe them in a [sic] light most favorable to the plaintiff." *Rhodes*, 2017 U.S. Dist. LEXIS 149516, at *5 (citing *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

In *Smith v. Board of Regents of the University of New Mexico*, this Court granted the plaintiff's motion for leave to amend because, inter alia, the proposed amendments alleged sufficient facts to state a claim for negligent hiring. *Smith v. Bd. of Regents*, 10-CV-00518 MV/WDS, 2012 WL 13080781, at *2 (D.N.M. Mar. 26, 2012). In that case, the plaintiff asserted negligence claims against the defendants for violations of the New Mexico Tort Claims Act ("NMTCA"). *Smith*, 2012 WL 13080781, at *1. The Court granted dismissal of certain claims within the original complaint. *Id.* Thereafter, the plaintiff sought leave to amend his complaint to include a negligent hiring claim based on information obtained through discovery. *Id.* In opposition, the defendants argued the proposed amendments were futile because the defendants did not qualify as "law enforcement officers" under the NMTCA, and thus, the amended claim would not survive their pending summary judgment motions. *Id.* Nevertheless, in granting the motion the Court emphasized that "Rule 15(a)'s liberal 'when justice so requires' standard" is different from the standard imposed on summary judgment and a "plausible claim for relief" standard based on the pleadings is not the same as an evidentiary-based summary judgment ruling, and so concluded there was no sound reason justifying denial of the plaintiff's motion for leave to amend. *Id.* at *1–2; *see also Orozco v. Edwards*, No. 1:18-CV-00769 KWR/SCY, 2020 U.S. Dist. LEXIS 31873, at *3–4 (D.N.M. Feb 25, 2020) (concluding defendants' challenges to plaintiff's proposed amended complaint did not demonstrate amendment futility because such arguments were better suited for the summary judgment phase).

In *Navarro v. New Mexico Department of Public Safety*, this Court also granted the plaintiff's motion for leave to amend because, inter alia, the proposed amendments alleged sufficient facts to state a claim for negligent hiring, training, and supervision. *Navarro v. N.M. Dep't of Pub. Safety*, No. 2:16-CV-1180-JMC-CG, 2018 U.S. Dist. LEXIS 96730, at *9 (D.N.M.

June 8, 2018). In that case, after the deadline for amending pleadings had passed, the plaintiff sought leave to amend his complaint to include a claim for negligent hiring, training, and supervision based on information obtained through discovery. *Navarro*, 2018 U.S. Dist. LEXIS 96730, at \*3–4. In granting the motion, the Court explained that the plaintiff's earlier complaint alleged in part that the defendants were negligent based on their hiring, training, and supervising practices, so the proposed amendments augmented the existing pleadings rather than added new claims based on different facts, and the defendants only asserted factual challenges to the strength of the evidence. *See id.* at \*7–9.   Again, this Court reasoned that there was no sound reason justifying denial of the motion for leave to amend because the determination of whether the proposed amendments stated plausible claims does not require an assessment of the evidence supporting a theory for recovery. *Id.*

Analogous to *Smith* and *Navarro*, in this case Plaintiff's proposed Amended Complaint alleges additional non-conclusory facts to state plausible claims for relief against the named Defendants. *See Navarro*, 2018 U.S. Dist. LEXIS 96730, at \*9; *Smith*, 2012 WL 13080781, at \*2. After the order staying discovery was lifted following the Court's ruling on Defendants Ryan Transportation's and Russell Stover's motions to dismiss, Plaintiff promptly engaged in discovery with Defendants Stone Truck Line and Tawil and among other things, obtained from Defendant Stone Truck Line Defendant Tawil's driver qualification file and confirmation of load and trip documents showing Defendant Ryan Transportation as the carrier that accepted responsibility for the shipment.  Plaintiff then prepared and filed his Amended Complaint and this Motion to include the additional non-conclusory, liability-establishing facts in his proposed Amended Complaint.

As earlier discussed in this Motion, and as alleged more fully in Plaintiff's proposed Amended Complaint, Plaintiff's proposed Amended Complaint alleges, inter alia, non-conclusory

facts that plausibly demonstrate that Defendants Tawil, Stone Truck Line, Ryan Transportation, and Russell Stover are potentially liable for negligence under the FMCSA, Federal Regulations, and New Mexico law in one or more of the following ways:

(1) Defendants Stone Truck Line, Ryan Transportation, and Russell Stover knew or should have known from reasonable and adequate investigation that Defendant Tawil was an unqualified, unfit, and unsafe driver of a commercial motor vehicle and Defendant Stone Truck Line was an incompetent and unfit motor carrier;

(2) Defendant Stone Truck Line qualifies as a motor carrier under the FMCSA and is vicariously liable for negligence of Defendant Tawil; and was negligent in failing to adequately investigate Defendant Tawil, who was an unqualified, unfit, and unsafe driver of a commercial motor vehicle and was negligent in hiring Defendant Tawil;

(3) Defendant Ryan Transportation qualifies as a motor carrier under the FMCSA and is vicariously liable for negligence of Defendant Tawil; and was negligent in failing to adequately investigate Defendant Stone Truck Line, an incompetent and unfit motor carrier who used an unqualified and unsafe driver; and for scheduling the load in violation of applicable hours-of-service laws and unlawfully misrepresenting its operating authority under 49 C.F.R. §371.7, 49 U.S.C § 13901(c), 49 U.S.C. § 14102(a), and MAP-21;

(4) Defendant Russell Stover qualifies as a motor carrier under the FMCSA and is vicariously liable for the negligence of Defendant Tawil; and was negligent in hiring or in permitting to be hired Defendants Stone Truck Line and Tawil as a motor carrier and driver and in scheduling the shipment in violation of applicable hours-of-services laws; and

(5) Defendants Russell Stover, Ryan Transportation, and Stone Truck Line pooled their resources, efforts, and knowledge to form a joint enterprise whereby each Defendant

performed critical roles to facilitate the cost-effective transportation of Defendant Russell Stover's goods, giving rise to joint enterprise liability under the FMCSA, Federal Regulations, and New Mexico law.

*See* Plaintiff's Amended Complaint (Ex. A) pp. 7–45; *see also Riley v. A.K. Logistics, Inc.,* No. 1:15-CV-00069-JAR, 2017 U.S. Dist. LEXIS 88814, at *14–16 (E.D. Mo. 2017) (denying summary judgment because fact issue existed on whether carrier's incompetence, based on its Safety Measurement System scores, was a proximate cause of the collision); *Jones v. C.H. Robinson Worldwide, Inc.*, 558 F. Supp. 2d 630, 646–48 (W.D. Va. 2008) (denying summary judgment because fact issue existed on whether broker conducted a sufficient inquiry into carrier's driving and compliance histories); *Ramos-Becerra v. Hatfield*, No. 1:14-CV-00917, 2016 U.S. Dist. LEXIS 136705, at *15–16 (M.D. Pa. Oct. 3, 2016) (denying summary judgment because fact issue existed on whether failing to obtain more than surface-level information from carrier constituted breach of duty); *Puckrein v. ATI Transport, Inc.*, 897 A.2d 1034, 1044–45 (2006) (denying summary judgment because fact issue existed on whether shipper conducted sufficient inquiry into the carrier's registration, insurance, and inspection).

As in *Smith* and *Navarro,* Plaintiff's factual allegations and claims in his proposed Amended Complaint are not predicated upon new facts the named Defendants were previously unaware of; instead, Plaintiff's factual allegations and claims augment Plaintiff's original allegations and claims based on the same underlying facts in this case.  *See* Plaintiff's Amended Complaint (Ex. A) pp. 7-45; *see also Navarro*, 2018 WL 2770134, at *2–3.  In adding to the factual allegations and legal theories related to this case, based on information known to Defendants and recently obtained from Defendants through discovery, Plaintiff's proposed Amended Complaint

cures the alleged defects the Court pointed to in his earlier pleadings and properly asserts plausible claims for relief. *See* Memorandum Opinion and Order (Doc. 57), pp. 19–30, 31–37.

As it did in *Rhodes*, this Court takes the well-pleaded factual allegations within Plaintiff's proposed Amended Complaint as true and construes them in the light most favorable to Plaintiff. *See Rhodes*, 2017 U.S. Dist. LEXIS 149516, at *5. Defendants Ryan Transportation and Russell Stover cannot demonstrate amendment futility by arguing that, based on their respective interpretations, they do not have potential vicarious liability for the negligence of Defendant Tawil because they do not qualify as a "motor carrier" under the FMCSA and the FMCSR, or that they do not have potential liability for their own negligence or joint enterprise liability under the FMCSA, Federal Regulations, and New Mexico law, as these arguments are better suited for the summary judgment phase. *See Orozco*, 2020 U.S. Dist. LEXIS 31873, at *3–4.

Defendants' respective arguments as to the strength of Plaintiff's evidence do not justify denial of this Motion, because the Tenth Circuit's framework under Rule 15, Rule 16(b)(4), and Rule 54(b) requires at this stage that the proposed amendments state a plausible claim for relief, not an evidentiary decision based on the merits of the amended claims.  Therefore, this Honorable Court should grant this Motion for Leave because the proposed amendments arise from the same subject matter as Plaintiff's earlier pleadings; Plaintiff had no way of knowing specific, liability-establishing facts in the possession of Defendants when he filed his earlier complaint; and the proposed Amended Complaint alleges sufficient non-conclusory facts to state plausible claims for relief against the Defendants.  *See Bradley*, 379 F.3d at 901; *Navarro*, 2018 2018 U.S. Dist. LEXIS 96730, at *8–9; *Smith*, 2012 WL 13080781, at *1–2.  For these reasons, in the interest of justice, this Court should exercise its discretion and grant Plaintiff's Motion for Leave so that Plaintiff's claims against the Defendants may be decided on their merits.  *See Triplett*, 712 F.2d at 446.

Pursuant to NM Fed. LR 7.1(a), concurrence of counsel was sought with respect to this

Motion and positions are as follows:

a.   Counsel for Ryan Transportation states: "Ryan Transportation Service, Inc. ("Ryan")
     is no longer a party to the above captioned cause of action.  By Memorandum
     Opinion and Order filed December 3, 2020 (Doc. 57), all claims against Ryan were
     dismissed.  *See* Doc. 57 at Page 39.  This Court no longer has continuing jurisdiction
     over Ryan.  Accordingly, as a **non-party** to this case, Ryan declined to provide a
     provide its consent or objection to the Motion."

b.   Counsel for Stone Truck and Tawil is opposed;

c.   Counsel for Russell Stover, LLC is opposed.

## CONCLUSION & PRAYER

For these reasons, this Court should grant Plaintiff's Motion and enter an order granting

Plaintiff's Motion for Leave to File Plaintiff's Amended Complaint and vacate parts of its Order

(Doc. 57) that dismissed Defendants Ryan Transportation and Russell Stover from the case.

**WHEREFORE**, Plaintiff prays that this Court grant this Motion and enter an order

granting Plaintiff's Motion for Leave to File his Amended Complaint and vacate parts of its Order

entered December 3, 2020 (Doc. 57) that dismissed Defendants Ryan Transportation and Russell

Stover from the case; and for such other and further relief, at law or in equity, to which Plaintiff

may show himself to be justly entitled.

Respectfully submitted,

CERVANTES SCHERR LEGATE, L.C.

*/s/ Brittany Lopez*
Brittany Lopez
Attorneys for Plaintiff
901 E. University Ave., Ste. 965-L
Las Cruces, New Mexico 88001
(575) 526-5600
Blopez@scherrlegate.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 25, 2021, I electronically filed the foregoing document using the Court's CM/ECF system, which provides notice and service of these documents to all attorneys of record in this civil action, as follows:

James P. Barrett
**Eaton Law Office, PC**
P.O. Box 25305
Albuquerque, NM  87125
jbarrett@eatonlaw-nm.com
*Attorney for Defendant Russell Stover Chocolates, LLC*

Seth Sparks
Jeffrey R. Taylor
**Rodey, Dickason, Sloan, Akin & Robb, P.A.**
P.O. Box 1888
Albuquerque, NM  87103
ssparks@rodey.com
rtaylor@rodey.com
*Attorneys for Defendants Stone Truck Line, Inc. and Ismail Y. Tawil*

Justin D. Rodriguez
**Atkinson, Baker & Rodriguez, P.C.**
201 Third Street NW, Suite 1850
Albuquerque, NM  87102
JRodriguez@abrfirm.com
*Attorneys for Defendant Ryan Transportation Service, Inc.*

CERVANTES SCHERR LEGATE, L.C.

*/s/ Brittany Lopez*
Brittany Lopez



PLAINTIFF'S EXHIBIT

A

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WALTER N. DIXON,

   Plaintiff,           Case No. 2:19-cv-000945-JCH-GJF

V.

STONE TRUCK LINE, INC., A FOREIGN CORPORATION,
ISMAIL Y. TAWIL,
RUSSELL STOVER CHOCOLATES, LLC, A FOREIGN CORPORATION, and
RYAN TRANSPORTATION SERVICE, INC.,

   Defendants.

## PLAINTIFF'S AMENDED COMPLAINT (SUBMITTED JANUARY 25, 2021) FOR NEGLIGENCE, PERSONAL INJURIES, PROPERTY AND PUNITIVE DAMAGES

  Comes now Plaintiff Walter Dixon, by and through counsel Cervantes Scherr Legate, L.C., and asserts his Amended Complaint against Defendants Stone Truck Line, Inc., Ismail Y. Tawil, Russell Stover Chocolates, LLC, and Ryan Transportation Service, Inc., and for his Amended Complaint Plaintiff Dixon alleges the following:

### BACKGROUND AND JURISDICTION

1. Plaintiff's Amended Complaint asserts Walter Dixon's right to recover damages against Defendants as the result of injuries he suffered from a collision which occurred on October 28, 2018, in Deming, Luna County, New Mexico.

2. On that date, Mr. Dixon was operating his motorcycle in a lawful manner, such as with the right-of-way and at a safe speed, when a commercial motor vehicle (as defined by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations) (hereinafter referred to as "semi-truck") operated by Defendant Ismail Y. Tawil in the course and scope of his employment with the other named Defendants, who served as his employers ("employee"

and "employer" as defined by the Federal Motor Safety Act and corresponding safety Regulations), failed to yield to Plaintiff Dixon, made an unsafe left turn, and drove directly into Plaintiff Dixon's lane of oncoming traffic.

3. Plaintiff Dixon is a resident of Deming in Luna County, within the State of New Mexico.

4. Defendant Ismail Y. Tawil, upon information and belief, is a resident of Phoenix, Arizona. At all times relevant to this Complaint Defendant Tawil was acting within the course and scope of his employment for his statutory employer Defendant Stone Truck Line, Inc. (hereinafter referred to as "Stone Truck Line"), and was also acting within the course and scope of his employment for his statutory employers (as defined by the Federal Motor Safety Act and corresponding safety Regulations) Defendant Stone Truck Line, Defendant Ryan Transportation Service, Inc. (hereinafter referred to as "Ryan Transportation") and Defendant Russell Stover Chocolates, LLC (hereinafter referred to as "Russell Stover").

5. Defendant Tawil may be served with process at his home, 4731 North 111th Glen, Phoenix Arizona 85037, or wherever he may be found, or as otherwise permitted by Rule 1-004(F) NMRA and has appeared and answered this suit so no further service of process is necessary.

6. This Court has personal and subject matter jurisdiction as to Plaintiff Dixon's Complaint against Defendant Tawil.

7. Defendant Stone Truck Line, upon information and belief, is a foreign California for-profit corporation, licensed as a "for-hire motor carrier" (as defined by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations) under MC-460857, and engaged in the business of transporting goods throughout the United States, including across the State of New Mexico.

8.  Defendant Stone Truck Line, upon information and belief, was at all times relevant to this Complaint the owner of the 2014 Blue Freightliner Cascadia (VIN: 3AKJGLD56ESFV5306), which was driven by Defendant Tawil in Deming, New Mexico, on October 28, 2018, and collided with Plaintiff Dixon's motorcycle. Upon information and belief, this semi-truck was the medium selected and utilized by this transportation supply chain, whereby said semi-truck was hauling a trailer loaded with Defendant Russell Stover's cargo, under the contractual exclusive direction and control of Defendant Ryan Transportation and under the statutory direction and control of all Defendants pursuant to the Federal Motor Carrier Safety Act and corresponding Federal Motor Carrier Safety Regulations, and which the delivery of said shipment would financially benefit each of the named Defendants.

9.  Defendant Stone Truck Line, as a corporation foreign to New Mexico, derives substantial economic benefits from its business activities in this State, and maintains intentional, substantial, continuous, and systematic contacts with New Mexico.

10. Defendant Stone Truck Line may be served with process by serving its registered agent, Kevin Grant, or any other authorized officers or agent therein, at 8080 North Palm Avenue, Fresno, California 93711, or wherever they may be found, or as otherwise permitted by Rule 1-004(G) NMRA and has appeared and answered this suit so no further service of process is necessary.

11. This Court has personal and subject matter jurisdiction as to Plaintiff Dixon's claims against Defendant Stone Truck Line.

12. Defendant Russell Stover, upon information and belief, is a foreign Missouri for-profit corporation which is authorized to conduct business within the State of New Mexico by its registration with the New Mexico Secretary of State, and by its designation of a New Mexico registered agent for service of process.

13. Defendant Russell Stover may be served with process by serving its registered agent, CT Corporation System or any other authorized officer or agent therein at 206 S. Coronado Avenue, Espanola, New Mexico 87532, or wherever they may be found, or as otherwise permitted by Rule 1-004(G) NMRA and has appeared and answered this suit so no further service of process is necessary.

14. Defendant Russell Stover, upon information and belief, engages in business affecting interstate commerce by assigning commercial motor vehicles and employees to transport its goods for compensation throughout the United States, including across the State of New Mexico, and is licensed by USDOT as a motor carrier, USDOT  number 89022, MC 151914, and meets the statutory definition of an "employer" under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations.

15. Defendant Russell Stover, upon information and belief, engaged in the business of interstate shipment of goods in this transaction, arranging this shipment from its facility in Corsicana, Texas to Watsonville, California, by hiring Defendants Ryan Transportation and Stone Truck Line to perform its duties as a motor carrier as its agents/employees within its  transportation supply chain, with the objective of transporting its goods within and across the State of New Mexico for compensation paid by Russell Stover.

16. Defendant Russell Stover, as a corporation foreign to New Mexico, derives substantial economic benefits from its business activities in this State, and maintains intentional, substantial, continuous and systematic contacts within New Mexico.

17. This Court has personal and subject matter jurisdiction as to Plaintiff Dixon's claims against Defendant Russell Stover.

18. Defendant Ryan Transportation, upon information and belief, is a foreign Kansas for-profit corporation, licensed as a "for-hire" property broker and freight forwarder and motor carrier (as defined by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations) under MC-196502 and FF-2351, and who, for compensation, engages in the business of arranging and facilitating the transportation of goods it has legally and contractually bound itself to transport and accept responsibility for its shipment throughout the United States, including across the State of New Mexico.

19. Defendant Ryan Transportation may be served with process by serving its registered agent, Martin E. Threet, or any other authorized officers or agent therein, at 6605 Uptown Boulevard NE, Suite 300, Albuquerque, New Mexico 87110, or wherever they may be found, or as otherwise permitted by Rule 1-004(G) NMRA. Defendant Ryan Transportation may be served with process by serving Charles Ryan, Vice President, at 9350 Metcalf Avenue, Overland Park, Kansas 66212, or wherever it may be found, or as otherwise permitted by FRCP 4(e)(2) and has appeared in this suit so no further service of process is necessary.

20. Defendant Ryan Transportation, upon information and belief, issued and certified in the Bill of Lading that it was functioning as the "CARRIER" (as defined by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations), and  arranged for Defendants Stone Truck Line and Tawil to complete the interstate transportation of Defendant Russell Stover's goods it legally and contractually bound itself to transport, and directed, controlled and facilitated and accepted responsibility for the transportation of said shipment by Defendant Stone Truck Line within and across the State of New Mexico.

21. Defendant Ryan Transportation, upon information and belief, contracted with Defendant Russell Stover, a motor carrier, to accomplish the interstate transportation of goods for

compensation within and across the State of New Mexico, and as such, Defendant Ryan Transportation certified in the Bill of Lading specifically authored, pursuant to a legal obligation, by itself that Defendant Ryan Transportation was functioning as the "CARRIER" (as defined by the Federal Motor Safety Act and corresponding Federal Regulations).

22. Pleading alternatively, and without waiving the foregoing, Defendant Ryan Transportation, upon information and belief, represented or misrepresented in the Bill of Lading its operations and capabilities to be that of a motor carrier by legally and contractually binding itself to transport Defendant Russell Stover's goods, and further, by authoring, authorizing, issuing and certifying that it was the "CARRIER" in the Bill of Lading, which is a violation of 49 C.F.R. § 371.7 and 373.101, and by assuming responsibilities Defendant Ryan Transportation lacked the requisite motor carrier operating authority to assume.

23. Upon information and belief, Defendants Ryan Transportation and Russell Stover memorialized their relationship within this transportation supply chain by way of an agreement (hereafter described as "Agreement"), although the meaning and/or enforceability of some of its provisions are ambiguous and in dispute.  Under Paragraph 16 of said Agreement, Defendant Ryan Transportation retained the right of contractual control over the subject shipments. Paragraph 16 states in relevant part that Defendant RYAN TRANSPORTATION "shall have exclusive control of the persons operating the equipment or otherwise engaged in such transportation services. To the extent required by law, CARRIER (a) assumes full responsibility for the acts and omissions of such persons." On its face, the Agreement provided Defendant Ryan Transportation control and responsibility for this mission and exceeded its operating authority as a property broker and freight forwarder and acted as a motor carrier under the FMCSA and Federal Regulations from the inception of this transportation supply

chain. Though there is a purported Broker Addendum, the Broker Addendum is not part of the Agreement because said Broker Addendum: is expressly omitted and/or its terms do not control pursuant to Paragraphs 27(a), 27(b), 27(d), and 38 of the Agreement; is not signed by Defendant Russell Stover's Director of Transportation; and the Broker Addendum does not expressly exclude or control over the express language of the Agreement. Therefore, upon information and belief, the Agreement's express language of Defendant Ryan Transportation's control and responsibilities as a CARRIER makes it contractually responsible for the shipment and the Bill of Lading and Load confirmation documents Defendant Ryan Transportation authored also show actual exercise of control over the shipment and that it accepted responsibility for the shipment as a "motor carrier" under the FMCSA and Federal Regulations.

24. Defendant Ryan Transportation derives substantial economic benefits from its business activities in this State, and maintains intentional, substantial, continuous and systematic contacts within New Mexico.

25. This Court has personal and subject matter jurisdiction as to Plaintiff Dixon's claims against Defendant Ryan Transportation.

## ADDITIONAL FACTUAL ALLEGATIONS

26. The injuries and damages which are the basis of this action arise from a motor vehicle collision which occurred on October 28, 2018, at approximately 11:00 a.m. on Gold Avenue, City of Deming, Luna County, New Mexico (hereinafter referred to as "semi-truck vs. motorcycle collision").

27. At the time and place of the semi-truck vs. motorcycle collision, Plaintiff Dixon was operating a motorcycle traveling southbound on Gold Avenue in a lawful manner, and was obeying all motor vehicle laws.

28. At the time and place of the semi-truck vs. motorcycle collision, Defendant Tawil was operating a semi-truck, hauling a trailer loaded with goods owned by Defendant Russell Stover, a motor carrier, and pursuant to the Agreement, the driver and commercial motor vehicle were by contract under the exclusive control of Defendant Ryan Transportation, and it assumed full responsibility for the shipment.  Defendant Tawil was traveling northbound on Gold Avenue. Upon information and belief, Defendant Tawil was acting within the course and scope of his employment as an employee within the transportation supply chain consisting of Defendants Stone Truck Line, Ryan Transportation, and Russell Stover, which said transportation supply chain was directly responsible for placing Defendant Tawil on the public roadways of the United States and this State.

29.  At the time and place of the collision, Defendants Stone Truck Line, Ryan Transportation, and Russell Stover knew or should have known that Defendant Tawil had violated the hours-of-service rules of the Federal Motor Carrier Safety Act and Regulations on a mission organized, controlled and directed by said Defendants, who required Tawil to drive with an unsafe schedule.  The unsafe schedule was set by Defendants Russell Stover and Ryan Transportation for the route and driving conditions which would reasonably be encountered to complete the mission, with Defendants Russell Stover and Ryan Transportation requiring "time is of the essence" in performance of the mission; and said mission could not reasonably be completed within the time required without violating the hours-of-service rules of the FMCSA and Federal Regulations while driving in accordance with driving laws.

30. As Defendant Tawil entered the intersection of the I-10 Frontage Road and Gold Avenue with his semi-truck, Defendant Tawil, who upon information and belief was not properly qualified to operate a commercial motor vehicle under the Federal Motor Carrier Safety Act and Federal

Motor Carrier Safety Regulations, drove unsafely, impaired by driving excessive hours, affecting his alertness, by failing to maintain proper lookout and failing to yield the right-of-way to Plaintiff Dixon.  Defendant Tawil made an unlawful and reckless left turn directly into the path of oncoming traffic, which said unlawful and reckless left turn proximately caused Defendant Tawil to crash into Plaintiff Dixon's motorcycle.

31. Due to the circumstances surrounding the collision, New Mexico State Police cited Defendant Tawil under New Mexico §66-8-114(A) for Careless Driving (citation number: 1979085161065).

32. Upon information and belief, the semi-truck was also unsafe for operation on the public roadways of the State of New Mexico and the United States, including installation of an electronic tablet on the front window which caused distracted driving and blocked visibility of the oncoming motorcycle driven by Plaintiff Dixon, and the front turn signals were inoperable according to the police report made after the crash, each being a proximate cause of the collision.

33. As a proximate result of Defendants Stone Truck Line, Ryan Transportation, and Russell Stover's decision to place Defendant Tawil, not properly qualified to be a fit or competent driver, and this semi-truck, on the public roadways of this State, Plaintiff Dixon suffered severe injuries including, but not limited to: fractures of his left femur, his left radius, his left ulna, a maxillary fracture, a zygomatic fracture, multiple fractured ribs, a fracture of the orbital floor, and other injuries, permanent impairment and disabilities.

34. As a proximate result of the Defendants' unreasonable and unsafe action of placing Defendant Tawil and this semi truck on the public roadways of this State, Plaintiff Dixon also suffered a

displaced fracture of the medial malleolus of the left tibia, a subtrochanteric fracture of the right femur, a fracture of the nasal bones, his face, and other injuries.

35. Immediately following the severe injuries he suffered on October 28, 2018, Plaintiff Dixon was airlifted from Deming to the nearest Level I trauma center at the University Medical Center of El Paso, Texas.

36. As a result of the injuries caused by the semi-truck vs. motorcycle collision, Plaintiff Dixon required and endured multiple surgeries including:

    a. On November 2, 2018, left femoral cutdown for thoracic endovascular stent placement;

    b. On November 9, 2018, left distal femur irrigation and debridement; left distal femur open reduction and internal fixation; application of antibiotic impregnated bone cement; and negative pressure wound therapy;

    c. On November 10, 2018, open reduction and internal fixation of left distal radius fracture using a long radial tri-med plate and open reduction and internal fixation of left distal ulna using Stryker 5 hole 2.4 mm plate;

    d. On November 13, 2018, treatment of right subtrochanteric proximal femur fracture with intramedullary nail and removal of proximal tibial traction pin;

    e. On November 17, 2018, open reduction and internal fixation of the left medial malleolus; and

    f. On November 17, 2018, open reduction internal fixation left zygomaticomaxillary complex fracture; left orbital floor fracture reconstruction; repair of left lateral eyebrow and forehead laceration; and closed reduction of left zygomatic arch fracture.

37. As a result of the severe injuries he suffered on October 28, 2018, Plaintiff Dixon was in a medically induced coma, and remained in that coma for several weeks.

38. As a result of the severe injuries he suffered, Plaintiff Dixon was continuously hospitalized at the University Medical Center of El Paso between October 28, 2018, and December 1, 2018,

at which time he was transferred to Mesa Hills Specialty Hospital in El Paso, Texas for ongoing care.

39. Plaintiff Dixon remained at Mesa Hills Specialty Hospital from December 1, 2018, until January 20, 2019, at which time he was transferred to Grace Point Wellness, a skilled nursing care facility in El Paso, Texas.

40. Plaintiff Dixon was finally discharged from Grace Point Wellness, and allowed to return home to Deming, New Mexico, on February 18, 2019, after being hospitalized for over three months.

41. Plaintiff Dixon has suffered in the past, and will continue to suffer in the future, from injuries he sustained on October 28, 2018, due to Defendants' negligence and unreasonable and unsafe action of allowing an unfit and incompetent driver on the public roadways of this State.

42. Defendants' negligence and unreasonable and unsafe action of placing Defendant Tawil on the public roadways of this State proximately caused Plaintiff Dixon recoverable damages including, but not limited to, the following: 1) past reasonable and necessary medical expenses presently exceeding $864,319.00; 2) future reasonable and necessary medical expenses; 3) past physical and emotional pain and suffering and mental anguish; 4) future physical and emotional pain and suffering and mental anguish; 5) past and future disfigurement; 6) past and future loss of household services; 7) past and future loss of enjoyment of life; 8) past and future impairment; 9) past and future loss of earning capacity; and 10) loss of vehicle.

43. At all times relevant to this complaint, Defendants Stone Truck Line, Ryan Transportation, and Russell Stover knew or should have known from reasonable and adequate investigation that Defendant Ismail Tawil was an unsafe driver, operating a commercial motor vehicle licensed as a commercial driver by the State of Arizona, as Defendant Tawil had numerous citations issued to him in operating a motor vehicle, as his driving record in the possession of

Defendant Stone Truck Line and available to Defendants Ryan Transportation and Russell Stover revealed his unsafe driving of failing to obey traffic signs, of speeding and of violating safety laws for commercial vehicles, including but not limited to the following: 12/8/17 speeding violation; 8/6/17 violation for failure to obey yield sign; 3/11/16 violation for unsafe operation of a motor vehicle; 9/22/15 violation for improper backing; 4/12/15 violation for false record of duty service; 12/10/14 violation for operating a motor vehicle without proper brakes; 2/7/14 motor carrier regulations violations; 12/10/12 motor carrier regulations violations; 7/8/11 violation of registration; 12/7/08 violation for failure to obey traffic signal or light; 11/2/08 violation for operating vehicle without lights; 11/10/07  violation for failure to obey traffic signal; 11/10/07 speeding violation; 11/7/07 violation for failure to obey traffic control device or sign; 10/26/07 speeding violation; 10/26/07 failure to answer a citation or pay fine; 5/29/07 speeding violation; and other violations involving the operation of a commercial motor vehicle that may be further disclosed in discovery of this case.

44. At all times relevant to this complaint, Defendants Ryan Transportation and Russell Stover also knew or should have known from reasonable and adequate investigation that Defendant Stone Truck Line was an unfit and incompetent motor carrier.  At all times relevant to this Complaint, Defendant Stone Truck Line was a motor carrier as defined by, and subject to all requirements of the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations, and liable for the acts and omissions of its employee. Defendant Stone Truck Line is the statutory employer of Defendant Tawil, and thus, is responsible for his acts and omissions. Upon information and belief, at the time of hiring and at time of this collision, Defendant Stone Truck Line was an unfit and incompetent motor carrier based on, but not limited to, the following information available to Defendants Ryan Transportation and Russell

Stover:  three cancellations of federally-mandated insurance policies by its former insurers; its involvement in various injury crashes and one fatal crash within close temporal proximity to October 28, 2018; a "non-ratable" safety rating issued by the Federal Motor Carrier Safety Administration in 2018; an unsafe driving score above 4.5 issued by the Safety Measurement System (a branch of the Federal Motor Carrier Safety Administration) for numerous months within close temporal proximity to October 28, 2018; a lack of regulatory-compliant safety training and continued-safety education programs for its drivers and mandatory record retention; and other evidence that may be disclosed in discovery of this case.

45. Defendants Ryan Transportation and Russell Stover also knew or should have known from reasonable and adequate investigation that Defendant Stone Truck Line failed to qualify Defendant Ismail Tawil as required by the FMCSA laws, including but not limited to permitting an unsafe driver to operate the semi-truck; failing to perform its duties to ensure safety by failing to contact prior employers of Defendant Tawil; by failing to review the dishonest answers in the employment application of Defendant Tawil, or if it claims to have done so, allowing a dishonest unsafe driver to operate its commercial motor vehicle; and other safety violations and further acts and omissions that may be disclosed in discovery of this case which proximately caused this collision.

46. At all times relevant to this Complaint, Defendant Ryan Transportation retained the right of legal, contractual, and/or actual control over Defendants Stone Truck Line and Tawil's transportation, for compensation. Defendant Ryan Transportation unsafely scheduled the trip with a pick-up and delivery requirement, including "time is of the essence" which could not reasonably be accomplished without violating the hours-of-service laws of the Federal Motor Carrier Safety Act while driving in accordance with driving laws. Defendant Ryan

Transportation was negligent in the selection of Defendant Stone Truck Line as an unsafe trucking company and allowing an unsafe driver Defendant Tawil to drive its mission, as set forth above. According to its website, Defendant Ryan Transportation is a self-proclaimed experienced transportation leader who aims to become part of interstate transportation supply chains. Upon information and belief, Defendant Ryan Transportation did not merely arrange for the transportation of the subject shipment, as Defendant Ryan Transportation provided the schedule, the logistics, mandatory documentation, tracking and in-service communications en route, and other services while Defendants Stone Truck Line and Tawil hauled the subject shipment, and by Agreement the transportation of the subject shipment was under the exclusive control of Defendant Ryan Transportation.

47. Pleading alternatively, and without waiving the foregoing, Defendant Ryan Transportation misrepresented its operating authority by expressly representing and certifying that it was the CARRIER in the Bill of Lading, which violates section 371 and 373.100 of the FMCS regulations, and under 49 USC  14102 (a) and Map 21, and 13901 (c), and the Carmack Amendment (49 U.S.C. § 14706), changes its status to that of a motor carrier. Defendant Ryan Transportation's self designation as "CARRIER" was directly contrary to Paragraph 2 of the Contract between Defendants Ryan Transportation and Stone Truck Line that expressly required Defendant Stone Truck Line be listed as the CARRIER on any Bills of Lading. Said certification as "CARRIER" contractually and legally bound Defendant Ryan Transportation to transport Defendant Russell Stover's goods, and the Agreement between Defendant  Ryan Transportation and Defendant Russell Stover whereby Defendant Ryan Transportation agreed it had exclusive control over the drivers and equipment and assume full responsibility for same (creating an ambiguity with the "Broker Addendum" which was not part of the Agreement and

which did not stop Defendant Ryan Transportation from proclaiming itself the CARRIER in

the actual documentation in this trip) establishes that Defendant Ryan Transportation had legal

and contractual control over and accepted responsibility for the shipment. Defendant Ryan

Transportation's misrepresentations, agreements, control over Defendants Stone Truck Line

and Tawil's performance, and its involvement with the transportation of the subject shipment

proximately causing this collision, dictates that Defendant Ryan Transportation is the statutory

employer of Defendants Stone Truck Line and Tawil and liable for the negligent acts and

omissions of Defendants Stone Truck and Tawil under the FMCSA and Federal Regulations

and New Mexico law.

48. Section 390.5 of the FMCSA defines "employee," "employer," and "person" as follows:

*Employee* means any *individual*, other than an employer, who is employed by an
employer and who in the course of his or her employment *directly affects commercial
motor vehicle safety*.   Such term includes a driver of a commercial motor vehicle
(including an independent contractor while in the course of operating a commercial
motor vehicle), a mechanic, and a freight handler . . .

*Employer* means any *person* engaged in a business affecting interstate commerce *who
owns or leases a commercial motor vehicle in connection with that business*, or assigns
employees to operate it . .

*Person* means any individual, partnership, *association, corporation, business trust,* or
any other organized group of individuals.

49 C.F.R. § 390.5.  The definition of "carrier" also includes "motor carriers" which are defined

as "person[s] providing motor vehicle transportation for compensation."  49 U.S.C.§ 13102(3),

(14).  Courts impose a statutory employer-employee relationship between drivers and motor

carriers regardless of whether the contractual relationship between them purports to create a

different relationship.  *See Judy v. Tri-State Motor Transit Co.,* 844 F.2d 1496, 1500-01 (11th

Cir. 1988); *Price v. Westmoreland,* 727 F.2d 494 (5th Cir. 1984).  If a "person" (i.e.,

"individual, partnership, association, corporation, business trust, or any other organized group

of individuals") accepts responsibility for ensuring the delivery of goods in interstate commerce, then that entity qualifies as a "motor carrier" regardless of whether it actually conducted the physical transportation of those goods. *See Essex Ins. Co. v. Barrett Moving & Storage, Inc.,* 885 F.3d 1292, 1301 (11th Cir. 2018). Courts have imposed a statutory employer-employee relationship because federal law requires motor carriers to assume control and responsibility of operating owned or leased motor vehicles. *See* 49 U.S.C. § 11107(a)(4); 49 C.F.R. § 376.11– .12. When a licensed motor carrier leases, borrows, or hires a truck and driver, it must assume control and responsibility of the equipment for the trip. *See* 49 C.F.R. § 376.12(c); *Price,* 727 F.2d at 596 & n.2 (applying predecessor to part 376). Courts interpreting the FMCSA have also held more than one carrier may be a statutory employer under federal law and thus vicariously liable for the tortious acts of a driver. *See Zamalloa v. Hart*, 31 F.3d 911, 914-16 (9th Cir. 1994); *Perry v. Harco Nat'l Ins. Co.,* 129 F.3d 1072, 1074 (9th Cir. 1997); *Joyce v. Pedersen,* 2003 WL 367320, *4-5 (D. Kan. 2003) (denying summary judgment to defendant shipper on ground that FMCSA and its regulations "were intended to put the use and operation of leased equipment on a parity with the use of equipment owned by the authorized carrier and operated by its own employees, in effect making the driver of the leased unit a statutory employee of the lessee"); *Rediehs Express, Inc., v. Maple*, 491 N.E.2d 1006, 1010-11 (Ind. Ct. App. 1986) (affirming trial court's judgment that fixed liability against the truck driver, company that leased the tractor and trailer, and lessor freight company under FMCSA and regulations). Part 393 of the FMCSR further prohibits an employer from operating a commercial motor vehicle or causing or permitting it to be operated "unless it is equipped in accordance with the requirements and specifications of this part." 49 C.F.R. § 393.1. In addition, a motor carrier is required to "systematically inspect, repair, and maintain,

or cause to be systematically inspected, repaired, and maintained, all motor vehicles subject to its control," and parts and accessories are required to be "in safe and proper operating condition at all times." 49 C.F.R. §§ 396.3(a). In addition to vicarious liability for a statutory employee's negligence in operating a motor vehicle, failure to comply with these and other requirements that results in physical harm to a third party is negligence for which a statutory employer is also liable. *See, Price,* 727 F.2d at 496; *Johnson v. S.O.S. Transp., Inc.,* 926 F.2d 516 (6th Cir. 1991) (carrier-lessee as statutory employer liable to owner-lessor's deceased driver's estate for death caused by negligent maintenance and inspection of leased vehicle).

49.   At all times relevant to this Complaint, Defendant Stone Truck Line is vicariously liable for the negligent conduct of Defendant Tawil under the FMCSA and Federal Regulations as a statutory employer of Defendant Tawil and is liable for its violations of the FMCSA and Federal Regulations as a "motor carrier" that proximately caused Plaintiff's severe injuries and damages described in this complaint, because it is a "person" engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it" and is a "motor carrier" because it "provid[ed] motor vehicle transportation for compensation." 49 U.S.C.§ 13102(3), (14).

50. At all times relevant to this Complaint, Defendant Ryan Transportation is vicariously liable for the negligent conduct of Defendant Tawil under the FMCSA and Federal Regulations as a statutory employer of Defendant Tawil, and is liable for its violations of the FMCSA and Federal Regulations as a "motor carrier" that proximately caused Plaintiff's severe injuries and damages described in this complaint, because it is a "person" engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it" and is a "motor carrier" because it "provid[ed]

motor vehicle transportation for compensation" by accepting responsibility for ensuring the delivery of goods in interstate commerce.  To this end, the Bill of Lading (Doc. 31-2, p. 1) expressly states "CARRIER NAME: RYAN TRANSPORTATION" which establishes Defendant Ryan Transportation acted as a motor carrier under the FMCSA and Federal Regulations by accepting responsibility for ensuring the delivery of the load, regardless of whether the contractual relationship between it and Defendants Stone Truck Line and/or Defendant Russell Stover purports to create a different relationship.  Even so, the "Contract for Truckload Transportation" between "Lindt & Springli North America, Inc." and Defendant Ryan Transportation (hereafter "Contract") (Doc. 48-1, pp. 17-30) further establishes that Defendant Ryan Transportation is a "motor carrier" under the FMCSA because the contract expressly states in paragraph 3(a) that "every shipment accepted by CARRIER (i.e., Ryan Transportation) as described in sections 1 and 2 above shall be deemed accepted by CARRIER **in its capacity as a motor carrier under this Contract"** and paragraph 3(b) further states "In the event CARRIER holds a broker's license granted by the FMCSA every shipment for which SHIPPER orders service from CARRIER shall nevertheless be deemed accepted by CARRIER **in its capacity as a motor carrier under this Contract,** and CARRIER shall be governed by all of its rights and obligations hereunder, unless the parties otherwise expressly agree in writing." (Doc. 48-1, p. 19).

51. The purported "Broker Addendum to Contract for Truckload Transportation" (hereafter "Broker Addendum" (Doc. 48-1, p. 31) does not change the terms of the Contract that establishes Defendant Ryan Transportation as a motor carrier for the load under the FMCSA because it is not referenced in the Contract and does not comply with paragraph 27(a), (b), and (d) of the Contract (Doc. 48-1, p. 28), which states in relevant part (boldface added):

ENTIRE AGREEMENT; MODIFICATION; WAIVER; CONTROLLING DOCUMENTS,

(a) This Contract and the Appendices A,B,C, attached hereto, **constitute the entire agreement between the parties with respect to the subject matter hereof, and all previous communications, statements and instruments are hereby withdrawn and annulled**.

(b) This Contract may not be changed, or modified in any manner except by an instrument in writing signed on behalf of each of the parties hereto by their duly authorized representatives.

(c) . . .

(d) **The terms of this Contract and Appendices shall control over any other document attached hereto or incorporated by reference**.  Notwithstanding anything to the contrary contained in Appendix E, **the terms and conditions of this Contract shall supersede any inconsistent terms and conditions in any bill of lading or other shipping document, tariff, service guide, or similar document**.

There is no evidence of whether the Broker Addendum was signed before or at the same time as the Contract, and in the absence of such evidence, Plaintiff expressly alleges that the Broker Addendum was signed before or at the same time as the Contract, in which case the Broker Addendum is **"annulled"** and unenforceable pursuant to paragraph 27(a) of the Contract. There is no evidence of whether the signatories to the Broker Addendum were signed by their duly authorized representatives, and in the absence of such evidence, Plaintiff expressly alleges that the Broker Addendum is unenforceable pursuant to paragraph 27(b) of the Contract.  The Contract and Broker Addendum is between "Lindt & Springli North America, Inc." and Defendant Ryan Transportation, and there is no evidence that the Broker Addendum applies to Defendant Russell Stover, and in the absence of such evidence, Plaintiff expressly alleges that the Broker Addendum does not apply to Defendant Ryan Transportation and Defendant Russell Stover.  Plaintiff expressly denies that the Broker Addendum constitutes part of the Agreement between Defendant Ryan Transportation and Defendant Russell Stover, or that it is part of an admissible and/or enforceable contract, and the numerous hand-written, undated, and unsigned or initialed markings throughout the Contract and Broker Addendum call its

authenticity into question and Plaintiff therefore demands that the original documents be provided and its signatories establish its authenticity under the best evidence rule, and absent such evidence, Plaintiff expressly denies that the Broker Addendum is genuine.  Pleading alternatively, and without waiving the foregoing, even assuming *arguendo* that the Broker Addendum constitutes part of an enforceable contract and Agreement between Defendant Ryan Transportation and Defendant Russell Stover, which is expressly denied, paragraph 27(d) of the Contract expressly and specifically states "The terms of this Contract and Appendices shall control **over any other document attached hereto or incorporated by reference.** Notwithstanding anything to the contrary contained in Appendix E, **the terms and conditions of this Contract shall supersede any inconsistent terms and conditions in any bill of lading or other shipping document, tariff, service guide, or similar document."**  Pleading alternatively, and without waiving the foregoing, the above-described provisions of the Contract and Broker Addendum are subject to more than one reasonable interpretation and are ambiguous and the ambiguities in the Contract and other facts that evidence whether Defendant Ryan Transportation is a "motor carrier" under the FMCSA in this case should be determined and resolved by the trier of fact.

52. At all times relevant to this Complaint, Defendant Russell Stover is vicariously liable for the negligent conduct of Defendant Tawil under the FMCSA and Federal Regulations as a statutory employer of Defendant Tawil, and is liable for its violations of the FMCSA and Federal Regulations as a "motor carrier" that proximately caused Plaintiff's severe injuries and damages as described in this complaint, because it is a "person" engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in connection with that business, or assigns employees to operate it" and is a "motor carrier" because it "provid[ed]

motor vehicle transportation for compensation" by contractually, legally, and in fact accepting responsibility for ensuring the delivery of goods in interstate commerce.  Upon information and belief, Defendants Russell Stover and Ryan Transportation, in fact and by contract, demanded that "time is of the essence" from Defendants Stone Truck Line and Tawil  and by the Bill of Lading and Load Confirmation documents. The load confirmation issued by Defendant Ryan Transportation required pick-up of the load at 1300 hours on October 27, 2018 in Corsicana, Texas, and delivery by 900 hours on October 30, 2018, in Watsonville, California. This delivery timeline required, or reasonably could expect Defendant Tawil to exceed the hours of service mandated by the Federal Motor Carrier Safety Act and Regulations, drive at unsafe speeds and disregard other safety issues for a trip of approximately 1,800 miles (according to Google Maps), especially factoring in traffic, road conditions, inspections or other factors, such that the delivery timeline was unsafe and unreasonable. By the time of this collision, Defendant Tawil had travelled approximately 780 miles (according to Google Maps) at 11:00 am Mountain Time on October 28, 2018, which is in excess and in violation of the Federal Motor Carrier Safety Act and Federal Motor Carrier Safety Regulations hours-of-service laws, which was a proximate cause of this collision.

53. At all times relevant to this Complaint, Defendant Russell Stover is the principal and a licensed US DOT motor carrier, sophisticated, knowledgeable and experienced in the requirements of the qualifications, responsibilities and duties required under the FMCSA and regulations, for selection of motor carriers and drivers, hours of service, qualifications of trucking companies and drivers, and Defendants Ryan Transportation and Stone Truck Line performed said assigned tasks for compensation and for the benefit of Defendant Russell Stover. Defendant Russell Stover unsafely scheduled the trip with a pick-up and delivery requirement which could

not reasonably be accomplished without violating the hours-of-service laws of the Federal

Motor Carrier Safety Act while driving in accordance with driving laws.  Successful and timely

delivery is a pre-requisite to Defendant Russell Stover receiving compensation from its

customers.  Defendant Russell Stover, upon information and belief, retained the right to control

how Defendants Ryan Transportation and Stone Truck Line completed their assigned tasks

including, but not limited to, directing the overall dynamic of the transportation supply chain;

selection of the trucking company and driver; dictating the delivery timeline; dispatching the

CARRIER or its driver directly; requiring the use of temperature-controlled trailers;  requiring

the use of specified equipment; requiring that the CARRIER maintain specified amounts of

liability insurance; requiring  that the CARRIER impose various restrictions and requirements

on its drivers; prohibiting the CARRIER from arranging for another CARRIER to transport a

shipment without prior approval; reserving the right to reduce compensation for shipment

delays; and advancing a method to discount the cost of fuel.  Defendant Russell Stover knew

or should have known from reasonable and adequate investigation that Defendant Tawil and/or

Defendant Stone Truck Line were not properly qualified for safety before allowing them to

ship its load and operate a commercial motor vehicle for compensation on the roads of the

United States.  Defendant Russell Stover's control over and involvement with the process of

transporting the subject shipment proximately causing this collision, dictates that Defendant

Russell Stover is the statutory employer of Defendant Tawil and is liable for the acts and

omissions of Defendants Ryan Transportation, Stone Truck Line, and Tawil under the FMCSA

and Federal Regulations and New Mexico law.

54. At all times relevant to this Complaint, Defendants Russell Stover, Ryan Transportation, and

Stone Truck Line, all USDOT licensed and participating in interstate transportation, performed

specified and necessary tasks within this transportation supply chain, and as a result, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line shared the common purpose of utilizing a semi-truck and driver to transport Defendant Russell Stover's goods. Upon information and belief, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line pooled their resources and efforts to accomplish the ultimate goal of utilizing a semi-truck and driver to transport Defendant Russell Stover's goods. Because Defendants Russell Stover, Ryan Transportation, and Stone Truck Line each qualify as motor carriers (as defined by the Federal Motor Safety Act and the Federal Motor Carrier Safety Regulations), Defendants Russell Stover, Ryan Transportation, and Stone Truck Line were each authorized to control the performance of transporting the subject shipment. Moreover, based on how transportation supply chains operate, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line would share in any profits or losses from the delivery of the subject shipment. Thus, as members of a joint enterprise, Defendants Russell Stover and Ryan Transportation are each vicariously liable for the acts and omissions of Defendant Stone Truck Line and its driver Defendant Tawil under the FMCSA and Federal Regulations and New Mexico law.

### COUNT I: NEGLIGENCE AND NEGLIGENCE PER SE
### OF DEFENDANT ISMAIL Y. TAWIL

55. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1–54 of this Complaint.

56. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Tawil was an employee-driver of Defendant Stone Truck Line and the other Defendants and was acting within the course and scope of said employment while transporting the subject shipment.

57. At all times relevant to this Complaint, Defendant Tawil, as Defendant Stone Truck Line's driver, qualifies as a motor carrier, and as such, must comply with all requirements of the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations.

58. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Tawil owed a duty to exercise ordinary care to operate the semi-truck in a reasonable and safe manner under the circumstances then present, to ensure the safety of other motorists traveling on the public roadways of this State, including Plaintiff Dixon.

59. Defendant Tawil breached his duty to exercise ordinary care in multiple ways, including without limitation:

    a.  Careless or reckless driving;

    b.  Negligent failure to yield the right-of-way to oncoming traffic;

    c.  Negligent failure to maintain a proper lookout for Plaintiff Dixon's oncoming motorcycle occupying the roadway to avoid the collision;

    d.  Negligent failure to turn in a safe manner;

    e.  Violating the hours-of-service laws of the Federal Motor Carriers Safety Act and regulations

    f.  Driving while fatigued or from some other cause in violation of section 392.3 of the FMCSR.

    g.  Negligent failure to acquire, demonstrate, and maintain the qualifications, training, testing and experience necessary to safely operate a commercial semi-truck to avoid the collision;

    h.  Negligent failure to perceive and appropriately respond to Plaintiff Dixon's oncoming motorcycle occupying the roadway to avoid the collision;

   i.  Negligent failure to maintain an adequate distance from other motor vehicles to avoid the collision;

   j.  Negligent failure to operate at a safe speed to avoid the collision;

   k.  Negligent failure to timely and safely apply the semi-truck's brakes to avoid the collision;

   l.  Negligent failure to take evasive action to avoid the collision;

   m. Negligent failure to sound the semi-truck's horn or give adequate warning of the pending danger to avoid the collision;

   n.  Negligent operation of a commercial motor vehicle with distractions to driving;

   o.  Negligent operation of a commercial motor vehicle with a defective turn signal;

   p.  Negligent failure to acquire, demonstrate, and maintain qualifications to safely operate a commercial semi-truck as required by the Federal Motor Vehicle Carrier Safety Act and the Federal Motor Carrier Safety Regulations.

   q.  Operating an unsafe semi truck

   r.  Being an unsafe driver.

60. Defendant Tawil also breached prescribed statutory duties established by the motor vehicle laws of the State of New Mexico, including but not limited to the following:

   a.  Failure to keep a proper lookout and give full time and entire attention to the operation of a motor vehicle in violation of §66-8-114(B) NMSA;

   b.  Failure to use ordinary care in the operation of the semi-truck giving due regard to the traffic and road conditions in violation of §66-8-114 (B) NMSA; and

   c.  Failure to yield the right-of-way in violation of §66-7-329 NMSA.

61. Defendant Tawil's breach of prescribed statutory duties, as established by the FMCSA and Federal Regulations and the motor vehicle laws of the State of New Mexico, which said statutes

were enacted for the safety of motorists traveling on the public roadways of this State, including Plaintiff Dixon, constitutes negligence per se.

62. Defendant Tawil's breach of prescribed statutory duties and his duty to exercise ordinary care under New Mexico law caused the semi-truck vs. motorcycle collision that severely injured Plaintiff Dixon and damaged his motorcycle and caused him to suffer other severe and permanent damages as described herein.

63. Defendant Tawil's negligence, and his negligence per se, was a proximate cause of the semi-truck vs. motorcycle collision that severely injured Plaintiff Dixon and caused him to suffer damages, including without limitation: fractures of the left femur, left radius, left ulna, maxillary fracture, zygomatic fracture; multiple fractures of the ribs; fracture of the orbital floor; displaced fracture of the medial malleolus of the left tibia; subtrochanteric fracture of the right femur; fracture of the nasal bones; injury to the thoracic aorta; contusion of both lungs; and numerous lacerations to the face.

64. Defendant Tawil's negligence, and his negligence per se, proximately caused the destruction beyond repair of Plaintiff Dixon's 1991 Honda Motorcycle (VIN: JH2RC3807NM102150).

65. Defendant Tawil's negligence and negligence per se, proximately caused Plaintiff Dixon damages for his past and future medical expenses; past and future pain and suffering; past and future emotional distress and trauma; past and future loss of enjoyment of life; past and future impairment; past and future disfigurement; past and future loss of earning capacity; past and future loss of household services; and personal property losses.

66. Based on the acts or omissions which culminated in the semi-truck vs. motorcycle collision, upon information and belief, Defendant Tawil's unsafe operation of a semi-truck was willful,

wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against Defendant Tawil for personal injuries, property damage, and punitive damages, to be determined by a jury, and a judgment for recoverable court costs, pre- and post-judgment interest, and such other relief the Court deems just.

## COUNT II: NEGLIGENCE OF DEFENDANT STONE TRUCK LINE, INC.
## (VICARIOUS LIABILITY AND DIRECT NEGLIGENCE)

67. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1–66 of this Complaint.

68. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line was, and in fact still remains a licensed DOT motor carrier engaged in the business of transporting goods throughout the Southwestern United States.

69. At all times relevant to this Complaint, Defendant Stone Truck Line is a motor carrier, and as such, must comply with all requirements of the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations.

70. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line is vicariously liable for the negligent actions and omissions of its employees and agents, arising within the course and scope of that employment and agency, under the doctrines of *respondeat superior* and principal/agent under the FMCSA and Federal Regulations and New Mexico law.

71. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line owed a duty to exercise ordinary care to properly and safely maintain, service, equip, inspect, and insure its semi-trucks to

ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon.

72. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line owed a duty to exercise ordinary care to properly qualify, train, and supervise its drivers to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon.

73. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line was the statutory employer of Defendant Tawil, and as such, had the right to direct and control Defendant Tawil while he hauled the subject shipment. Defendant Stone Truck Line is vicariously liable for the negligence of Defendant Tawil as its employee and agent while acting within the course and scope of his employment and agency under the FMCSA and Federal Regulations and New Mexico law.

74. Defendant Stone Truck Line also breached its duty to exercise ordinary care under the FMCSA and Federal Regulations and New Mexico law in multiple ways, including without limitation:

    a. Authorizing, permitting or allowing its drivers to drive in excess of the hours of service laws of the Federal Motor Carriers Safety Act and regulations;

    b. Negligent failure to supervise its drivers from driving in excess of the hours of service laws;

    c. Requiring or permitting its drivers to operate a commercial vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired through fatigue or any other cause as to make it unsafe to continue to operate;

    d. Negligent failure to hire fit and competent drivers;

    e. Negligent failure to properly qualify, train, and supervise its drivers;

f.   Negligent failure to compile and retain a driver qualification file for its drivers as required by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations;

g.   Negligent failure to properly educate its drivers on safe driving practices as required by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations;

h.   Negligent failure to retain required documentation of its driver safety training and continued-safety education programs as required by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations;

i.   Negligent failure to require compliance with the New Mexico Department of Transportation rules and regulations for semi-truck drivers;

j.   Negligent failure to comply with the New Mexico Department of Transportation rules and regulations for entrustment of commercial motor vehicles to drivers;

k.   Negligent failure to properly test, evaluate, and screen applicants it hires as drivers;

l.   Negligent failure to establish and enforce formal policies and procedures for qualifying drivers to operate its semi-trucks;

m.  Negligent failure to ensure its drivers possessed the requisite experience and skill to operate a semi-truck as required by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations;

n.   Negligent failure to ensure its drivers were trained by individuals qualified to do so under the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations;

o.   Negligent failure to ensure its drivers received continued-training by individuals qualified to do so under the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations;

p.   Negligent failure to ensure its drivers were trained on and knowledgeable of the Smith System's "Five Seeing Habits";

q.   Negligent failure to ensure its drivers were trained on and knowledgeable of their state's Commercial Driver License Manual;

r.  Negligent failure to establish and enforce formal policies and procedures for ensuring its drivers remained qualified to operate semi-trucks;

s.  Negligent failure to properly supervise its drivers while operating its semi-trucks;

t.  Negligent failure to ensure its drivers comply with applicable hours-of-service limitations prescribed by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations;

u.  Negligent failure to monitor and review its driver's daily trip logs;

v.  Negligent failure to entrust its semi-trucks to only qualified drivers;

w.  Negligent failure to entrust its semi-trucks to only drivers covered by its liability insurance policy;

x.  Negligent failure to ensure that Defendant Tawil was fit, competent, qualified, and trained to haul the subject shipment on October 28, 2018;

y.  Negligent failure to ensure that its drivers were adequately rested and alert to operate a semi-truck;

z.  Negligent failure to establish and enforce formal policies and procedures for ensuring its drivers were adequately rested and alert to operate a semi-truck;

aa. Negligent scheduling of the subject shipment's delivery;

bb. Negligent failure to ensure its semi-trucks were inspected, serviced, and maintained for safe operation, including the brakes, tires, horn, turn signals, and response to all recall notifications;

cc. Negligent failure to establish and enforce formal policies and procedures for ensuring its drivers did not operate its semi-trucks while distracted, such as by electronic devices, GPS systems, Defendant Ryan Transportation's electronic tracking systems, cell phones, and other similar electronic devices;

dd. Negligent installation of a tablet on the semi-truck's dashboard which obstructed Defendant Tawil's view;

ee. Negligent failure to establish and enforce formal policies and procedures for ensuring its semi-trucks were equipped with available safety technology to ensure its drivers did not drive while exceeding safe hours of operation or distracted by electronic devices;

ff. Being an unsafe trucking company

75. Defendant Stone Truck Line's breach of its duty to exercise ordinary care was a proximate cause of the semi-truck vs. motorcycle collision that severely injured Plaintiff Dixon and damaged his motorcycle and caused him to suffer severe damages as described herein.

76. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1-75 of this Complaint.

77. Based on the acts or omissions which culminated in the semi-truck vs. motorcycle collision, Defendant Stone Truck Line is, upon information and belief, an unfit and incompetent motor carrier whose decision to place an unsafe semi truck and/or driver on the public roadways of this State was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against Defendant Stone Truck Line for personal injuries, property damage, and punitive damages, to be determined by a jury, and a judgment for recoverable court costs, pre- and post-judgment interest, and such other relief the Court deems just.

## COUNT III: NEGLIGENCE OF DEFENDANT RYAN TRANSPORTATION (VICARIOUS LIABILITY AND DIRECT NEGLIGENCE)

78. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1–77 of this Complaint.

79. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Ryan Transportation was a DOT licensee engaged in the business of assigning drivers and equipment, providing logistics services and electronic tracking, controlling en route communications, issuing Bills of Lading and load confirmations,

and arranging for the transportation of shipments it has legally bound itself to transport and accept responsibility for throughout the United States, including the State of New Mexico.

80. At all times relevant to this Complaint, Defendant Ryan Transportation authored the Bill of Lading for the subject shipment pursuant to its legal obligation and certified that it was the "CARRIER" within this binding document, and as such, qualifies as motor carrier and an employer who must comply with all requirements of the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations. Further, because Defendant Ryan Transportation expressly represented itself as the "CARRIER" of the subject shipment, creating ambiguity with the "Broker Addendum" which was not part of the Agreement as well as section 371 and 373 of USFMC regs, Defendant Ryan Transportation is, upon information and belief, the statutory employer of Defendants Stone Truck Line and Tawil, and by extension is vicariously liable for the negligence of Defendants Stone Truck Line and Tawil.  At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Ryan Transportation was the statutory employer of Defendant Tawil, and as such, had the right to direct and control Defendant Tawil while he hauled the subject shipment. Defendant Ryan Transportation is vicariously liable for the negligence of Defendants Stone Truck Line and Tawil as its employee and agent while acting within the course and scope of his employment and agency under the FMCSA and Federal Regulations and New Mexico law.

81. At all times relevant to this Complaint, Defendant Ryan Transportation retained the right of legal, contractual, and/or actual control over Defendant Stone Truck Line and its driver during the transportation of the subject shipment. Defendant Ryan Transportation received compensation for its central role in the transportation of the subject shipment through the

expansive, authority-exceeding services it provided. Because of Defendant Ryan Transportation's significant control over and involvement with the transportation of the subject shipment, including without limitation the Agreement giving it exclusive control and full responsibility, as well as the Carmack Amendment and selection of the trucking company, Defendant Ryan Transportation is vicariously liable for the negligent actions and omissions of Defendant Stone Truck Line and its driver, arising within the course and scope of that employment and agency, under the doctrine of *respondeat superior* and principal/agent under the FMCSA and Federal Regulations and New Mexico law.

82. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Ryan Transportation also owed a duty to exercise ordinary care to verify that the semi-truck it assigned to transport the subject shipment was properly and safely maintained, serviced, equipped, inspected, and insured to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon.

83. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Ryan Transportation also owed a duty to exercise ordinary care to assure that the trucking company it assigned to transport the subject shipment was safe, fit and competent to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon. Defendant Ryan Transportation is liable for negligent selection/hiring of Stone Truck lines, as set forth above. Restatement of Torts 2d section 411.

84. Defendant Ryan Transportation breached its duty to exercise ordinary care under the FMCSA and Federal Regulations and New Mexico law in multiple ways, including without limitation:

    a. Misrepresentation of or exceeding its operating authority in violation of 49 C.F.R. 371.7;

b.  Negligent and unsafe scheduling of the subject shipment's delivery and demanding "time is of the essence" with damages;

c.  Authorizing, permitting or allowing its drivers to drive in excess of the hours of service laws of the Federal Motor Carriers Safety Act and regulations;

d.  Negligent failure to supervise its drivers from driving in excess of the hours of service laws;

e.  Requiring or permitting its drivers to operate a commercial vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired through fatigue or any other cause as to make it unsafe to continue to operate;

f.  Negligent hiring/selection of an unsafe trucking company;

g.  Negligent failure to properly qualify, train, and supervise its contracted trucking company and their driver as required by its Agreement with Defendant Russell Stover;

h.  Negligent failure to verify that its contracted trucking company received a positive safety rating from the Federal Motor Carrier Safety Administration;

i.  Negligent failure to verify that its contracted trucking company possessed the requisite experience and skill for a single-driver interstate shipment;

j.  Negligent failure to verify that its contracted trucking company's driver was covered under the company's liability insurance policy;

k.  Negligent failure to verify that its contracted trucking company properly screened and qualified it driver prior to employment;

l.  Negligent failure to verify that its contracted trucking company properly trained its driver;

m. Negligent failure to verify that its contracted trucking company properly supervised its driver;

n.  Negligent failure to compile and retain a qualification file and records for its contracted trucking company as required by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations;

o.  Negligent failure to establish and enforce formal policies and procedures for properly screening and qualifying its contracted trucking company before assigning a single-driver interstate shipment for the mission in question;

p.  Negligent failure to verify that its contracted trucking company and its driver possessed the requisite experience and skill to transport a single-driver interstate shipment for the mission in question;

q.  Negligent failure to verify that its contract trucking company's driver was adequately rested and alert, operating within the applicable hours-of-service regulations, and practicing safe semi-truck operating practices before assigning a single-driver interstate shipment for the mission in question;

r.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted trucking company's driver was adequately rested and alert, operating within the applicable hours-of-service regulations, and practicing safe operating practices for the mission in question;

s.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted trucking company's driver did not operate a semi-truck while distracted, such as by cell phone, GPS, window-mounted tablet, or other similar electronic devices;

t.  Negligent failure to verify that its contracted trucking company properly inspected, serviced, and maintained their semi-trucks for safe operation, including the brakes, tires, horn, turn signal, and response to all recall notifications;

u.  Negligent provision of electronic tracking systems and other reporting devices that distract its contracted trucking company's drivers;

v.  Negligent failure to verify that its contracted trucking company equipped their semi-trucks with available safety technology to ensure their drivers did not drive while exceeding safe hours of operation or distracted by electronic devices;

w.  Negligent failure to obtain more than surface-level information from its contracted trucking company's drivers while screening and qualifying for employment;

x.  Negligent failure to establish and enforce formal policies and procedures for ensuring that its contracted trucking company's drivers remain qualified to transport single-driver interstate shipments after the initial hiring process;

y.  Negligent failure to inquire into its contracted trucking company's internal safety records and evaluations, safety training program, or driver continued-training programs as a self-proclaimed experienced industry leader;

z.  Negligent failure to inquire into its contracted trucking company's reputation within the trucking industry as a self-proclaimed experienced industry leader;

aa. Negligent failure to inquire into the three cancellations of Defendant Stone Truck Line's federally-mandated insurance policies by its former insurers as a self-proclaimed experienced industry leader;

bb. Negligent failure to inquire into the various injury crashes and one fatal crash involving Defendant Stone Truck Line within close temporal proximity to October 28, 2018;

cc. Negligent failure to inquire into the "non-ratable" safety rating issued to Defendant Stone Truck Line by the Federal Motor Carrier Safety Administration in 2018;

dd. Negligent failure to inquire into Defendant Stone Truck Line's unsafe driving score above 4.5 issued by the Safety Measurement System (a branch of the Federal Motor Carrier Safety Administration) for numerous months within close temporal proximity to October 28, 2018.

85. Defendant Ryan Transportation's breach of its duty to exercise ordinary care was a proximate cause of the semi-truck vs. motorcycle collision that severely injured Plaintiff Dixon and damaged his motorcycle and caused Plaintiff to suffer damages as described herein.

86. Based on the acts or omissions which culminated in the semi-truck vs. motorcycle collision, upon information and belief, Defendant Ryan Transportation's acts and omissions as set forth above, including unsafe scheduling of the mission and negligent selection of an unsafe trucking company, was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against Defendant Ryan Transportation for personal injuries, property damage, and punitive damages, to

be determined by a jury, and a judgment for recoverable court costs, pre- and post-judgment interest, and such other relief the Court deems just.

### COUNT IV: NEGLIGENCE OF DEFENDANT RUSSELL STOVER
### (VICARIOUS LIABILITY AND DIRECT NEGLIGENCE)

87. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1–86 of this Complaint.

88. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Russell Stover was a sophisticated, knowledgeable and licensed motor carrier engaged in the business of transporting goods directly or by assigning shipments of its goods to CARRIERS for transportation throughout the United States, including across the State of New Mexico.

89. At all times relevant to this Complaint, Defendant Russell Stover is not merely a "casual shipper" of goods, but rather a sophisticated, knowledgeable, experienced licensed USDOT motor carrier, with its own transportation department, and the principal for whom Defendants Ryan Transportation and Stone Truck Line performed, for compensation, integral and necessary functions within the transportation supply chain, and ultimately for the financial benefit of Defendant Russell Stover.  Based on its business model in this case, Defendant Russell pays for the transportation costs of its shipments to clients to final destination.

90. Because Defendant Russell Stover's business relies on the successful delivery of its goods by its contracted CARRIERS, Defendant Russell Stover, upon information and belief, retained control over and was actively involved in the transportation of the subject shipment by Defendants Ryan Transportation and Stone Truck Line. Defendant Russell Stover's right of control dealt specifically with the integral details of transporting the subject shipment. Upon information and belief, Defendant Russell Stover's control over the shipment included without limitation the following:  it specified the roles each CARRIER would fulfill; it set the pick-up

and delivery times for the subject shipment; it dispatched the CARRIER's driver to pick-up the subject shipment; it specified the type and functionality of the trailer required to transport the subject shipment; it required the use of a communication system or GPS tracking system on the subject shipment that was accessible by Defendant Russell Stover or its agent Defendant Ryan Transportation; it prohibited the CARRIER from arranging for another CARRIER to transport the subject shipment; it imposed the obligation of ensuring driver compliance with the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations on the CARRIER; it imposed additional liability insurance requirements on the CARRIER; it dictated the CARRIER's transportation route by providing a discounted method for the cost of fuel; and it reserved the right to reduce the CARRIER's compensation for untimely deliveries. Accordingly, Defendant Russell Stover meets the prescribed definition of an employer and motor carrier under the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations and Defendant Russell Stover, upon information and belief, is a statutory employer of Defendants Ryan Transportation and Stone Truck Line and Tawil and is vicariously liable for the negligence of Defendant Tawil, who was acting within the course and scope of that employment or agency at the time of the incident on October 28, 2018.

91. Defendant Russell Stover is also vicariously liable for the negligence of its contracted CARRIERS and their drivers, including Defendant Ryan Transportation and Defendant Stone Truck Line and its driver Defendant Tawil, arising within the course and scope of that employment or agency, which caused or contributed to the semi-truck vs. motorcycle collision, under the doctrine of *respondeat superior* and principal/agent under the FMCSA and Federal Regulations and New Mexico law.

92. At all times relevant to this Complaint, Defendant Russell Stover operated and controlled a transportation supply chain that was an integral part of its necessary operation for its business, whereby Defendant Russell Stover assigned drivers and equipment under its direction and control to transport its goods. Upon information and belief, Defendant Russell Stover's role in the transportation supply chain, as statutory employer of Defendants Ryan Transportation, Stone Truck Line, and Tawil, dictates that it must comply with all requirements of the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations applicable to an employer or motor carrier.

93. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Russell Stover negligently failed to ensure that the semi-truck assigned to transport the subject shipment was properly and safely maintained, serviced, equipped, inspected, and insured to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon.

94. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Russell Stover also owed a duty to exercise ordinary care to ensure that the contracted CARRIERS and drivers it assigned to transport its shipments were qualified, fit and competent to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon.  Defendant Russell Stover also owed a duty to exercise ordinary care to ensure that its contracted CARRIERS properly screened, qualified, trained, and supervised its drivers, such that only qualified, fit and competent drivers transported Defendant Russell Stover's goods.

95. Defendant Russell Stover breached its duty to exercise ordinary care under the FMCSA and Federal Regulations and New Mexico law in multiple ways, including without limitation:

a.  Negligent scheduling of the subject shipment's delivery, making it an unsafe trip in violation of the hours of service, speed and other safety laws;

b.  Negligent hiring/selection of the CARRIERS in this case to haul the subject shipment, subjecting it to liability under section 411 of Restatement of Torts 2d;

c.  Negligent supervision of its transportation business model;

d.  Authorizing, permitting or allowing its drivers to drive in excess of the hours of service laws of the Federal Motor Carriers Safety Act and regulations;

e.  Negligent failure to supervise its drivers from driving in excess of the hours of service laws;

f.  Requiring or permitting its drivers to operate a commercial vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired through fatigue or any other cause as to make it unsafe to continue to operate;

g.  Negligent failure to properly qualify, train, and supervise its contracted CARRIERS and their drivers;

h.  Negligent failure to verify that its contracted CARRIERS received a positive safety rating from the Federal Motor Carrier Safety Administration before tendering the subject shipment;

i.  Negligent failure to verify that its contracted CARRIERS possessed the requisite experience and skill to haul the subject shipment;

j.  Negligent failure to verify that its contracted CARRIERS' drivers are covered under the CARRIER's liability insurance policy before tendering the subject shipment;

k.  Negligent failure to verify that its contracted CARRIERS properly screened and qualified their drivers before tendering the subject shipment;

l.  Negligent failure to verify that its contracted CARRIERS properly trained its drivers before tendering the subject shipment;

m.  Negligent failure to verify that its contracted CARRIERS properly supervised its drivers before tendering the subject shipment;

n.  Negligent failure to compile and retain a qualification file for its contracted CARRIERS as required by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations;

o.  Negligent failure to establish and enforce formal policies and procedures for properly screening and qualifying its contracted CARRIERS before tendering the subject shipment;

p.  Negligent failure to verify that its contracted CARRIERS' drivers possess the requisite experience and skill to transport the subject shipment;

q.  Negligent failure to verify that its contracted CARRIERS' drivers were adequately rested and alert, operating within the applicable hours-of-service regulations, and practicing safe semi-truck operating practices before tendering the subject shipment;

r.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted CARRIERS' drivers were adequately rested and alert, operating within the applicable hours-of-service regulations, and practicing safe operating practices;

s.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted CARRIERS' drivers did not operate a semi-truck while distracted, such as by cell phone, GPS, Defendant Ryan Transportation's tracking system, dashboard-mounted tablet, or other similar electronic devices;

t.  Negligent failure to verify that its contracted CARRIERS properly inspected, serviced, and maintained their semi-trucks for safe operation, including the brakes, tires, horn, turn signal, and response to all recall notifications, before tendering the subject shipment;

u.  Negligent failure to verify that its contracted CARRIERS equipped their semi-trucks with available safety technology to ensure their drivers did not drive while exceeding safe hours of operation or distracted by electronic devices before tendering the subject shipment;

v.  Negligent failure to obtain more than surface-level information from its contracted CARRIERS while screening and qualifying for employment;

w.  Negligent failure to establish and enforce formal policies and procedures for ensuring that its contracted CARRIERS remain qualified to transport interstate shipments after the initial hiring process;

x.  Negligent failure to inquire into its contracted CARRIERS' internal safety records and evaluations, safety training program, or driver continued-training programs, before tendering the subject shipment;

y.  Negligent failure to inquire into its contracted CARRIERS' reputation within the trucking industry before tendering the subject shipment;

z.  Negligent failure to inquire into the three cancellations of Defendant Stone Truck Line's federally-mandated insurance policies by its former insurers before tendering the subject shipment;

aa. Negligent failure to inquire into the various injury crashes and one fatal crash involving Defendant Stone Truck Line within close temporal proximity to October 28, 2018, before tendering the subject shipment;

bb. Negligent failure to inquire into the "non-ratable" safety rating issued to Defendant Stone Truck Line by the Federal Motor Carrier Safety Administration in 2018, before tendering the subject shipment;

cc. Negligent failure to inquire into Defendant Stone Truck Line's unsafe driving score above 4.5 issued by the Safety Measurement System (a branch of the Federal Motor Carrier Safety Administration) for numerous months within close temporal proximity to October 28, 2018, before tendering the subject shipment.

96. Defendant Russell Stover's breach of its duty to exercise ordinary care was a proximate cause of the semi-truck vs. motorcycle collision that severely injured Plaintiff Dixon and damaged his motorcycle and caused him to suffer damages as described herein.

97. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1-96 of this Complaint.

98. Based on the acts or omissions which culminated in the semi-truck vs. motorcycle collision, upon information and belief, Defendant Russell Stover was willful, wanton or reckless, and

demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against Defendant Russell Stover for personal injuries, property damage, and punitive damages, to be determined by a jury, and a judgment for recoverable court costs, pre- and post-judgment interest, and such other relief the Court deems just.

### COUNT V: JOINT ENTERPRISE LIABILITY OF DEFENDANTS RUSSELL STOVER, RYAN TRANSPORTATION, AND STONE TRUCK LINE

99. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1–98 of this Complaint.

100.    Pleading alternatively, at all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line had an express or implied agreement to facilitate and accomplish the efficient transportation of specified shipments through their transportation supply chain.

101.    Pleading alternatively, at all times relevant to this Complaint, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line performed instrumental roles within this transportation supply chain, and as a result, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line collectively shared the common purpose of utilizing a semi-truck to efficiently transport Defendant Russell Stover's goods.

102.    Pleading alternatively, at all times relevant to this Complaint, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line contemplated the economic gain of approaching their objective as an enterprise, and upon information and belief, collectively pooled their resources, efforts, and knowledge to accomplish their common purpose of utilizing a semi-

truck to efficiently transport Defendant Russell Stover's goods, thereby creating a joint proprietary interest in this transportation supply chain.

103.    Pleading alternatively, at all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line, upon information and belief, each possessed the right, under authority conferred by the Federal Motor Safety Act and the Federal Motor Carrier Safety Regulations, to voice their concerns related to and control the performance of this transportation supply chain.

104.    Pleading alternatively, at all times relevant to this Complaint, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line formed this transportation supply chain for the purpose of minimizing the overall cost of transporting Defendant Russell Stover's goods. By extension, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line would share in the profits flowing from the reduction in transportation costs. At the same time, because Defendant Russell Stover's revenue depends on the successful and timely delivery of its goods, Defendants Ryan Transportation and Stone Truck Line agreed to accept a reduction in their compensation stemming from any delivery delays. Consequently, upon information and belief, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line would each share in any losses incurred by the transportation supply chain.

105.    Pleading alternatively, at all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line's driver negligently operated a semi-truck within the scope of the aforementioned enterprise by making an unsafe and unlawful left turn without regard for oncoming traffic, such as Plaintiff Dixon.

106.   Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1-105 of this Complaint.

107.   Furthermore, pleading alternatively, as members of a joint enterprise, Defendants Russell Stover, Ryan Transportation, and Stone Truck Line are each vicariously liable for the acts and omissions of Defendant Stone Truck Line's unfit and incompetent driver under the FMCSA and Federal Regulations and New Mexico law.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against Defendant Russell Stover, Ryan Transportation, and Stone Truck Line for personal injuries, property damage, and punitive damages, to be determined by a jury, and a judgment for recoverable court costs, pre- and post-judgment interest, and such other relief the Court deems just

## RECOVERABLE DAMAGES OF WALTER DIXON

108.   The named Defendants' negligence, jointly and severally, proximately caused Plaintiff Dixon personal injury and property damages including:

   a.   Past and future reasonable and necessary medical expenses for his treatment and physical therapy;

   b.   Past and future pain and suffering;

   c.   Past and future mental anguish and emotional distress;

   d.   Past and future impairment and disability;

   e.   Past and future loss of earning capacity;

   f.   Past and future disfigurement;

   g.   Past and future loss of household services;

   h.   Past and future loss of enjoyment of life; and

   i.   Property damages for the total loss of Plaintiff Dixon's 1991 Honda Motorcycle.

109.   Furthermore, the acts and omissions of the named Defendants were in reckless disregard for the rights and safety of Plaintiff Dixon, demonstrated an actual and conscious indifference

and disregard for Plaintiff Dixon's rights and safety, as to constitute willful, wanton, reckless, and malicious conduct, which was a proximate cause of the damages and injuries suffered by Plaintiff Dixon, and for which the named Defendants are therefore subject to the imposition of punitive damages.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against the named Defendants, jointly and severally, for personal injuries, medical expenses, pain and suffering, emotional distress, loss of household services, impairment, disfigurement, loss of earning capacity, loss of enjoyment of life, property damage, and punitive damages, all to be determined by a jury, and also a judgment for recoverable court costs, pre- and post-judgment interest, and all such relief the Court deems just.

## TWELVE-PERSON JURY DEMAND

Plaintiff Dixon also hereby respectfully requests a trial by a twelve-person jury for all issues and damages.

Respectfully submitted,

**CERVANTES SCHERR LEGATE, L.C.**

_____
Joseph Cervantes
James F. Scherr
Brittany Lopez
Attorney for Plaintiff
901 E. University Ave., Ste. 965-L
Las Cruces, New Mexico 88001
(575) 526-5600
joe@cervantesscherrlegate.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically transmitted the above document to the Clerk's Office using the CM/ECF system for filing and transmittal to the following CM/ECF registrants this _____ day of January, 2021.

James P. Barrett
**Eaton Law Office, PC**
P.O. Box 25305
Albuquerque, NM  87125
jbarrett@eatonlaw-nm.com
*Attorney for Defendant Russell Stover Chocolates, LLC*

Seth Sparks
Jeffrey R. Taylor
**Rodey, Dickason, Sloan, Akin & Robb, P.A.**
P.O. Box 1888
Albuquerque, NM  87103
ssparks@rodey.com
rtaylor@rodey.com
*Attorneys for Defendants Stone Truck Line, Inc. and Ismail Y. Tawil*

Justin D. Rodriguez
**Atkinson, Baker & Rodriguez, P.C.**
201 Third Street NW, Suite 1850
Albuquerque, NM  87102
JRodriguez@abrfirm.com
*Attorneys for Defendant Ryan Transportation Service, Inc.*

_____