# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

WALTER N. DIXON,

      Plaintiff,                               Case No. 2:19-cv-000945-JCH-GJF

V.

STONE TRUCK LINE, INC., A FOREIGN CORPORATION,
ISMAIL Y. TAWIL,
RUSSELL STOVER CHOCOLATES, LLC, A FOREIGN CORPORATION, and
RYAN TRANSPORTATION SERVICE, INC.,

      Defendants.

## PLAINTIFF'S THIRD AMENDED COMPLAINT FOR NEGLIGENCE, PERSONAL INJURIES, PROPERTY AND PUNITIVE DAMAGES

Comes now Plaintiff Walter Dixon, by and through counsel Cervantes Scherr Legate, LC., and pursuant to the Court's November 23, 2021, Memorandum Opinion and Order asserts his Third Amended Complaint against Defendants Stone Truck Line, Inc., Ismail Y. Tawil, Russell Stover Chocolates, LLC, and Ryan Transportation Service, Inc.

## BACKGROUND AND JURISDICTION

1. Plaintiff's Complaint asserts Walter Dixon's right to recover damages as the result of injuries he suffered from a collision which occurred on October 28, 2018, in Deming, Luna County, New Mexico.

2. On that date, Mr. Dixon was operating his motorcycle in a lawful manner, such as with the right-of-way and at a safe speed, when a commercial motor vehicle (as defined by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations) (hereinafter referred to as "semi-truck") operated by Defendant Ismail Y. Tawil in the course

and scope of his employment with the other named Defendants, who served as his employers ("employee" and "employer" as defined by the Federal Motor Safety Act and the corresponding Federal Motor Carrier Safety Regulations), failed to yield to Plaintiff Dixon, made an unsafe left turn, and drove directly into Plaintiff Dixon's lane of oncoming traffic.

3. Plaintiff Dixon is a resident of Deming in Luna County, within the State of New Mexico.

4. Defendant Ismail Y. Tawil, upon information and belief, is a resident of Phoenix, Arizona. At all times relevant to this Complaint was not only acting within the course and scope of his employment for his employer Defendant Stone Truck Line, Inc. (hereinafter referred to as "Stone Truck Line"), but was also acting within the course and scope of his employment for his employers (as defined by the Federal Motor Safety Act and the corresponding Federal Motor Carrier Safety Regulations) Defendants Russell Stover Chocolates, LLC (hereinafter referred to as "Russell Stover"), and Ryan Transportation Service, Inc. (hereinafter referred to as "Ryan Transportation").

5. Defendant Tawil may be served with process at his home, 4731 North 111th Glen, Phoenix Arizona 85037, or wherever he may be found, or as otherwise permitted by Rule 1-004(F) NMRA.

6. This Court has personal and subject matter jurisdiction as to Plaintiff Dixon's Complaint against Defendant Tawil.

7. Defendant Stone Truck Line, upon information and belief, is a foreign California for-profit corporation, licensed as a "for-hire motor carrier" (as defined by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations) under MC-

460857, and engaged in the business of transporting goods throughout the United States, including across the State of New Mexico.

8. Defendant Stone Truck Line, upon information and belief, was at all times relevant to this Complaint the owner of the 2014 Blue Freightliner Cascadia (VIN: 3AKJGLD56ESFV5306), which was driven by Defendant Tawil in Deming, New Mexico, on October 28, 2018, and collided with Plaintiff Dixon's motorcycle. Upon information and belief, this semi-truck was the medium selected and utilized by this transportation supply chain, whereby said semi-truck was hauling a trailer loaded with Defendant Russell Stover's cargo, under the exclusive direction and control of Defendant Ryan Transportation, and which the delivery of said shipment would financially benefit each of the named Defendants.

9. Defendant Stone Truck Line, as a corporation foreign to New Mexico, derives substantial economic benefits from its business activities in this State, and maintains intentional, substantial, continuous, and systematic contacts with New Mexico.

10. Defendant Stone Truck Line may be served with process by serving its registered agent, Kevin Grant, or any other authorized officers or agent therein, at 8080 North Palm Avenue, Fresno, California 93711, or wherever they may be found, or as otherwise permitted by Rule 1-004(G) NMRA.

11. This Court has personal and subject matter jurisdiction as to Plaintiff Dixon's claims against Defendant Stone Truck Line.

12. Defendant Russell Stover, upon information and belief, is a foreign Missouri for-profit corporation which is authorized to conduct business within the State of New Mexico by its

registration with the New Mexico Secretary of State, and by its designation of a New Mexico registered agent for service of process.

13. Defendant Russell Stover may be served with process by serving its registered agent, CT Corporation System or any other authorized officer or agent therein at 206 S. Coronado Avenue, Espanola, New Mexico 87532, or wherever they may be found, or as otherwise permitted by Rule 1-004(G) NMRA.

14. Defendant Russell Stover, upon information and belief, engages in the business of affecting interstate commerce by assigning commercial motor vehicles and employees to transport its goods for compensation throughout the United States, including across the State of New Mexico, and is licensed by USDOT as a motor carrier, USDOT number 89022, MC-151914, and meets the statutory definition of an "employer" under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations.

15. Defendant Russell Stover, upon information and belief, engaged in the business of interstate shipment of goods in this transaction, arranging this shipment from its facility in Corsicana, Texas to Watsonville, California, by hiring Defendants Ryan Transportation and Stone Truck Line to perform its duties as a motor carrier as its agents/employees within its transportation supply chain, with the objective of transporting its goods within and across the State of New Mexico for compensation paid by Russell Stover.

16. Defendant Russell Stover, as a corporation foreign to New Mexico, derives substantial economic benefits from its business activities in this State, and maintains intentional, substantial, continuous and systematic contacts within New Mexico.

17. This Court has personal and subject matter jurisdiction as to Plaintiff Dixon's claims against Defendant Russell Stover.

18. Defendant Ryan Transportation, upon information and belief, is a foreign Kansas for-profit corporation, licensed as a "for-hire" property broker and freight forwarder (as defined by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations) under MC-196502 and FF-2351, and who, for compensation, engages in the business of arranging and facilitating the transportation of goods it has legally bound itself to transport throughout the United States, including across the State of New Mexico.

19. Defendant Ryan Transportation may be served with process by serving its registered agent, Martin E. Threet, or any other authorized officers or agent therein, at 6605 Uptown Boulevard NE, Suite 300, Albuquerque, New Mexico 87110, or wherever they may be found, or as otherwise permitted by Rule 1-004(G) NMRA. Defendant Ryan Transportation may also be served with process by serving Charles Ryan, Vice President, at 9350 Metcalf Avenue, Overland Park, Kansas 66212, or wherever he may be found, or as otherwise permitted by Federal Rule of Civil Procedure 4(e)(2).

20. Defendant Ryan Transportation, upon information and belief, issued and certified in the Bill of Lading that it was functioning as the "CARRIER" (as defined by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations), and arranged for Defendants Stone Truck Line and Tawil to complete the interstate transportation of the Russell Stover's goods it legally bound itself to transport, and directed, controlled and facilitated the transportation of said shipment by Defendant Stone Truck Line within and across the State of New Mexico.

21. Defendant Ryan Transportation, upon information and belief, contracted with Defendant Russell Stover, a motor carrier, to accomplish the interstate transportation of goods for compensation within and across the State of New Mexico, and as such, Ryan Transportation certified in the Bill of Lading specifically authored, pursuant to a legal obligation, by itself that Defendant Ryan Transportation was functioning as the "CARRIER" (as defined by the Federal Motor Safety Act and the corresponding Federal Motor Carrier Safety Regulations).

22. Defendant Ryan Transportation, upon information and belief, represented or misrepresented in the Bill of Lading its operations and capabilities to be that of a motor carrier by legally binding itself to transport Defendant Russell Stover's goods, by authoring, issuing and certifying that it was the "CARRIER" in the Bill of Lading, which is a violation of 49 C.F.R. § 371.7, 49 U.S.C § 13901(c), 49 U.S.C. § 14102(a), and "MAP-21," and further, by assuming responsibilities Defendant Ryan Transportation lacked the requisite motor carrier operating authority to assume or complete.

23. Defendants Ryan Transportation and Russell Stover memorialized their relationship within this transportation supply chain on March 23, 2018. Under Paragraph 16 of said Agreement, Defendant Ryan Transportation retained the right of contractual control over the subject shipments. Paragraph 16 states in relevant part that Defendant RYAN TRANSPORTATION "shall have exclusive control of the persons operating the equipment or otherwise engaged in such transportation services. To the extent required by law, CARRIER (a) assumes full responsibility for the acts and omissions of such persons." On its face, the Agreement provided Defendant Ryan Transportation with control and responsibility for this mission, and by extension, Defendant Ryan Transportation exceeded its operating authority as a property

broker and freight forwarder from the inception of this transportation supply chain. Though there is a Broker Addendum, the Broker Addendum is not part of the Agreement because said Broker Addendum: is expressly omitted within Paragraphs 27(a), 27(b), and 38 of the Agreement; is not signed by Defendant Russell Stover's Director of Transportation; and the Broker Addendum does not expressly exclude or address the express language of the Agreement. Therefore, upon information and belief, the Agreement's express language of Defendant Ryan Transportation's control and responsibilities as a CARRIER makes it contractually responsible, and the Bill of Lading and Load Confirmation documents authored by Defendant Ryan Transportation demonstrate its exercise of actual control.

24. Defendant Ryan Transportation derives substantial economic benefits from its business activities in this State, and maintains intentional, substantial, continuous and systematic contacts within New Mexico.

25. This Court has personal and subject matter jurisdiction as to Plaintiff Dixon's claims against Defendant Ryan Transportation.

## FACTUAL ALLEGATIONS

26. The injuries and damages which are the basis of this action arise from a motor vehicle collision which occurred on October 28, 2018, at approximately 11:00 a.m. on Gold Avenue, City of Deming, Luna County, New Mexico (hereinafter referred to as "semi-truck vs. motorcycle collision").

27. At the time and place of the semi-truck vs. motorcycle collision, Plaintiff Dixon was operating a motorcycle traveling southbound on Gold Avenue in a lawful manner, and thus, was obeying all motor vehicle laws.

28. At the time and place of the semi-truck vs. motorcycle collision, Defendant Tawil was operating a semi-truck, hauling a trailer loaded with goods owned by Defendant Russell Stover, a motor carrier, and pursuant to the Agreement, the driver and commercial motor vehicle were under the exclusive control of Defendant Ryan Transportation, who assumed full responsibility for the transportation of said Russell Stover shipment. Defendant Tawil was traveling northbound on Gold Avenue. Upon information and belief, Defendant Tawil was acting within the course and scope of his employment as an employee for a transportation supply chain consisting of Defendants Stone Truck Line, Ryan Transportation, and Russell Stover, which said transportation supply chain was directly responsible for placing Defendant Tawil on the public roadways of this State.

29. At the time and place of the collision, Defendant Tawil was operating a commercial motor vehicle in violation of the hours-of-service laws of the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations while on a mission organized, controlled and directed by the other Defendants who required Tawil to embark on an unsafe driving schedule in violation of 49 C.F.R. § 390.13. Defendants Russell Stover and Ryan Transportation set the timeline for the unsafe driving schedule without consideration for any route and driving conditions which may be reasonably encountered during the mission, and in fact, Defendant Ryan Transportation expressed that "time is of the essence" for performance and completion of the mission.

30. As Defendant Tawil entered the intersection of the I-10 Frontage Road and Gold Avenue with his semi-truck, Defendant Tawil, who upon information and belief was not properly qualified to operate a commercial motor vehicle under the Federal Motor Carrier Safety Act the

corresponding Federal Motor Carrier Safety Regulations, drove unsafely, while impaired by driving excessive hours which affected his alertness, by failing to maintain a proper lookout and failing to yield the right-of-way to Plaintiff Dixon. Defendant Tawil made an unlawful and reckless left turn directly into the path of oncoming traffic, which said unlawful and reckless turn proximately caused Defendant Tawil to crash into Plaintiff Dixon's motorcycle.

31. Due to the circumstances surrounding the collision, New Mexico State Police cited Defendant Tawil under New Mexico §66-8-114(A) for Careless Driving (citation number: 1979085161065).

32. Upon information and belief, the semi-truck was unsafe for operation on the public roadways of the State of New Mexico and the United States due to the installation of an electronic tablet near the front windshield, which caused distracted driving and blocked visibility of Plaintiff Dixon's oncoming motorcycle, and according to the police report, inoperable front turn signals. Each of these unsafe vehicle conditions were a proximate cause of the collision.

33. As a proximate result of Defendants Stone Truck Line, Ryan Transportation, and Russell Stover's decision to place Defendant Tawil, who was not properly qualified to be a fit or competent driver, on the public roadways of this State, Plaintiff Dixon suffered severe injuries including, but not limited to: fractures of his left femur, his left radius, his left ulna, a maxillary fracture, a zygomatic fracture, multiple fractured ribs, a fracture of the orbital floor, and other injuries, permanent impairment and disabilities.

34. As a proximate result of the Defendants' unreasonable and unsafe action of placing Defendant Tawil and this semi-truck on the public roadways of this State, Plaintiff Dixon also suffered a displaced fracture of the medial malleolus of the left tibia, a subtrochanteric fracture of the right femur, a fracture of the nasal bones, his face, and other injuries.

35. Immediately following the severe injuries he suffered on October 28, 2018, Plaintiff Dixon was airlifted from Deming to the nearest Level I trauma center at the University Medical Center of El Paso, Texas.

36. As a result of the injuries caused by the semi-truck vs. motorcycle collision, Plaintiff Dixon required and endured multiple surgeries including:

    a. On November 2, 2018, left femoral cutdown for thoracic endovascular stent placement;

    b. On November 9, 2018, left distal femur irrigation and debridement; left distal femur open reduction and internal fixation; application of antibiotic impregnated bone cement; and negative pressure wound therapy;

    c. On November 10, 2018, open reduction and internal fixation of left distal radius fracture using a long radial tri-med plate and open reduction and internal fixation of left distal ulna using Stryker 5 hole 2.4 mm plate;

    d. On November 13, 2018, treatment of right subtrochanteric proximal femur fracture with intramedullary nail and removal of proximal tibial traction pin;

    e. On November 17, 2018, open reduction and internal fixation of the left medial malleolus; and

    f. On November 17, 2018, open reduction internal fixation left zygomaticomaxillary complex fracture; left orbital floor fracture reconstruction; repair of left lateral eyebrow and forehead laceration; and closed reduction of left zygomatic arch fracture.

37. As a result of the severe injuries he suffered on October 28, 2018, Plaintiff Dixon was in a medically induced coma, and remained in that coma for several weeks.

38. As a result of the severe injuries he suffered, Plaintiff Dixon was continuously hospitalized at the University Medical Center of El Paso between October 28, 2018, and December 1, 2018, at which time he was transferred to Mesa Hills Specialty Hospital in El Paso, Texas for ongoing care.

39. Plaintiff Dixon remained at Mesa Hills Specialty Hospital from December 1, 2018, until January 20, 2019, at which time he was transferred to Grace Point Wellness, a skilled nursing care facility in El Paso, Texas.

40. Plaintiff Dixon was finally discharged from Grace Point Wellness, and allowed to return home to Deming, New Mexico, on February 18, 2019, after being hospitalized for over three months.

41. Plaintiff Dixon has suffered in the past, and will continue to suffer in the future, from the injuries he sustained on October 28, 2018, due to Defendants' unreasonable and unsafe action of allowing an unfit and incompetent driver on the public roadways of this State.

42. Defendants' unreasonable and unsafe action of placing Defendant Tawil on the public roadways of this State proximately caused Plaintiff Dixon recoverable damages including, but not limited to, the following: 1) past reasonable and necessary medical expenses presently exceeding $864,319.00; 2) future reasonable and necessary medical expenses; 3) past physical and emotional pain and suffering and mental anguish; 4) future physical and emotional pain and suffering and mental anguish; 5) past and future disfigurement; 6) past and future loss of household services; 7) past and future loss of enjoyment of life; 8) past and future impairment; 9) past and future loss of earning capacity; and 10) loss of vehicle.

43. At all times relevant to this Complaint, Defendant Ismail Tawil was an unsafe driver, operating a commercial motor vehicle licensed as a commercial driver by the State of Arizona, who had numerous citations issued to him while operating a motor vehicle, which he failed to truthfully disclose, but which his driving record in the possession of Defendant Stone Truck Line revealed his unsafe driving habits of violating safety laws for commercial motor vehicles, speeding, and failing to obey traffic signs, including but not limited to the following: 12/8/17 speeding; 8/6/17 failure to obey yield sign; 3/11/16 unsafe operation; 9/22/15 improper backing; 4/12/15 false record of duty service; 12/10/14 operating without brakes; 2/7/14 motor carrier regulations violations; 12/10/12 motor carrier regulations violations; 7/8/11 violation of registration; 12/7/08 failure to obey traffic signal or light; 11/2/08 operating without lights; 11/10/07 failure to obey traffic signal; 11/10/07 speeding; 11/7/07 failure to obey traffic control device or sign; 10/26/07 speeding; 10/26/07 failure to answer a citation or pay fine; and 5/29/07 speeding.

44. At all times relevant to this Complaint, Defendant Stone Truck Line was a motor carrier as defined by, and subject to all requirements of the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations, and liable for the acts and omissions of its employee-driver. Defendant Stone Truck Line is the statutory employer of Defendant Tawil, and thus, assumes full responsibility for his acts and omissions. Upon information and belief, at the time of hiring and at time of this collision, Defendant Stone Truck Line was an unfit and incompetent motor carrier based on, but not limited to, three cancellations of federally-mandated insurance policies by its former insurers; its involvement in various injury crashes and one fatal crash within close temporal proximity to October 28, 2018; a "non-ratable" safety

review issued by the Federal Motor Carrier Safety Administration in 2018; an unsafe driving score above 4.5 issued by the Safety Measurement System (a branch of the Federal Motor Carrier Safety Administration) for numerous months within close temporal proximity to October 28, 2018; and a lack of regulatory-compliant safety training and continued-safety education programs for its drivers and mandatory record retention. Defendant Stone Truck Line failed to qualify Defendant Ismail Tawil as required by the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations, including but not limited to: permitting an unsafe driver to operate a commercial motor vehicle; failing perform its duties to ensure motorist safety by neglecting to contact Defendant Tawil's previous employers; failing to review the dishonest answers in Defendant Tawil's employment application, or if it claims to have done so, allowing a dishonest, unsafe driver to operate its commercial motor vehicle; and other safety violations, all of which proximately caused this collision.

45. At all times relevant to this Complaint, Defendant Ryan Transportation retained the right of legal, contractual, and/or actual control over Defendants Stone Truck Line and Tawil's transportation of the Russell Stover shipment for compensation. Defendant Ryan Transportation unsafely scheduled the mission, in violation of 49 C.F.R. § 390.13, with a "time is of the essence" pick-up and delivery requirement, which could not reasonably be accomplished while driving in accordance with applicable driving laws, without violating the hours-of-service laws of the Federal Motor Carriers Safety Act and the corresponding Federal Motor Carrier Safety Regulations. Defendant Ryan Transportation was negligent in the selection of Stone Truck Lines, an unsafe trucking company, and permitting Defendant Tawil, an unsafe driver, to drive its mission, as set forth above. According to its website, Defendant

Ryan Transportation is a self-proclaimed experienced broker and industry leader who aims to become part of other entities' transportation supply chains. Upon information and belief, Defendant Ryan Transportation did not merely arrange for the transportation of the subject shipment, Defendant Ryan Transportation provided the schedule, logistics, mandatory documentation, tracking and in service communications en route, and other services while Defendants Stone Truck Line and Tawil hauled the subject shipment. Per the Agreement, the transportation of the subject shipment was under the exclusive control of Defendant Ryan Transportation. Defendant Ryan Transportation is further liable for this incident due to the misrepresentation of its operating authority by expressly representing and certifying that it was the CARRIER in the Bill of Lading, in violation of 49 C.F.R. § 371.7, 49 U.S.C § 13901(c), 49 U.S.C. § 14102(a), and MAP-21. Similarly, under the Carmack Amendment (49 U.S.C. § 14706), Defendant Ryan Transportation's misrepresentation and significant control changed its status to that of a motor carrier. Moreover, Defendant Ryan Transportation's self-designation as the "CARRIER" was directly contrary to Paragraph 2 of the Contract between Defendants Ryan Transportation and Stone Truck Line, which expressly required that Stone Truck Line be listed as the CARRIER on any Bills of Lading. Defendant Russell Stover had dual wielded both legal and contractual control over the subject shipment through its certification as the "CARRIER," which legally bound Defendant Ryan Transportation to transport Defendant Russell Stover's goods, and its express assumption of responsibility in the Agreement for the drivers and equipment used, which conferred exclusive control over same (creating an ambiguity with the "Broker Addendum" which was not part of the Agreement, but which did not stop Defendant Ryan Transportation from proclaiming itself the CARRIER in

the actual documentation of this mission). The combined effect of Defendant Ryan Transportation's misrepresentations, express agreements, control over Defendants Stone Truck Line and Tawil's performance, and its involvement with the transportation of the subject shipment, proximately causing this collision, dictates that Defendant Ryan Transportation be held responsible as the employer/statutory employer of Defendant Stone Truck Line, vicariously liable for the acts and omissions of Defendant Stone Truck and Tawil.

46. At all times relevant to this Complaint, Defendant Russell Stover is the principal and licensed motor carrier, sophisticated, knowledgeable, and experienced with the responsibilities and duties imposed under the FMCSA and the FMCSR. Specifically, Defendant Russell Stover knows, or should know, the qualification requirements for selecting trucking companies or drivers, and the hours-of-service laws. Yet, upon information and belief, Defendant Russell Stover assigned its non-delegable duties under the FMCSA and the FMCSR to Defendants Ryan Transportation and Stone Truck Line, leaving these Defendants to complete said integral, necessary tasks for compensation and for the benefit of Defendant Russell Stover. Defendant Russell Stover unsafely scheduled the mission, in violation of 49 C.F.R. § 390.13, with a "time is of the essence" pick-up and delivery requirement, which could not reasonably be accomplished while driving in accordance with applicable driving laws, without violating the hours-of-service laws of the Federal Motor Carriers Safety Act and the corresponding Federal Motor Carrier Safety Regulations. Because a successful, timely delivery is a prerequisite to Defendant Russell Stover receiving compensation from its customers, Defendant Russell Stover, upon information and belief, retained the right to control how Defendants Ryan Transportation and Stone Truck Line completed their assigned tasks including, but not limited

to, directing the overall dynamic of the transportation supply chain; selection of the trucking company and driver, dictating the delivery timeline; dispatching the CARRIER or its driver directly; requiring the use of temperature-controlled trailers; requiring the use of specified equipment; requiring that the CARRIER maintain specified amounts of liability insurance; requiring that the CARRIER impose various restrictions and requirements on its drivers; prohibiting the CARRIER from arranging for another CARRIER to transport a shipment without prior approval; reserving the right to reduce compensation for shipment delays; and advancing a method to discount the cost of fuel. As a licensed motor carrier by the USDOT, Defendant Russell Stover knew, or should have known, that Defendant Tawil and/or Defendant Stone Truck were not properly qualified as a safe driver or motor carrier, respectively, before allowing them to operate on the roads of this State for compensation. The combined effect of Defendant Russell Stover's control over and involvement with the process of transporting the subject shipment proximately causing this collision, dictates that Defendant Russell Stover is vicariously liable for the acts and omissions of Defendants Ryan Transportation and Stone Truck and Tawil.

47. Upon information and belief, Defendants Russell Stover and Ryan Transportation demanded, by contract and the Bill of Lading and Load Confirmation documents, that "time is of the essence" from Defendants Stone Truck Line and Tawil. The Load confirmation issued by Defendant Ryan Transportation required pick-up of the load at 1300 hours on October 27, 2018, in Corsicana, Texas, and delivery by 900 hours on October 30, 2018, in Watsonville, California. This delivery timeline required, or could reasonably expect, Defendant Tawil to exceed the hours-of-service laws mandated by the FMCSA and the FMCSR, to drive at unsafe

speeds, and to disregard other safety considerations for approximately 1,800 miles (according to Google Maps) in violation of 49 C.F.R. § 390.13, especially factoring in traffic, road conditions, inspections or other factors, such that the delivery timeline was unsafe and unreasonable. By the time of this collision, Defendant Tawil had travelled approximately 780 miles (according to Google Maps) at 11:00 am mountain time on October 28, 2018, which was in excess and violation of the FMCSA and the FMCSR hours-of-service laws, which proximately caused this collision.

## COUNT I: NEGLIGENCE AND NEGLIGENCE PER SE
## OF DEFENDANT ISMAIL Y. TAWIL

48. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1–47 of this Complaint.

49. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Tawil was an employee-driver of Defendant Stone Truck Line and acting within the course and scope of said employment while transporting the subject shipment.

50. At all times relevant to this Complaint, Defendant Tawil, as Defendant Stone Truck Line's driver, qualifies as a motor carrier, and as such, must comply with all requirements of the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations.

51. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Tawil owed a duty to exercise ordinary care to operate the semi-truck in a reasonable and safe manner under the circumstances then present, to ensure the safety of other motorists traveling on the public roadways of this State, including Plaintiff Dixon.

52. Defendant Tawil breached his duty to exercise ordinary care in multiple ways, including without limitation:

a. Careless or reckless driving;

b. Negligent failure to yield the right-of-way to oncoming traffic;

c. Negligent failure to maintain a proper lookout for Plaintiff Dixon's oncoming motorcycle occupying the roadway to avoid the collision;

d. Negligent failure to turn in a safe manner;

e. Violating the hours-of-service laws of the FMCSA and the FMCSR;

f. Driving while fatigued or from some other cause in violation of 49 C.F.R. § 392.3;

g. Negligent failure to acquire, demonstrate, and maintain the qualifications, training, testing and experience necessary to safely operate a commercial semi-truck to avoid the collision;

h. Negligent failure to perceive and appropriately respond to Plaintiff Dixon's oncoming motorcycle occupying the roadway to avoid the collision;

i. Negligent failure to maintain an adequate distance from other motor vehicles to avoid the collision;

j. Negligent failure to operate at a safe speed to avoid the collision;

k. Negligent failure to timely and safely apply the semi-truck's brakes to avoid the collision;

l. Negligent failure to take evasive action to avoid the collision;

m. Negligent failure to sound the semi-truck's horn or give adequate warning of the pending danger to avoid the collision;

n. Negligent operation of a commercial motor vehicle with distractions to driving;

o.  Negligent operation of a commercial motor vehicle with a defective turn signal; and

p.  Negligent failure to acquire, demonstrate, and maintain qualifications to safely operate a commercial semi-truck as required by the Federal Motor Vehicle Carrier Safety Act and the Federal Motor Carrier Safety Regulations;

q.  Operating an unsafe semi-truck in violation of the Federal Motor Vehicle Carrier Safety Act and the Federal Motor Carrier Safety Regulations; and

r.  Being an unsafe driver.

53. Defendant Tawil also breached prescribed statutory duties established by the motor vehicle laws of the State of New Mexico, including:

a.  Failure to keep a proper lookout and give full time and entire attention to the operation of a motor vehicle in violation of §66-8-114(B) NMSA;

b.  Failure to use ordinary care in the operation of the semi-truck giving due regard to the traffic and road conditions in violation of §66-8-114 (B) NMSA; and

c.  Failure to yield the right-of-way in violation of §66-7-329 NMSA.

54. Defendant Tawil's breach of prescribed statutory duties, as established by the motor vehicle laws of the State of New Mexico, which said statutes were enacted for the safety of motorists traveling on the public roadways of this State, including Plaintiff Dixon, constitutes negligence per se.

55. Defendant Tawil's breach of prescribed statutory duties and his duty to exercise ordinary care caused the semi-truck vs. motorcycle collision that severely injured Plaintiff Dixon and damaged his motorcycle.

56. Defendant Tawil's negligence, and his negligence per se, proximately caused Plaintiff Dixon's damages, including: fractures of the left femur, left radius, left ulna, maxillary fracture, zygomatic fracture; multiple fractures of the ribs; fracture of the orbital floor; displaced fracture of the medial malleolus of the left tibia; subtrochanteric fracture of the right femur; fracture of the nasal bones; injury to the thoracic aorta; contusion of both lungs; and numerous lacerations to the face.

57. Defendant Tawil's negligence, and his negligence per se, proximately caused the destruction beyond repair of Plaintiff Dixon's 1991 Honda Motorcycle (VIN: JH2RC3807NM102150).

58. Defendant Tawil's negligence and negligence per se, proximately caused Plaintiff Dixon damages for his past and future medical expenses; past and future pain and suffering; past and future emotional distress and trauma; past and future loss of enjoyment of life; past and future impairment; past and future disfigurement; past and future loss of earning capacity; past and future loss of household services; and personal property losses.

59. Based on the acts or omissions which culminated in the semi-truck vs. motorcycle collision, upon information and belief, Defendant Tawil's unsafe operation of a semi-truck was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against Defendant Tawil for personal injuries, property damage, and punitive damages, to be determined by a jury, and a judgment for recoverable court costs, pre- and post-judgment interest, and such other relief the Court deems just.

## COUNT II: NEGLIGENCE OF DEFENDANT
## STONE TRUCK LINE, INC.

60. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1–59 of this Complaint.

61. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line was, and in fact still remains, a licensed DOT motor carrier engaged in the business of transporting goods throughout the southwestern United States.

62. At all times relevant to this Complaint, Defendant Stone Truck Line is a motor carrier, and as such, must comply with all requirements of the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations.

63. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line is vicariously liable for the negligent actions and omissions of its employees and agents, arising within the course and scope of that employment and agency, under the doctrines of *respondeat superior* and principal/agent.

64. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line owed a duty to exercise ordinary care to properly and safely maintain, service, equip, inspect, and insure its semi-trucks to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon.

65. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line owed a duty to exercise ordinary

care to properly qualify, train, and supervise its drivers to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon.

66. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Stone Truck Line was the statutory employer of Defendant Tawil, and as such, had the right to direct and control Defendant Tawil while he hauled the subject shipment. Defendant Stone Truck Line is vicariously liable for the negligence of Defendant Tawil as its employee and agent while acting within the course and scope of his employment and agency.

67. Defendant Stone Truck Line breached its duty to exercise ordinary care in multiple ways, including without limitation:

    a. Authorizing, permitting or allowing its drivers to drive in excess of the hours-of-service laws of the FMCSA and the FMCSR in violation of 49 C.F.R. § 390.13;

    b. Negligent failure to supervise its drivers from driving in excess of the applicable hours-of-service laws;

    c. Requiring or permitting its drivers to operate a commercial vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired through fatigue or any other cause as to make it unsafe to continue to operate;

    d. Negligent failure to hire fit and competent drivers;

    e. Negligent failure to properly qualify, train, and supervise its drivers;

    f. Negligent failure to compile and retain a driver qualification file for its drivers as required by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

    g. Negligent failure to properly educate its drivers on safe driving practices as required by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

h. Negligent failure to retain required documentation of its driver safety training and continued-safety education programs as required by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

i. Negligent failure to require compliance with the New Mexico Department of Transportation rules and regulations for semi-truck drivers;

j. Negligent failure to comply with the New Mexico Department of Transportation rules and regulations for entrustment of commercial motor vehicles to drivers;

k. Negligent failure to properly test, evaluate, and screen applicants it hires as drivers;

l. Negligent failure to establish and enforce formal policies and procedures for qualifying drivers to operate its semi-trucks;

m. Negligent failure to ensure its drivers possessed the requisite experience and skill to operate a semi-truck as required by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

n. Negligent failure to ensure its drivers were trained by individuals qualified to do so under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

o. Negligent failure to ensure its drivers received continued-training by individuals qualified to do so under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

p. Negligent failure to ensure its drivers were trained on and knowledgeable of the Smith System's "Five Seeing Habits;"

q. Negligent failure to ensure its drivers were trained on and knowledgeable of their state's Commercial Driver License Manual;

r. Negligent failure to establish and enforce formal policies and procedures for ensuring its drivers remained qualified to operate semi-trucks;

s. Negligent failure to properly supervise its drivers while operating its semi-trucks;

t. Negligent failure to ensure its drivers comply with applicable hours-of-service limitations prescribed by the FMCSA and the FMCSR;

u. Negligent failure to monitor and review its driver's daily trip logs;

v. Negligent failure to entrust its semi-trucks to only qualified drivers;

w. Negligent failure to entrust its semi-trucks to only drivers covered by its liability insurance policy;

x. Negligent failure to ensure that Defendant Tawil was fit, competent, qualified, and trained to haul the subject shipment on October 28, 2018;

y. Negligent failure to ensure that its drivers were adequately rested and alert to operate a semi-truck;

z. Negligent failure to establish and enforce formal policies and procedures for ensuring its drivers were adequately rested and alert to operate a semi-truck;

aa. Negligent scheduling of the subject shipment's delivery;

bb. Negligent failure to ensure its semi-trucks were inspected, serviced, and maintained for safe operation, including the brakes, tires, horn, turn signals, and response to all recall notifications;

cc. Negligent failure to establish and enforce formal policies and procedures for ensuring its drivers did not operate its semi-trucks while distracted, such as by electronic devices, GPS systems, Defendant Ryan Transportation's electronic tracking systems, cell phones, and other similar electronic devices;

dd. Negligent installation of a tablet on the semi-truck's dashboard which obstructed Defendant Tawil's view;

ee. Negligent failure to establish and enforce formal policies and procedures for ensuring its semi-trucks were equipped with available safety technology to ensure its drivers did not drive while exceeding safe hours of operation or distracted by electronic devices; and

ff. Being an unsafe trucking company

68. Defendant Stone Truck Line's breach of its duty to exercise ordinary care caused the semi-truck vs. motorcycle collision that severely injured Plaintiff Dixon and damaged his motorcycle.

69. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 57–59 of this Complaint.

70. Based on the acts or omissions which culminated in the semi-truck vs. motorcycle collision, upon information and belief, Defendant Stone Truck Line is an unfit and incompetent motor carrier whose decision to place an unsafe semi-truck and/or driver on the public roadways of this State was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against Defendant Stone Truck Line for personal injuries, property damage, and punitive damages, to be determined by a jury, and a judgment for recoverable court costs, pre- and post-judgment interest, and such other relief the Court deems just.

## COUNT III: NEGLIGENCE OF DEFENDANT
## RYAN TRANSPORTATION SERVICE, INC.

71. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1–70 of this Complaint.

72. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Ryan Transportation was a DOT licensee engaged in the business of assigning drivers and equipment, providing logistics services and electronic tracking, controlling en route communications, issuing Bills of Lading and Load

Confirmations, and arranging for the transportation of shipments it has legally bound itself to transport throughout the United States, including across the State of New Mexico.

73. At all times relevant to this Complaint, Defendant Ryan Transportation authored the Bill of Lading for the subject shipment pursuant to its legal obligation and certified that it was the "CARRIER" within this binding document, and as such, qualifies as an employer who must comply with all requirements of the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations. Further, because Defendant Ryan Transportation expressly represented itself as the "CARRIER" of the subject shipment (thereby creating ambiguity with the "Broker Addendum" which was not part of the original Agreement), operated in violation of 49 C.F.R. § 371.7, 49 U.S.C § 13901(c), 49 U.S.C. § 14102(a), and MAP-21, and significantly controlled the subject shipment under 49 U.S.C. § 14706, Defendant Ryan Transportation is, upon information and belief, the statutory employer of Defendant Stone Truck Line who, by extension, is vicariously liable for the negligence of Defendant Tawil and Stone Truck Line.

74. At all times relevant to this Complaint, Defendant Ryan Transportation retained the right to legal, contractual, and/or actual control over Defendant Stone Truck Line and its driver during the transportation of the subject shipment. Defendant Ryan Transportation received compensation for its central role in the transportation of the subject shipment based on the expansive, authority-exceeding services it provided. Because of Defendant Ryan Transportation's significant control over and involvement with the transportation of the subject shipment, including the Agreement giving it exclusive control and full responsibility, as well the Carmack Amendment and selection of the trucking company, Defendant Ryan

Transportation is vicariously liable for the negligent actions and omissions of Defendant Stone Trucking Line and its driver, arising within the course and scope of that employment and agency, under the doctrine of *respondeat superior* and principal/agent.

75. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Ryan Transportation owed a duty to exercise ordinary care to verify that the semi-truck it assigned to transport the subject shipment was properly and safely maintained, serviced, equipped, inspected, and insured to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon.

76. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Ryan Transportation owed a duty to exercise ordinary care to assure that the trucking company it assigned to transport the subject shipment was safe, fit and competent to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon. Put another way, Defendant Ryan Transportation is liable for the negligent selection/hiring of Defendant Stone Truck Line, an unsafe and incompetent carrier as set forth above, under the Restatement (Second) of Torts § 411.

77. Defendant Ryan Transportation breached its duty to exercise ordinary care in multiple ways, including without limitation:

   a. Misrepresentation of or exceeding its operating authority in violation of 49 U.S.C § 13901(c), 49 U.S.C. § 14102(a), and MAP-21;

   b. Negligent and unsafe scheduling of the subject shipment's delivery and demanding "time is of the essence" with damages in violation of 49 C.F.R. § 390.13;

   c. Authorizing, permitting or allowing its drivers to drive in excess of the hours-of-service laws of the FMCSA and the FMCSR in violation of 49 C.F.R. § 390.13;

d.  Negligent failure to supervise its drivers from driving in excess of the applicable hours-of-service laws;

e.  Requiring or permitting its drivers to operate a commercial vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired through fatigue or any other cause as to make it unsafe to continue to operate;

f.  Negligent hiring/selection of an unsafe trucking company;

g.  Negligent failure to properly qualify, train, and supervise its contracted trucking company and their driver as required by its Agreement with Defendant Russell Stover;

h.  Negligent failure to verify that its contracted trucking company received a positive safety rating from the Federal Motor Carrier Safety Administration;

i.  Negligent failure to verify that its contracted trucking company possessed the requisite experience and skill for a single-driver, interstate shipment;

j.  Negligent failure to verify that its contracted trucking company's driver was covered under the company's liability insurance policy;

k.  Negligent failure to verify that its contracted trucking company properly screened and qualified it driver prior to employment;

l.  Negligent failure to verify that its contracted trucking company properly trained its driver;

m.  Negligent failure to verify that its contracted trucking company properly supervised its driver;

n.  Negligent failure to compile and retain a qualification file and records for its contracted trucking company as required by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

o.  Negligent failure to establish and enforce formal policies and procedures for properly screening and qualifying its contracted trucking company before assigning a single-driver, interstate shipment for the mission in question;

p.  Negligent failure to verify that its contracted trucking company and its driver possessed the requisite experience and skill to transport a single-driver, interstate shipment for the mission in question;

q.  Negligent failure to verify that its contract trucking company's drivers was adequately rested and alert, operating within the applicable hours-of-service laws, and practicing safe semi-truck operating practices before assigning a single-driver, interstate shipment for the mission in question;

r.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted trucking company's driver was adequately rested and alert, operating within the applicable hours-of-service laws, and practicing safe driving practices for the mission in question;

s.  Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted trucking company's driver did not operate a semi-truck while distracted, such as by cell phone, GPS, dashboard or window-mounted tablet, or other similar electronic devices;

t.  Negligent failure to verify that its contracted trucking company properly inspected, serviced, and maintained their semi-trucks for safe operation, including the brakes, tires, horn, turn signal, and response to all recall notifications;

u.  Negligent provision of electronic tracking systems and other reporting devices that distract its contracted trucking company's drivers;

v.  Negligent failure to verify that its contracted trucking company equipped their semi-trucks with available safety technology to ensure their drivers did not drive while exceeding safe hours of operation or distracted by electronic devices;

w.  Negligent failure to obtain more than surface-level information from its contracted trucking company while screening and qualifying for employment;

x.  Negligent failure to establish and enforce formal policies and procedures for ensuring that its contracted trucking company remained qualified to transport single-driver, interstate shipments after the initial hiring process;

    y. Negligent failure to inquire into its contracted trucking company's internal safety records and evaluations, safety training program, or driver continued-training programs as a self-proclaimed experienced industry leader;

    z. Negligent failure to inquire into its contracted trucking company's reputation within the trucking industry as a self-proclaimed experienced industry leader;

  aa. Negligent failure to inquire into the three cancellations of Defendant Stone Truck Line's federally-mandated insurance policies by its former insurers as a self-proclaimed experienced industry leader;

  bb. Negligent failure to inquire into the various injury crashes and one fatal crash involving Defendant Stone Truck Line within close temporal proximity to October 28, 2018;

  cc. Negligent failure to inquire into the "non-ratable" safety review issued to Defendant Stone Truck Line by the Federal Motor Carrier Safety Administration in 2018; and

  dd. Negligent failure to inquire into Defendant Stone Truck Line's unsafe driving score above 4.5 issued by the Safety Measurement System (a branch of the Federal Motor Carrier Safety Administration) for numerous months within close temporal proximity to October 28, 2018.

78. Defendant's breach of its duty to exercise ordinary care by placing an unsafe and incompetent trucking company and/or driver on the public roadways of this State was a proximate cause of the semi-truck vs. motorcycle collision that severely injured Plaintiff Dixon and damaged his motorcycle.

79. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 57–59 of this Complaint.

80. Based on the acts or omissions which culminated in the semi-truck vs. motorcycle collision, upon information and belief, Defendant Ryan Transportation's acts and omissions as set forth above, including unsafe scheduling of the mission and negligent selection of an unsafe trucking

company, was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against Defendant Ryan Transportation for personal injuries, property damage, and punitive damages, to be determined by a jury, and a judgment for recoverable court costs, pre- and post-judgment interest, and such other relief the Court deems just.

## COUNT IV: NEGLIGENCE OF DEFENDANT
## RUSSELL STOVER CHOCOLATES, LLC

81. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 1–80 of this Complaint.

82. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Russell Stover was a sophisticated, knowledgeable, and licensed motor carrier engaged in the business of transporting goods directly or by assigning shipments of its goods to CARRIERS for transportation throughout the United States, including across the State of New Mexico.

83. At all times relevant to this Complaint, Defendant Russell Stover is not merely a "casual shipper" of goods, but rather a sophisticated, knowledgeable, experienced, and licensed USDOT motor carrier, with its own transportation department, and the principal for whom Defendants Ryan Transportation and Stone Truck Line performed, for compensation, integral and necessary functions within the transportation supply chain, ultimately for the financial benefit of Defendant Russell Stover. Based on its business model in this case, Defendant Russell pays for the transportation costs of its shipments to final destination.

84. Because Defendant Russell Stover's business relies on the successful delivery of its goods by its contracted CARRIERS, Defendant Russell Stover, upon information and belief, retained control and was actively involved in the transportation of the subject shipment by Defendants Ryan Transportation and Stone Truck Line. Defendant Russell Stover's right of control dealt specifically with the integral details of transporting the subject shipment. Upon information and belief, Defendant Russell Stover: specified the roles each CARRIER would fulfill; set the pick-up and delivery times for the subject shipment; dispatched the CARRIER's driver to pick-up the subject shipment; specified the type and functionality of the trailer required to transport the subject shipment; required the use of a communication system or GPS tracking system on the subject shipment that was accessible by Defendant Russell Stover or its agent Defendant Ryan Transportation; prohibited the CARRIER from arranging for another CARRIER to transport the subject shipment; imposed the obligation of ensuring driver compliance with the Federal Motor Carrier Safety Act and the Federal Motor Carrier Safety Regulations on the CARRIER; imposed additional liability insurance requirements on the CARRIER; dictated the CARRIER's transportation route by providing a discounted method for the cost of fuel; and reserved the right to reduce the CARRIER's compensation for untimely deliveries. Accordingly, Defendant Russell Stover meets the prescribed definition of an employer and motor carrier under the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations.

85. Defendant Russell Stover is vicariously liable for the negligence of its contracted CARRIERS and their drivers, arising within the course and scope of that employment or agency, which caused or contributed to the semi-truck vs. motorcycle collision, under the doctrine of *respondeat superior* and principal/agent.

86. At all times relevant to this Complaint, Defendant Russell Stover operated and controlled a transportation supply chain that fulfilled integral parts of its necessary business operations, whereby Defendant Russell Stover assigned drivers and equipment under its direction and control to transport its goods.

87. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Russell Stover failed to insure that the semi-truck it assigned to transport the subject shipment was properly and safely maintained, serviced, equipped, inspected, and insured to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon.

88. At all times relevant to the semi-truck vs. motorcycle collision and the resulting injuries which are the basis of this Complaint, Defendant Russell Stover owed a duty to exercise ordinary care to ensure that the contracted CARRIERS and drivers it assigned to transport its shipments were qualified, fit and competent to ensure the safety of other motorists on the public roadways of this State, including Plaintiff Dixon.  Defendant Russell Stover also owed a duty to exercise ordinary care to ensure that its contracted CARRIERS properly screened, qualified, trained, and supervised its drivers, such that only qualified, fit and competent drivers transported Defendant Russell Stover's goods.

89. Defendant Russell Stover breached its duty to exercise ordinary care in multiple ways, including without limitation:

   a. Negligent scheduling of the subject shipment's delivery, making it an unsafe trip in violation of the applicable hours-of service, speed, and other safety laws in violation of 49 C.F.R. § 390.13;

   b. Negligent hiring/selection of the unsafe and incompetent CARRIERS in this case to haul the subject shipment in violation of the Restatement (Second) of Torts § 411;

   c. Negligent supervision of the contracted CARRIERS within its transportation supply chain;

   d. Authorizing, permitting or allowing its drivers to drive in excess of the hours-of-service laws of the FMCSA and the FMCSR in violation of 49 C.F.R. § 390.13;

   e. Negligent failure to supervise its drivers from driving in excess of the applicable hours-of-service laws;

   f. Requiring or permitting its drivers to operate a commercial vehicle while the driver's ability or alertness is so impaired, or so likely to become impaired through fatigue or any other cause as to make it unsafe to continue to operate.

   g. Negligent failure to properly qualify, train, and supervise its contracted CARRIERS and their drivers;

   h. Negligent failure to verify that its contracted CARRIERS received a positive safety rating from the Federal Motor Carrier Safety Administration before tendering the subject shipment;

   i. Negligent failure to verify that its contracted CARRIERS possessed the requisite experience and skill to haul the subject shipment;

   j. Negligent failure to verify that its contracted CARRIERS' drivers are covered under the CARRIER's liability insurance policy before tendering the subject shipment;

   k. Negligent failure to verify that its contracted CARRIERS properly screened and qualified their drivers before tendering the subject shipment;

l.   Negligent failure to verify that its contracted CARRIERS properly trained its drivers before tendering the subject shipment;

m.   Negligent failure to verify that its contracted CARRIERS properly supervised its drivers before tendering the subject shipment;

n.   Negligent failure to compile and retain a qualification file for its contracted CARRIERS as required by the Federal Motor Carrier Safety Act and the corresponding Federal Motor Carrier Safety Regulations;

o.   Negligent failure to establish and enforce formal policies and procedures for properly screening and qualifying its contracted CARRIERS before tendering the subject shipment;

p.   Negligent failure to verify that its contracted CARRIERS' drivers possess the requisite experience and skill to transport the subject shipment;

q.   Negligent failure to verify that its contracted CARRIERS' drivers were adequately rested and alert, operating within the applicable hours-of-service regulations, and practicing safe semi-truck operating practices before tendering the subject shipment;

r.   Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted CARRIERS' drivers were adequately rested and alert, operating within the applicable hours-of-service regulations, and practicing safe operating practices;

s.   Negligent failure to establish and enforce formal policies and procedures for verifying that its contracted CARRIERS' drivers did not operate a semi-truck while distracted, such as by cell phone, GPS, Defendant Ryan Transportation's tracking system, dashboard or window-mounted tablet, or other similar electronic devices;

t.   Negligent failure to verify that its contracted CARRIERS properly inspected, serviced, and maintained their semi-trucks for safe operation, including the brakes, tires, horn, turn signal, and response to all recall notifications, before tendering the subject shipment;

u. Negligent failure to verify that its contracted CARRIERS equipped their semi-trucks with available safety technology to ensure their drivers did not drive while exceeding safe hours of operation or distracted by electronic devices before tendering the subject shipment;

v. Negligent failure to obtain more than surface-level information from its contracted CARRIERS while screening and qualifying for employment;

w. Negligent failure to establish and enforce formal policies and procedures for ensuring that its contracted CARRIERS remain qualified to transport interstate shipments after the initial hiring process;

x. Negligent failure to inquire into its contracted CARRIERS' internal safety records and evaluations, safety training program, or driver continued-training programs, before tendering the subject shipment;

y. Negligent failure to inquire into its contracted CARRIERS' reputation within the trucking industry before tendering the subject shipment;

z. Negligent failure to inquire into the three cancellations of Defendant Stone Truck Line's federally-mandated insurance policies by its former insurers before tendering the subject shipment;

aa. Negligent failure to inquire into the various injury crashes and one fatal crash involving Defendant Stone Truck Line within close temporal proximity to October 28, 2018, before tendering the subject shipment;

bb. Negligent failure to inquire into the "non-ratable" safety review issued to Defendant Stone Truck Line by the Federal Motor Carrier Safety Administration in 2018 before tendering the subject shipment; and

cc. Negligent failure to inquire into Defendant Stone Truck Line's unsafe driving score above 4.5 issued by the Safety Measurement System (a branch of the Federal Motor Carrier Safety Administration) for numerous months within close temporal proximity to October 28, 2018, before tendering the subject shipment.

90. Defendant Russell Stover's breach of its duty to exercise ordinary care by placing an unsafe and incompetent trucking company and/or driver on the public roadways of this State proximately caused the semi-truck vs. motorcycle collision that severely injured Plaintiff Dixon and damaged his motorcycle.

91. Plaintiff Dixon hereby re-alleges and incorporates Paragraphs 57–59 of this Complaint.

92. Based on the acts or omissions which culminated in the semi-truck vs. motorcycle collision, upon information and belief, Defendant Russell was willful, wanton or reckless, and demonstrated a culpable mental state such that punitive damages should be determined by a jury.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against Defendant Russell Stover for personal injuries, property damage, and punitive damages, to be determined by a jury, and a judgment for recoverable court costs, pre- and post-judgment interest, and such other relief the Court deems just.

## RECOVERABLE DAMAGES OF WALTER DIXON

93. The named Defendants' negligence, jointly and severally, proximately caused Plaintiff Dixon personal injury and property damages including:

   a. Past and future reasonable and necessary medical expenses for his treatment and physical therapy;

   b. Past and future pain and suffering;

   c. Past and future mental anguish and emotional distress;

   d. Past and future impairment and disability;

   e. Past and future loss of earning capacity;

   f. Past and future disfigurement;

g.  Past and future loss of household services;

h.  Past and future loss of enjoyment of life; and

i.  Property damages for the total loss of Plaintiff Dixon's 1991 Honda Motorcycle.

94. Furthermore, the acts and omissions of the named Defendants were in reckless disregard for the rights and safety of Plaintiff Dixon, demonstrated an actual and conscious indifference and disregard for Plaintiff Dixon's rights and safety, as to constitute willful, wanton, reckless, and malicious conduct, which was proximate cause of the damages and injuries suffered by Plaintiff Dixon, and for which the named Defendants are therefore subject to the imposition of punitive damages.

WHEREFORE, Plaintiff Dixon should have a judgment entered on his behalf and against the named Defendants, jointly and severally, for personal injuries, medical expenses, pain and suffering, emotional distress, loss of household services, impairment, disfigurement, loss of earning capacity, loss of enjoyment of life, property damage, and punitive damages, all to be determined by a jury, and also a judgment for recoverable court costs, pre- and post-judgment interest, and all such relief the Court deems just.

## TWELVE-PERSON JURY DEMAND

Plaintiff Dixon also hereby respectfully requests a trial by a twelve-person jury for all issues and damages.

Respectfully submitted,

CERVANTES SCHERR LEGATE, LC

*/s/ Joseph Cervantes*
Joseph Cervantes
Attorney for Plaintiff
901 E. University Ave., Ste. 965-L
Las Cruces, New Mexico 88001
(575) 526-5600
joe@cervantesscherrlegate.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically transmitted the above document to the Clerk's Office using the CM/ECF system for filing and transmittal to the following CM/ECF registrants this 3rd day of December, 2021.

James P. Barrett
**Eaton Law Office, PC**
P.O. Box 25305
Albuquerque, NM 87125
jbarrett@eatonlaw-nm.com
*Attorney for Defendant Russell Stover Chocolates, LLC*

Seth Sparks
Jeffrey R. Taylor
**Rodey, Dickason, Sloan, Akin & Robb, P.A.**
P.O. Box 1888
Albuquerque, NM 87103
ssparks@rodey.com
rtaylor@rodey.com
*Attorneys for Defendants Stone Truck Line, Inc. and Ismail Y. Tawil*

Justin D. Rodriguez
**Atkinson, Baker & Rodriguez, P.C.**
201 Third Street NW, Suite 1850
Albuquerque, NM 87102
JRodriguez@abrfirm.com
*Attorneys for Defendant Ryan Transportation Service, Inc.*

*/s/ Joseph Cervantes*
Joseph Cervantes